```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ROY STEWART MOORE and KAYLA
MOORE,

                Plaintiffs,

        v.                                19 CV 4977 (ALC)

SACHA NOAM BARON COHEN, et
al.,

                Defendants.
                                          Conference
------------------------------x
                                          New York, N.Y.
                                          August 1, 2019
                                          10:10 a.m.
Before:

                HON. ANDREW L. CARTER, JR.,

                                          District Judge


                        APPEARANCES

KLAYMAN LAW GROUP, P.A.
     Attorneys for Plaintiffs
BY:  LARRY E. KLAYMAN

DAVIS WRIGHT TREMAINE LLP
     Attorneys for Defendants
BY:  ELIZABETH A. McNAMARA
     RACHEL STROM
```

1        (Case called)

2        MR. KLAYMAN:  Larry Klayman for Judge Roy Moore.  Good
3   to meet you, your Honor.

4        MS. McNAMARA:  Elizabeth McNamara for the defendants
5   Sasha Baron Cohen, Showtime Networks and CBS, and this is
6   Rachel Strom, my partner, who is with me.

7        THE COURT:  Good morning.

8        We are here for a premotion conference.  This is the
9   first time this matter has been on in front of me.

10       I have seen the parties' submissions.  It seems to me
11  that it makes sense to set a briefing schedule for the
12  plaintiffs' motion to stay, as well as the defendants' 12(b)(6)
13  motion.

14       Before we do that, I didn't see on the docket anywhere
15  a copy of this standard consent agreement.  Do counsel have
16  that with them today, by any chance?

17       MS. McNAMARA:  I do, your Honor.

18       THE COURT:  Can you hand that to my deputy.

19       MS. McNAMARA:  Absolutely.  Thankfully, I didn't write
20  on it.

21       MR. KLAYMAN:  May I have a copy of it?

22       MS. McNAMARA:  I only have one copy.  I'm sorry.

23       THE COURT:  Thanks.  Hold on a second.

24       I'll hand this back to counsel.  There is something in
25  this agreement that was highlighted and crossed out.  Was that

1    something that was done prior to the signing of the agreement
2    or was that something done by counsel afterwards?
3              MS. McNAMARA:  Your Honor, the yellow highlighting, I
4    believe, was by counsel.  But the handwritten cross-out and
5    initial was done at the time of execution.
6              Your Honor, may I interject just a brief
7    administrative matter?
8              THE COURT:  Sure.
9              MS. McNAMARA:  This is our first appearance before
10   your Honor, as you've already noted.  The plaintiffs' counsel
11   is not a New York bar, member of the New York bar, and has not
12   submitted *pro hac* papers.  I just wanted to bring that to the
13   attention of the Court.
14             MR. KLAYMAN:  I wanted to address that, your Honor, if
15   I may.
16             THE COURT:  Sure.
17             MR. KLAYMAN:  I never appeared in front of you.  It's
18   a pleasure.
19             I have consulted with Judge Moore, and we have decided
20   not to pursue the mandamus in DC and to proceed in front of
21   your Honor.  I will be submitting the *pro hac vice* application
22   later today.  I've been a member in good standing of the
23   District of Columbia and Florida bars for 39 and 42 years
24   respectively.
25             There was one issue that came up 23 years ago with

1  Judge Chin, 23 years, where I had an issue with him, and he
2  required that I provide to the Court, if I ever sought *pro hac*
3  *vice* entry again, a copy of his order where he said I would no
4  longer be able to come into his courtroom *pro hac vice*.  I
5  wanted to just advise you of that and use this as an
6  opportunity.
7         Ms. Strom and Ms. McNamara, on behalf of their client,
8  have consented to my *pro hac vice* entry, but I wanted to raise
9  that because Judge Chin had ordered that I advise the Court in
10 the future if I sought *pro hac vice* entry with you.
11        Obviously, we had hoped to proceed in DC.  We are
12 certainly confident of success, your Honor, in front of you.
13 The fact that we sought DC has no reflection on the integrity
14 or ability of this Court to adjudicate this issue.  And we have
15 submitted a letter pointing out how New York law actually is on
16 point with our client's case.
17        THE COURT:  Anything from defense's counsel on this?
18        MS. McNAMARA:  No, your Honor.  It is correct that we
19 consented to his *pro hac* application, provided that Mr. Klayman
20 complied with the local rules and the applicable orders under
21 *pro hac* which would necessitate him to, in addition to
22 providing your Honor with Judge Chin's decision, to apprise the
23 Court of pending disciplinary action against him in DC.
24        MR. KLAYMAN:  We will submit that in our application,
25 your Honor.

1     There is no final decision. Those matters are on
2  appeal. This is regrettable because if that's the case, it
3  looks to me like she is consenting but yet saying something
4  that would prejudice my application. That was unnecessary
5  because I said I would submit it and I said I would set forth
6  what's required to be set forth.
7     If that's the case, yes, I would like to seek a stay
8  on the mandamus, if this is the way it's going to proceed. I
9  thought we were going to move forward amicably to get a just
10 resolution of these matters on the merits rather than to have
11 counsel in any kind of issue with each other. I'm trying to be
12 diplomatic.
13     THE COURT: Let's have plaintiffs' counsel file your
14 *pro hac vice* application. Can you get that submitted within a
15 week from today?
16     MR. KLAYMAN: I can, your Honor.
17     THE COURT: Let's have that filed by August 8. Let's
18 deal with that issue sort of first.
19     Let me find out, although I think I know the answer to
20 this question, have there been any sort of settlement
21 discussions at all between the parties?
22     MR. KLAYMAN: We are always open to settlement. I
23 would hope that there would be. There not have been any
24 settlement discussions.
25     THE COURT: Is there a reason for that? Is it just

1    that the parties haven't gotten around to that?  There is no
2    interest in that?
3              MR. KLAYMAN:  I have an interest in that.  We would
4    like to settle the matter.
5              Your Honor, I'm sure, has read the various documents
6    that have been submitted to you.  Judge Moore has been, as we
7    allege, see severely defamed, called a pedophile.  That's very
8    serious.  And, yes, we would like to settle it.  New York law
9    is clear, as your Honor can read from our letter in what we set
10   forth, that you can't release someone from an act which has yet
11   to occur.
12             And we had several layers of fraud here.  Yerushalayim
13   TV is not Showtime, obviously.  Judge Moore thought he was
14   going to get an award from the State of Israel.  Turns out that
15   what he was getting was being branded a pedophile on national
16   and international television.  Even comedians are not immune
17   from that kind of behavior.
18             We would like to settle this thing.  We don't have an
19   ax to grind.  We just want to be made whole again, our client.
20   I'm welcome to that and so is Judge Moore.
21             THE COURT:  I take it from what you've said that you
22   have not made a demand of the defendant?
23             MR. KLAYMAN:  I have not.
24             THE COURT:  Anything from defense counsel on this?
25             MS. McNAMARA:  Thank you very much, your Honor.

1        We, of course, would listen to any demand made by the

2   plaintiff.  We would not foreclose that in any way.  However,

3   we do feel strongly, and there is strong principles at stake

4   here in this litigation, and those are the underpinnings to our

5   motion to dismiss that we would intend to file in the action.

6        Not only is it our position that it's strictly barred

7   by the consent agreement, which your Honor just looked at, but

8   it's squarely on point with the *Borat* decision that Judge

9   Preska dismissed with the exact same release, the exact same

10  waiver agreement, and the similar allegations of alleged fraud

11  that was affirmed by the Second Circuit, and it's squarely on

12  point.

13       So we don't think that this is a complicated issue,

14  and it's an issue of some importance for my clients.  This is

15  Mr. Cohen's business in many regards, and it's one that's

16  important to him, and we believe, even on the merits, that

17  there simply is not a claim.

18       MR. KLAYMAN:  Your Honor, the facts of this case are

19  different, and you pointed it out yourself, in effect, when you

20  asked Ms. McNamara to give you a copy of the release.  Judge

21  Moore crossed out anything dealing with sexual oriented or

22  offensive behavior.

23       What's important is that the defendants signed this

24  document.  This was a fraud.  They knew that they were going to

25  go on and brand him as a pedophile, and they signed it knowing

1    that that was out of the release; consequently, a major fraud.

2             Plus, Yerushalayim TV is not Showtime, is not CBS.

3             On top of that, there is a pattern and practice here
4    with regard to this particular show, Who Is America, where they
5    did the same thing with other people but not to this degree.

6             This case hinges on the merits.  It doesn't have
7    anything to do with *Borat*.  It has to do with Sasha Baron Cohen
8    and what he did Who is America.

9             THE COURT:  Let's do this.  We have a date for
10   plaintiffs' counsel to file the *pro hac vice* application.
11   Let's get a date for a joint status report from the parties.

12            I encourage the parties to engage in some settlement
13   discussions.  And in that status report you can let me know if
14   the case has settled, if the parties would like some help
15   settling the case.  And, if not, we don't need to have another
16   premotion conference.  The parties can submit a proposed
17   briefing schedule for the motion to dismiss and/or the motion
18   for a stay, if that's still going to be pursued, and I'll sign
19   off on that.

20            Let's do this, if both sides are willing to do this.
21   Let's have a brief discussion in the robing room off the record
22   about potential settlement, if everyone is OK with that.

23            Does that work for plaintiffs' counsel?

24            MR. KLAYMAN:  It does, your Honor.

25            THE COURT:  Does that work for defense counsel?

1      MS. McNAMARA:  Yes, your Honor, of course.

2      THE COURT:  Let's go do that quickly in the robing
3  room.

4      (In the robing room; discussion off the record)

5      THE COURT:  We had an off-the-record discussion about
6  settlement.  I would encourage the parties to continue to
7  pursue settlement discussions.

8      We have dates.  Again, the *pro hac vice* application
9  will be filed by August 8 and a joint status report on August
10 22.  In that status report let me know, again, if the parties
11 have settled or if the parties want me to refer this to a
12 magistrate judge for settlement or to the Court's annexed
13 mediation program.  If not, just give me a proposed briefing
14 schedule on the motion to stay and the motion to dismiss under
15 12(b)(6).

16     Anything else from plaintiffs' counsel today?

17     MR. KLAYMAN:  No, your Honor.  Thank you.

18     THE COURT:  Anything else from defense counsel?

19     MS. McNAMARA:  No, your Honor.  Thank you very much.

20     THE COURT:  We are adjourned.  Thank you.

21     (Adjourned)