# EXHIBIT 8

# KLAYMAN LAW GROUP

## A PROFESSIONAL ASSOCIATION

Larry Klayman, Esq.                    2020 Pennsylvania Ave. N.W., #800                    Tel: 310-595-0800
                                       Washington, DC, 20006                                Fax: 202-379-9289

July 16, 2019

**<u>Via Electronic Mail and Federal Express</u>**

Hon. Andrew L. Carter, Jr.
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

**Re:**     ***<u>Moore, et al. v. Cohen, et al.</u>*, 1:19-cv-4977-ALC**

Dear Judge Carter:

        Pursuant to Your Honor's Order of July 2, 2019 [Dkt. # 41], Plaintiffs hereby respectfully submit the following based on the compelling facts and laws of this case:

**<u>Introduction</u>**

        First, the alleged Standard Consent Agreement (the "Agreement") between Plaintiffs and "Yerushalayim TV" is void and unenforceable for several reasons. The Restatement (Second) and New York law prohibit such types of "agreements" because it is a longstanding principle of contract law that a misrepresentation of material facts may be a basis for the rescission of a contract and thus void. The Agreement is also based on several levels of fraud. Moreover, a release that employs general terms will not bar subsequent claims outside the parties' contemplation at the time the release was executed. As discussed below, the Agreement cannot stand.

        Second, Plaintiffs state valid claims against Defendants as a matter of law. Even a comedian with the reputation of Sasha Baron Cohen does not enjoy a James Bond-like 007 license to slander and defame. "[T]he danger implicit in affording blanket protection to humor or comedy should be obvious, for surely one's reputation can be as effectively and thoroughly destroyed with ridicule as by any false statement of fact. 'The principle is clear that a person shall not be allowed to murder another person's reputation in jest.'" *Frank v. National Broadcasting Co.*, 119 A.D.2d 252, 257, (N.Y. App. Div. 1986) (citations omitted).

        Whether couched as opinion, humor, or rhetorical hyperbole, which Defendants attempt, defamatory statements made by a comedian are actionable where a reasonable listener or viewer could conclude that he or she was asserting or implying false facts about a plaintiff. If the challenged statements and conduct are reasonably susceptible to such a defamatory interpretation, their true meaning is a question of fact for the jury to resolve at trial.

        Defendants' televised statements and actions about Judge Moore are reasonably susceptible to a defamatory interpretation. Under New York law, these defamatory statements and actions are a recognized form of defamation for false statements relating to Judge Moore's conduct of his trade,

1

business or profession and also accuse him of one of the most heinous crimes. Accordingly, Plaintiffs have stated viable claims for defamation.[1]

## Argument

### A.      The Consent Agreement is Invalid and of No Force and Effect.

The Agreement was procured through fraud after fraud and cannot stand on this basis alone. Here, however, because Plaintiffs intend to fully brief the fraud issue in their opposition to Defendants' motion to dismiss, Plaintiffs focus on another aspect of why the Agreement cannot stand. Simply put, New York law does not construe a general release to bar claims for injuries unknown at the time the release was executed, even when the release contains broad language. *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273 (S.D.N.Y. 2006).

Under New York law, the dispositive factor in determining the scope of a release is the parties' intent. *E\*Trade Fin. Corp.*, 420 F. Supp. 2d at 284-85; *Neuman v. Harmon*, 965 F. Supp. 503, 509 (S.D.N.Y. 1997). "[A] release like any contract must be construed to give force and effect to the intention of the parties." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 404 (2d Cir. 2000) (applying New York law). A court must "**determine the intent of the parties by examining the entirety of the settlement, the parties' acts, and all other conduct and surrounding circumstances that bear on the issue.**" *Actrade Liquidation Trust v. Greenwich Ins. Co. (In re Actrade Fin. Techs. Ltd.)*, 424 B.R. 59, 73 (S.D.N.Y. 2009) (emphasis added).[2]

Here, notwithstanding that the Agreement was procured through fraud, there is no question that Plaintiffs never contemplated a waiver of all rights when executing the Agreement, particularly since Judge Moore *affirmatively crossed out and initialed* the language which referred to "sexual oriented or offensive behavior or questioning." A representative for "Yerushalayim TV" accepted Judge Moore's change to the agreement and then signed it. Clearly, there was no meeting of the minds here and the entire Agreement was based on a lie.

Moreover, Defendants' example of case authority does not apply. In *Psenicksa v. Twentieth Century Fox Film Corp.*, No. 07-cv-10972, 2008 Dist. LEXIS 69214 (S.D.N.Y. Sept. 3, 2008), movie participant plaintiffs filed suit against film companies based on "oral misrepresentations" about the nature of the film. *Psenicksa v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368, 370 (2d Cir. 2009). But, Plaintiffs here do not argue that the Agreement cannot stand because of an outside, oral agreement between the parties. Rather, Plaintiffs argue that the Agreement cannot stand because Judge Moore never contemplated or intended to waive his rights, based on – and backed up by – his crossing out and initialing the very phrase in the Agreement which Defendants

---

[1] Plaintiffs have also stated and pled viable claims for intentional infliction of emotional distress and fraud, but this brief Letter to the Court focuses on defamation only.

[2] California even provides *an automatic preservation* of claims that a releasing party may not know exist at the time of executing a release. For over 100 years, since 1872, the California Civil Code provided: "[a] general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her would have materially affected his or her settlement with the debtor or released party." Cal. Civ. Code § 1542. **New York law has mirrored this Code**. *See Clinton Street Food Corp.*, 254 B.R. 523, 535 (S.D.N.Y. 2000); *Cahill v. Regan*, 5 N.Y.2d 292, 184 N.Y.S.2d 348, 157 N.E.2d 505 (1959).

think allows them carte blanche to defame him in the most malicious way.

### B.      Plaintiffs Sufficiently Pled Claims Against Defendants as a Matter of Law.

Defendants argue that their maliciously false actions and statements concerning Judge Moore are not premised on a provably false statement of fact. Defs. Let. at p. 3. Defendants' argument not only goes too far but is incorrect, principally because it ignores the very definition of defamation and the limited role of the court in determining whether a publication is susceptible of a defamatory meaning. Defendants' misconduct clearly conveys the point that Judge Moore is a pedophile, and Defendants sanction this point. A court's role, however, is merely to say whether the publication and actions of Defendants could reasonably be construed as "tend[ing] to expose [Judge Moore] to hatred, contempt, or aversion, or to induce an evil or unsavory opinion of him . . ." *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 135-36, 182 N.Y.2d 1, 3 (1959). Defendants also confuse the law. The issue is not whether a reasonable viewer would believe that a "sex offender detector" wand is real; indeed defamation law does not require that interpretation. Rather, the issue is whether a viewer could have perceived a defamatory meaning. The author of an alleged defamatory publication need not have asserted the fact directly; he or she still may be liable if he asserts it by implication. *See Lutz v. Watson*, 136 A.D.2d 888, 525 N.Y.S.2d 80 (4th Dept. 1998).

Here, accusing someone of being a pedophile is not a matter of "poking fun" but an act of defamation in the worst way. Defendants' lean on the fact that Defendant Cohen used a "wand" with Judge Moore, thereby arguing that there is no such thing as an "authentic" sex offender wand. Defs. Let. at p 3. But, the implication that every viewer gleans from that wand and Defendants' misconduct is that not only are Defendants accusing Judge Moore of being a pedophile but that *he actually is* a pedophile, as he set off the "wand," realistic or not. There is nothing "nonsensical[,]" "silly" or even remotely humorous about that, particularly since Defendants even concede that there had been "a montage of news reports of the allegations against Judge Moore." *Id*.

Defendants' accusations are grounded in assertions of fact about Plaintiffs' alleged activities and are not framed in hyperbole, but rather purport to reply on news reports that establish the existence of Plaintiffs' alleged misconduct. *See Kelly v. Schmidberger*, 806 F.2d 44, 48 (2d Cir. 1986) (finding statement that plaintiff priests placed church property "in their own names" to be factual and imputing corrupt and possibly criminal conduct); *Coliniatis v. Dimas*, 848 F. Supp. 462, 466, 467 (S.D.N.Y. 1994) (determining that letter making accusation on "information of substantial but not absolute reliability" that company executive was engaged in a kick-back scheme could be factually verified and did not contain loose, figurative, or hyperbolic language that would negate the impression that the writer was asserting a statement of fact). This type of defamation, which, among other things, accuses Judge Moore of the worst kind of crime, is actionable on its face.

Defendants' contrived "long line" of cases that they purport to rely on in support of their position are easily distinguishable. For example, the *one* case that they actually cite, *Hustler v. Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 51-52 (1988), is inapposite. In an effort to save space, Plaintiffs will distinguish the case in their opposition to Defendants' motion to dismiss. The bottom line is this: one cannot engage in rank fraud and then falsely brand any person a pedophile on national and international television and escape without legal consequences. Defendants profited handsomely from their illegal actions, even arrogantly, shamelessly and proudly submitting and then promoting their repugnant scheme to defame for Golden Globe and Emmy awards. Now, they must be held to account for the damage done to Plaintiffs.

Plaintiffs look forward to briefing these and related issues fully in their opposition to Defendants' impending motion to dismiss.

Sincerely,

Larry Klayman

cc: Defendants' counsel