UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
-------------------------------------------------------------- x

ROY STEWART MOORE and KAYLA MOORE,   :

                    Plaintiffs,   :

          - against -   :

SACHA NOAM BARON COHEN, SHOWTIME   :
NETWORKS, INC., AND CBS CORPORATION,   :

             Defendants.   :
-------------------------------------------------------------- x

Index No. 19 Civ. 4977 (ALC)

**ORAL ARGUMENT REQUESTED**

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Elizabeth A. McNamara
Rachel F. Strom
Eric J. Feder
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020
(212) 489-8230
(212) 489-8340
lizmcnamara@dwt.com
rachelstrom@dwt.com
ericfeder@dwt.com

Of Counsel:
Russell Smith, Esq.
Jeff Holmes, Esq.

SMITHDEHN LLP
2500 Broadway
Building F, Suite F-125
Santa Monica, California  90404
(310) 396-9045
rsmith@smithdehn.com
jholmes@smithdehn.com

*Attorneys for Defendants Sacha Noam Baron Cohen,*
*Showtime Networks Inc. and CBS Corporation*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................... 1

I.   PLAINTIFFS CANNOT AVOID THE UNAMBIGUOUS TERMS OF THE SCA .......... 1

     A.   Plaintiffs Fail to Distinguish *Psenicska*, Which Is Dispositive of this Case ........... 1

     B.   Plaintiffs Cannot Avoid the Clear and Unambiguous Terms of the SCA .............. 4

          1.   Plaintiffs Cannot Avoid the Waiver of Their Claims By
               Characterizing the SCA as a "General Release" ........................................ 4
          2.   Deletion of a Clause Defining Invasion of Privacy Claims Has No
               Impact on the Rest of the SCA ................................................................. 5

II.  EVEN WITHOUT THE SCA, THE CLAIMS FAIL ON THE MERITS ......................... 7

     A.   The Program's Satire of Widely Reported Allegations Could Not
          Reasonably Be Interpreted as Conveying Actual Defamatory Facts ..................... 7

     B.   Plaintiffs Cannot Establish Intentional Infliction of Emotional Distress
          Based on Mockery of a Public Official ................................................................. 9

     C.   Plaintiffs Have Not Adequately Pleaded a Fraud Claim ....................................... 9

CONCLUSION .................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*28th Highline Assocs., L.L.C. v. Roache*,
   2019 WL 917208 (S.D.N.Y. Feb. 25, 2019) ............................................................................2

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*,
   773 F.3d 110 (2d Cir. 2014) ....................................................................................................7

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010) ....................................................................................10

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
   352 F.3d 775 (2d Cir. 2003) ....................................................................................................3

*Feifer v. Prudential Ins. Co.*,
   306 F.3d 1202 (2d Cir. 2002) ..................................................................................................5

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996) ......................................................................................................3

*HOP Energy, L.L.C. v. Local 553 Pension Fund*,
   678 F.3d 158 (2d Cir. 2012) .................................................................................................4, 5

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988) ...................................................................................................................9

*Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*,
   23 F.3d 55 (2d Cir. 1994) .........................................................................................................5

*Kidder, Peabody & Co. v. Zinsmeyer Trs. P'ship*,
   41 F.3d 861 (2d Cir. 1994) ....................................................................................................6, 7

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) .................................................................................................................7, 8

*Missel v. County of Monroe*,
   2011 WL 3648635 (W.D.N.Y. Aug. 17, 2011) .......................................................................9

*Process Am., Inc. v. Cynergy Holdings, LLC*,
   839 F.3d 125 (2d Cir. 2016) ....................................................................................................4

*Psenicska v. Twentieth Century Fox Film Corp.*,
   2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008), *aff'd*, 409 F. App'x 368 (2d Cir.
   2009) ................................................................................................................................ *passim*

*Rensselaer Polytechnic Inst. v. Varian, Inc.*,
   340 F. App'x 747 (2d Cir. 2009) ............................................................2

*Shah v. Racetrac Petroleum Co.*,
   338 F.3d 557 (6th Cir. 2003) ...............................................................3

*Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*,
   383 F. Supp. 2d 428 (S.D.N.Y. 2003).................................................10

*Torain v. Liu*,
   279 F. App'x 46 (2d Cir. 2008) ........................................................8, 9

*Van Buskirk v. N.Y. Times Co.*,
   325 F.3d 87 (2d Cir. 2003).....................................................................8

*Vurimindi v. Fuqua Sch. of Bus.*,
   435 F. App'x 129 (3d Cir. 2011) ...........................................................6

*Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*,
   149 F.3d 134 (2d Cir. 1998)...................................................................3

*Warren v. John Wiley & Sons, Inc.*,
   952 F. Supp. 2d 610 (S.D.N.Y. 2013).................................................10

*Woodard v. Reliance Worldwide Corp.*,
   2019 WL 3288152 (S.D.N.Y. July 22, 2019) ........................................6

**State Cases**

*Aronson v. Wiersma*,
   65 N.Y.2d 592 (1985) ............................................................................8

*Centro Empresarial Cempresa S.A. v. Am. Movil S.A.B. de C.V.*,
   17 N.Y.3d 269 (2011) ............................................................................7

*Citibank, N.A. v. Plapinger*,
   66 N.Y.2d 90 (1985) ..............................................................................3

*Danann Realty Corp. v. Harris*,
   5 N.Y.2d 317 (1959) .........................................................................3, 10

*Doe v. Channel Four Television Corp.*,
   2010 WL 1303493 (Cal. Ct. App. 2d Dist. Apr. 6, 2010).......................9

*Gilbane Bldg. Co. v. St. Paul Fire & Marine Ins. Co.*,
   143 A.D.3d 146 (1st Dep't 2016), *aff'd*, 31 N.Y.3d 131 (2018) ...............4

*Gross v. N.Y. Times Co.*,
   82 N.Y.2d 146 (1993) ............................................................................8

*Klapper v. Graziano*,
129 A.D.3d 674 (2d Dep't 2015), *leave to appeal denied*, 30 N.Y.3d 988
(2017) .......................................................................................................................5

*Salomone v. MacMillan Publ'g Co.*,
77 A.D.2d 501 (1st Dep't 1980) ............................................................................8

**Rules**

Rule 12(b)(6) .................................................................................................................10

**Constitutional Provisions**

First Amendment ..................................................................................................1, 8, 10

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp.")—and indeed, this entire lawsuit—rests on a series of fundamentally untenable premises: that Plaintiff Roy S. Moore, *the former Chief Justice of a state Supreme Court*, should not be held to the clear and unambiguous terms of a contract he signed; that this Court should simply disregard binding New York and Second Circuit law; and that a comedy sketch involving a fictional character wielding an obviously fake 'sex-offender-detector' device could be interpreted by any reasonable viewer as conveying "actual facts" about anyone. None of these arguments remotely holds water. Plaintiffs were no doubt unhappy to have the widely reported allegations of misconduct by Judge Moore satirized on television, particularly given his recently-announced intention to run for Senate once again. But under the plain language of the Standard Consent Agreement ("SCA")[1]—which is materially identical to the agreement upheld and enforced by the Second Circuit under the same circumstances in *Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368 (2d Cir. 2009)—and basic principles of the First Amendment, each of Plaintiffs' claims fails as a matter of law.

## ARGUMENT

## I.   PLAINTIFFS CANNOT AVOID THE UNAMBIGUOUS TERMS OF THE SCA

### A.   Plaintiffs Fail to Distinguish *Psenicska*, Which Is Dispositive of this Case

Defendants' Motion laid out the long line of New York cases in which courts readily enforced appearance releases signed by participants in movies and TV shows—even in the face of claims of fraud and fraudulent inducement. *See* Mem. at 9–11. In their Opposition, Plaintiffs simply ignore these cases, focusing instead on easily distinguishable out-of-state decisions. Most egregious is Plaintiffs' failure to address the Second Circuit's decision in *Psenicska* rejecting the

---

[1] Capitalized terms bear the same definitions as set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss (ECF No. 51) ("Mem.").

exact same fraudulent inducement argument from participants in the *Borat* film.

In the one reference Plaintiffs make to the "previous cases involving Borat," they suggest this case is distinguishable because Defendants allegedly "perpetrated fraud upon fraud" to "falsely brand[]" Judge Moore a "pedophile."  Opp. at 1.  But the plaintiffs in those cases also alleged "fraud and deceit"[2] and falsely "casting Plaintiffs as racially intolerant."  Ex. 10 at 2.  There too, the plaintiffs argued the agreements they signed were induced by multiple false representations about Defendant Cohen's identity ("a 'foreign dignitary' from the Republic of Belarus") and the purpose of the film ("a documentary to be shown on Belarus Television").  *Id.* ¶ 61.  In fact, the only meaningful distinction is that those plaintiffs were ordinary citizens, while Judge Moore was a state Supreme Court Justice.  The *Psenicska* court's refusal to "empower" even ordinary laypeople "to avoid the clear wording of their own contracts," 2008 WL 4185752, at *6 (S.D.N.Y. Sept. 3, 2008), should apply doubly to a judge with decades on the bench.

The *Psenicska* court rejected the plaintiffs' fraudulent inducement argument because, like the SCA, the consent agreements they signed contained express disclaimers of reliance "upon any promises or statements made by anyone about the *nature of the Film* or the *identity* of any other Participants or persons involved in the Film."  *Id.*  As the Second Circuit explained, "under New York law 'a party cannot justifiably rely on a representation that is specifically disclaimed in an agreement.'"  409 F. App'x at 371 (citation omitted).  And courts, including the Second Circuit, have repeatedly reaffirmed those "'venerable principles' of New York law."  *28th Highline Assocs., L.L.C. v. Roache*, 2019 WL 917208, at *10 (S.D.N.Y. Feb. 25, 2019) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 575 (2d Cir. 2005)).[3]

---

[2] Ex. 11 ¶ 2.  For the Court's convenience, copies of the complaints in those cases, which are available on CM/ECF, are attached as exhibits to the Supplemental Declaration of Elizabeth McNamara (filed herewith) and cited as "Ex. __."

[3] *See, e.g.*, *Rensselaer Polytechnic Inst. v. Varian, Inc.*, 340 F. App'x 747, 749–50 (2d Cir. 2009);

2

Rather than address *Psenicska*, Plaintiffs focus on a Sixth Circuit case rejecting a "rule that a merger clause makes reliance on oral representations unreasonable *per se* so as to necessarily defeat a fraudulent inducement or promissory fraud claim." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 568 (6th Cir. 2003). Defendants have never argued for such a rule. Indeed, the New York Court of Appeals' decision in *Danann Realty Corp. v. Harris* (which was the basis for the decision in *Psenicska*, *see* 409 F. App'x at 371) draws a clear distinction between a "general and vague merger clause," which would not in itself defeat a fraudulent inducement claim, and a contract in which the "plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded," which "destroys the allegations … that the agreement was executed in reliance upon … contrary oral representations." 5 N.Y.2d 317, 320–21 (1959).

Here, as in *Psenicska*, Plaintiffs' fraudulent inducement argument is not defeated by a mere "general merger clause." 5 N.Y.2d at 321. Rather, Judge Moore signed an agreement in which he expressly acknowledged that he was "not relying upon any promises or statements made by anyone about the *nature* of the Program or the *identity*, behavior, or qualifications of any other … persons involved in the Program"—the precise representations he now claims induced him to sign the SCA. SCA ¶ 5 (emphasis added). As in *Psenicska*, and "[a]s in *Dannan*, so too here: a Plaintiff may not claim to have relied on a statement upon which he or she has explicitly disclaimed reliance." 2008 WL 4185752, at *6.[4]

---

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2003); *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136–37 (2d Cir. 1998); *Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996); *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 94–95 (1985).

[4] Plaintiffs place great stock in the fact that their attorney wrote a letter to SNI before the Program aired, claiming that the SCA was "obtained through fraud, and was therefore void and inoperative." Opp. at 1. But they provide no authority for the proposition that a party can unilaterally nullify a contract by simply announcing their belief that it was fraudulently induced.

### B.     Plaintiffs Cannot Avoid the Clear and Unambiguous Terms of the SCA

Plaintiffs' other arguments to avoid the clear terms of the SCA fly in the face of the "bedrock principle of contract interpretation that 'a written agreement that is complete, clear and unambiguous on its face ***must*** be enforced according to the plain meaning of its terms.'" *Gilbane Bldg. Co. v. St. Paul Fire & Marine Ins. Co.*, 143 A.D.3d 146, 156 (1st Dep't 2016) (citation omitted) (emphasis added), *aff'd*, 31 N.Y.3d 131 (2018); *see also HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) ("Under New York law, a court must give full effect to unambiguous contract terms."). Here, the waiver clause of the SCA could not be more clear; Defendants seek only to enforce the "plain meaning of its terms."

### 1.     Plaintiffs Cannot Avoid the Waiver of Their Claims By Characterizing the SCA as a "General Release"

The waiver clause in the SCA specifically includes each of the claims Plaintiffs assert in this case. *See* SCA ¶ 4. Plaintiffs nevertheless argue that the SCA's inclusion of the phrase "any claims" somehow transforms this explicit waiver into an "improper general release," which requires the Court to "proceed to determine the intent of the parties," based, apparently, on what Plaintiffs subjectively "believed" the agreement meant. Opp. at 11. As an initial matter, the SCA is self-evidently <u>not</u> a "general release," but a specific waiver of specific claims "*related to the Program*" (expressly identifying defamation, emotional distress, and fraud claims). Plaintiffs cite nothing to support the bizarre notion that inclusion of additional broad language ("any claims") means that the waiver of specific claims can be disregarded. *Cf. Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016) ("[U]nder New York law … the contract 'should be construed so as to give full meaning and effect to all of its provisions.'") (citation omitted). Indeed, the agreements in *Psenicska* contained the same "any claims" language, and the Second Circuit correctly enforced the waiver in those agreements. *See also Klapper v. Graziano*, 129 A.D.3d 674, 675 (2d Dep't 2015) (enforcing release of "all manner of

4

liabilities, claims and demands of any kind or nature" in appearance release "commonly used in the entertainment industry"), *leave to appeal denied*, 30 N.Y.3d 988 (2017).

Of course, even if the Court did need to "determine the intent of the parties" in executing the waiver provision, "[i]t is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." *Feifer v. Prudential Ins. Co.*, 306 F.3d 1202, 1210 (2d Cir. 2002). Here, under the unambiguous language of the SCA, the parties' objectively manifested intent was to waive claims for, *inter alia*, defamation, emotional distress and fraud arising out of production of the Program. The fact that Judge Moore may not have specifically "contemplated" the precise scenario that led to this lawsuit is of no moment. Opp. at 10–11. Indeed, "[w]ith unambiguous contracts, a party's subjective intent and understanding of the terms is irrelevant." *HOP*, 678 F.3d at 162.[5]

As a state Supreme Court Justice, Judge Moore was well aware of these basic principles of contract interpretation, but signed the SCA anyway. He cannot avoid its terms now.

## 2. Deletion of a Clause Defining Invasion of Privacy Claims Has No Impact on the Rest of the SCA

The same refusal to grapple with the plain language of a contract infects Plaintiffs' argument that, pursuant to Judge Moore's handwritten edit of the SCA, "Defendants <u>agreed</u> to not discuss anything that was 'sexual oriented or offensive behavior or questioning," and then "breach[ed]" that agreement. Opp. at 4, 7. There was no such agreement. At most, the edit only limited the scope of the waiver of privacy claims—claims which Plaintiffs do not assert.

As noted in the Motion, New York law is clear that modification of a contract "supplants the affected provisions of the original agreement while leaving the balance of it intact."

---

[5] *See also Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55, 58–59 (2d Cir. 1994) (where "the language with respect to the parties' intent is clear and unambiguous, it will be given effect, *regardless of one party's claim that he intended something else*") (emphasis added).

*Woodard v. Reliance Worldwide Corp.*, 2019 WL 3288152, at *4 (S.D.N.Y. July 22, 2019) (citation omitted).  What Plaintiffs refer to as an "amendment" to the SCA amounts to crossing-out the phrase "(such as any allegedly sexual oriented or offensive behavior or questioning)" that followed the listing of "intrusion or invasion of privacy" among the claims being waived.  Apart from that one deletion, the SCA is unchanged.  Yet, Plaintiffs do not assert a privacy claim.  And in signing the so-modified SCA, Judge Moore still unambiguously waived any claims "related to the Program," expressly including emotional distress, defamation and fraud claims.  Moreover, Judge Moore did not modify the SCA's unequivocal statement that he had "no expectations or understandings concerning the conduct, *offensive or otherwise*, of anyone involved in this Program."  SCA ¶ 5 (emphasis added).  There is no basis whatsoever to claim Defendants "agreed" to not discuss anything "sexual[ly] oriented or offensive."

Based on the plain language of the modified SCA, the <u>most</u> that could be said is that Judge Moore refused to waive claims for "intrusion or invasion of privacy" that were based on "sexual oriented or offensive behavior or questioning."  But, as noted above, Plaintiffs don't even assert any such claim here.  An invasion of privacy claim (in the jurisdictions that recognize it) is "based on the publication of true but 'private' facts."  *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 134 (3d Cir. 2011).  Plaintiffs' claim here is based on allegedly *false* statements about allegations that had been extensively reported—the very opposite of "true but 'private' facts."  Carving out a particular category of invasion of privacy claims (or even all invasion of privacy claims) from the waiver clause simply has no bearing on the separate waiver of emotional distress, defamation or fraud claims, each of which waivers remains in full force.[6]

---

[6] The Second Circuit's decision in *Kidder, Peabody & Co. v. Zinsmeyer Trs. P'ship*, 41 F.3d 861 (2d Cir. 1994), is analogous.  There, the parties entered into a form agreement containing an arbitration clause as well as a separate clause binding the plaintiff brokerage firm to NASD rules, which provide that a customer can demand arbitration.  *Id.* at 863.  The parties had agreed to cross out the first arbitration clause, but "left intact" the NASD rules clause.  *Id.*  The court held the broker was still

Judge Moore may well have subjectively intended his striking the "sexual oriented" clause to convey an agreement to keep those topics entirely off limits, but that is not at all reflected in the language of the agreement itself, and a court may not interpret a contract based on unexpressed assumptions in one party's mind. *See, e.g.*, *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 120–21 (2d Cir. 2014) ("It is not the real intent but the intent expressed or apparent in the writing which is sought; it is the objective, not the subjective, intent that controls.") (quoting Williston on Contracts § 31:4).[7]  If *former Chief Justice Roy Moore* wanted to create an enforceable agreement that certain questions would not be asked, he knew full well how to do so; simply crossing out a parenthetical example of a privacy claim is not it.

Plaintiffs' arguments cannot overcome the clear language of the SCA, under which the claims here were waived, and reliance on statements about the identity of the producers and nature of the Program was disclaimed.  The result should be no different than in *Psenicska*.

## II.     EVEN WITHOUT THE SCA, THE CLAIMS FAIL ON THE MERITS

### A.     The Program's Satire of Widely Reported Allegations Could Not Reasonably Be Interpreted as Conveying Actual Defamatory Facts

Plaintiffs' defamation claim falters at the starting gate because the Program "cannot reasonably be interpreted as stating actual facts about" Judge Moore.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).  Asking the Court to ignore the content and context of the Program, Plaintiffs assert that the Program contained the "actual factual statement … that Judge Moore was a child molester."  Opp. at 15.  But a casual viewing of the segment at issue reveals that the alleged "statement" consists of nothing more than the "beeping" sound from a clearly

---

obligated to arbitrate, reasoning that the striking out of one paragraph related to arbitration would not nullify a separate provision that independently required arbitration.  *See id.*

[7] *See also Centro Empresarial Cempresa S.A. v. Am. Movil S.A.B. de C.V.*, 17 N.Y.3d 269, 277 (2011) ("[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.") (citation omitted).

bogus "sex-offender-detector" held by an overtly fictional character.  Any reasonable viewer of the Program could only interpret the segment for what it plainly was: a comedic parody of the public allegations against Judge Moore that were explicitly referenced in the montage of news clips that opens the segment.  Satire of a widely-reported scandal involving a public official is fully protected by the First Amendment.  *See Milkovich*, 497 U.S. at 20; Mem. at 19–22.

Plaintiffs incorrectly argue that the question whether the "statements" are "factual and false must go to the jury to decide."  Opp. at 15.[8]  Courts are clear that "[w]hether particular words are defamatory presents a legal question to be resolved by the court in the first instance." *Aronson v. Wiersma*, 65 N.Y.2d 592, 593–94 (1985).[9]  Even where the words at issue could, in a different context, be considered defamatory, courts dismiss cases at the pleading stage where "a reasonable listener could not have believed that the statements were intended to convey actual facts."  *Torain v. Liu*, 279 F. App'x 46, 46–47 (2d Cir. 2008) (affirming dismissal of libel claim based on radio broadcast in which defendant called plaintiff a "sick racist pedophile," "loser pedophile" and "child predator").  Here, the Court can easily determine as a matter of law that no reasonable viewer would believe that the fictional "Erran Morad" was "convey[ing] actual facts"

---

[8] To support this contention, Plaintiffs rely on a single 1978 state court decision holding that whether a written statement that the plaintiff "was a child molester" was "nonactionable humor or compensable libel" was a question for the jury.  Opp. at 14.  Not only is that premise contradicted by subsequent, clear authority from the New York Court of Appeals, *see infra*, but, as Plaintiffs acknowledge, the ruling was reversed on appeal.  Contrary to Plaintiffs' assertion, the reversal was not simply because the "Plaintiff had not pled special damage," Opp. at 14 n.1, but because the plaintiff could point to "no one who believes he was a child molester or thinks less of him due to the publication" of the parody book at issue.  *Salomone v. MacMillan Publ'g Co.*, 77 A.D.2d 501, 502 (1st Dep't 1980).  Plaintiffs' libel claim fails for the same reason.

[9] *See also Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152-53 (1993) ("The dispositive inquiry, under either Federal or New York law, is 'whether a reasonable [reader] could have concluded that [the articles were] conveying facts about the plaintiff,'" and that "inquiry … must be made by the court."); *Van Buskirk v. N.Y. Times Co*., 325 F.3d 87, 90 (2d Cir. 2003) ("court must decide as a threshold issue" if a statement is "reasonably susceptible to the defamatory meaning imputed to it").

about Judge Moore.  *Id.*[10]   And much as they wish it were otherwise, Plaintiffs cannot ground a

defamation claim in satirical mockery of a public figure based on widely reported allegations.

### B.     Plaintiffs Cannot Establish Intentional Infliction of Emotional Distress Based on Mockery of a Public Official

Because the Program did not state any "actual facts" about Plaintiff, Plaintiffs' IIED

claim is squarely precluded by *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988).  *See* Mem.

at 23.  But even if the Program did defame Judge Moore (and it did not) and the IIED claim were

not simply duplicative of the defamation claim (and it is, *see* Mem. at 22), Plaintiffs still cannot

plead an IIED claim based on a single television program satirizing already-reported purportedly

defamatory accusations against a prominent public figure.  *See* Mem. at 23–24.  In the one case

Plaintiff found where an accusation of pedophilia partially supported an IIED claim, the

defendant, a former police officer, also initiated a sham police investigation into the plaintiff,

hacked into his computer, stalked him, secretly videotaped him at his home and even attached a

rotting fish head to his car.  *See Missel v. County of Monroe*, 2011 WL 3648635, at *7

(W.D.N.Y. Aug. 17, 2011).  But Plaintiffs cannot point to any case in which an outspoken public

official (or his spouse) could claim infliction of emotional distress merely from being satirized

on a comedy program.  As the U.S. Supreme Court recognized in *Falwell*, "vehement, caustic, and

sometimes unpleasantly sharp attacks" against public figures and public officials are "inevitable"

in our system of democracy, and may not be the basis for liability.  485 U.S. at 51–52.

### C.     Plaintiffs Have Not Adequately Pleaded a Fraud Claim

As Defendants explained in their Motion, Plaintiffs cannot plead a fraud claim based on

---

[10] In a strikingly similar case, the California Court of Appeal held that statements made by Defendant Cohen in character on his prior television program "Da Ali G Show" were not actionable where "a reasonable viewer could not have understood the statements to convey a provably false assertion of fact, but instead merely as a joke or parody."  *Doe v. Channel Four Television Corp.*, 2010 WL 1303493, at *5 (Cal. Ct. App. 2d Dist. Apr. 6, 2010).

reputational harm, which is all that Plaintiffs claim.  *See* Mem. at 24–25.  In addition, the specific disclaimer of reliance in the SCA "destroys" any possibility of pleading the essential element of justifiable reliance—whether or not the waiver clause is enforced.  *Danann*, 5 N.Y.2d at 320–21.  And finally, Plaintiffs fail to allege injury in fact.  They concede that only out-of-pocket loss is compensable in fraud, but argue that their conclusory allegation that Plaintiffs "suffered … financial loss" is sufficient to satisfy their pleading burden.  Opp. at 17.  It is not.  Courts consistently hold that such "bare bones assertions" of loss "fail to satisfy the basic requirements of Rule 12(b)(6)."  *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 622–24 (S.D.N.Y. 2013) (dismissing fraudulent concealment claim where complaint alleged only that the plaintiff "suffered unique and distinct pecuniary damages as a result of Defendant's fraud").[11]  Plaintiffs have not alleged the loss of a single penny as a result of the alleged fraud which, in and of itself, requires dismissal of the claim.  And Plaintiffs offer no response at all to the fact that fraud claims based on a broadcast or publication of information or commentary would be inconsistent with the First Amendment.  *See* Mem. at 25.  This claim also must be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: November 19, 2019                    Respectfully Submitted,

                                            /s/ *Elizabeth A. McNamara*
                                            Elizabeth A. McNamara
                                            Rachel F. Strom
                                            Eric J. Feder
                                            DAVIS WRIGHT TREMAINE LLP
                                            1251 Avenue of the Americas, 21st Floor
                                            New York, New York  10020
                                            (212) 489-8230
                                            (212) 489-8340 (fax)

---

[11] *See also Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 430–32 (S.D.N.Y. 2010); *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 454–58 (S.D.N.Y. 2003).

Of Counsel:
Russell Smith, Esq.

Jeff Holmes, Esq.
SMITH DEHN LLP
2500 Broadway
Building F, Suite F-125
Santa Monica, California  90404
(310) 396-9045
rsmith@smithdehn.com
jholmes@smithdehn.com

*Attorneys for Defendants*