# KLAYMAN LAW GROUP
A PROFESSIONAL ASSOCIATION

| | | |
|---|---|---|
| Larry Klayman, Esq. | 2020 Pennsylvania Ave. N.W., #800<br>Washington, DC, 20006 | Tel: 561-558-5336<br>Fax: 202-379-9289 |

March 16, 2020

**Via ECF**

Hon. Andrew L. Carter, Jr.
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Moore, et al. v. Cohen, et al.*, **1:19-cv-4977-ALC and the Court's Order During the Status Conference of March 9, 2020 – Letter Brief Setting Forth Misstatements of Fact and Law.**

Dear Judge Carter:

Pursuant to Your Honor's Order of March 9, 2020, Plaintiffs hereby respectfully submit the following based on the compelling facts and law of this case:

**Introduction**

Defendants misstate four (4) fundamental aspects of this case. The first major misrepresentation is Defendants' intentional misreading of the law in New York, which expressly incorporates California law, concerning releases.

The second misrepresentation is that Defendants essentially ignore the hard fact that Plaintiff Judge Moore explicitly crossed out and initialed the language which referred to "sexual oriented or offensive behavior or questioning" and that by the plain language of the release itself, Defendants cannot be released from violating their own signed "release."

A third misrepresentation is that it is clear to any reasonable person that this case is not at all analogous to the cases Defendants cite to, particularly *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) and the Borat case, *Psenicska v. Twentieth Century Fox Film Corp.*, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008). Those cases were instances of true parody, not an attempt to capitalize and financially profit on very vicious yet very real allegations of sexual misconduct against the former Chief Justice of Alabama.

And fourth, Defendants intentionally and misleadingly ignore the hard fact that they were put on notice prior to the publication of the per se defamatory broadcast that it would be defamatory, thus cementing the uncontroverted fact that the release cannot exonerate them from any claim of actual malice and thus defamation per se. Further, both CBS and Showtime were

1

not even identified or named in the inoperative release, and their actions are simply not covered by the inoperative release.

**Defendants Misstate the Law**

First, New York law does not construe a general release to bar claims for injuries unknown at the time the release was executed, even when the release contains broad language. *E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273 (S.D.N.Y. 2006). The fundamental legal principle that a release does not extent to claims that a party does not know or suspect at the time of executing the release is deeply rooted in American law. Indeed, every jurisdiction includes some form of law refusing to bar claims for injuries undiscovered at the time the parties execute an agreement, including New York. For example, in a landmark decision styled *E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273 (S.D.N.Y. 2006), the Court held unequivocally:

> **A release that employs general terms will not bar claims outside the parties' contemplation at the time the release was executed. New York law does not construe a general release to bar claims for injuries unknown at the time the release was executed, even when the release contains broad language (internal citations omitted); Cal. Civ. Code § 1542 (West 2005) [] ("A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.").**

*Id*. at 284 (emphasis added); *see also*, *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc*., 354 F. Supp. 2d 293, 299 (S.D.N.Y. 2004) (same holding). Neither New York case is overruled.

In California, consistent with other state laws, this ingrained doctrine dates back to at least 1872 when Section 1542 was first codified in the Civil Code. Originally, Section 1542 read:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Cal. Civ. Code § 1542 (before January 1, 2019). This provides an automatic preservation of claims that a releasing party may not know exist at the time of executing a release. On February 16, 2018, the California Conference of Bar Associations introduced a bill clarifying changes in the terminology of Section 1542 and sought to create an even lower threshold for a releasor to attack an executed release. Effective January 1, 2019 the release language provided in Section 1542 reads:

> A general release does not extend to claims which **that** the creditor **or releasing party** does not know or suspect to exist in his or her favor at the time of executing the release which **and that**, if known by him or her, must **would** have materially affected his or her settlement with the debtor **or released party**.

Cal. Civ. Code § 1542. This statutory amendment resulted from California Senate Bill No. 1431 and as Section 3 of the bill states, the amendments "are declaratory of existing law." The amended version adds "releasing party" and "released party" alongside "creditor" and "debtor" and also changes "must have materially affected" to "would have materially affected" regarding the creditor's or releasing party's decision to settle. Importantly, a court or arbitrator can conclude that "would have materially affected" is a far lesser standard than "must have materially affected." Thus, settlement and release agreements are even more vulnerable to attack as applied to unknown claims. The intent of this statute is to prevent the person releasing claims from inadvertently waiving unknown claims merely by signing a release. *Casey v. Proctor*, 59 Cal.2d 97 (1963).

For decades, New York law has mirrored and adopted the seminal, California Supreme Court case *Casey v. Proctor* and California Civil Code § 1542. "It is also a firm principle of New York law that it is less likely that claims are covered by a general release if they are unknown at the time of the release." *Actrade Liquidation Trust v. Greenich Ins. Co. (In re Actrade Fin. Techs. Ltd.)*, 424 B.R. 59 (S.D.N.Y. 2009); *see also Clinton Street Food Corp.*, 254 B.R. 523, 535 (S.D.N.Y. 2000) (citing *Enock v. Nat'l Westminister Bankcorp*, 226 App. Div. 2d 235, 641, N.Y.2d 27, 28 (1st Dep't 1996). **Both the *E\*Trade Fin Corp*. and *Maddaloni Jewelers, Inc.* courts even use California Code § 1542 *as a citation* to support their position in the U.S. District Court for the Southern District of New York**. *E\*Trade Fin. Corp.*, 420 F. Supp. 2d at 284; *Maddaloni Jewelers, Inc*., 354 F. Supp. 2d at 299. Indeed, "[e]ven the most broadly drawn general release cannot necessarily be taken at face value." *Clinton*, 254 B.R. at 534.

In *Actrade Liquidation Trust*, a debtor's successor-in-interest, i.e., a liquidation trust and another debtor's trustee, sought a declaratory judgment that defendants were liable on bonds aggregating $14 million that they issued in favor of debtor. *Actrade Liquidation Trust*, 424 B.R. at 60-61. The court denied cross-motions for summary judgment on the defense of the release and the parties proceeded to trial. At trial, the sole issue was the viability of the release defense. There was "no question" that the release "cover[ed] *all* claims against the Sureties." *Id*. at 69. (emphasis in original). The court held that the "general language would be conclusive **but for the principle of New York law that a release, general on its face, will be limited to those claims within the contemplation of the parties at the time**." *Id*. (emphasis added). "[T]he cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form. *Id*. (citing *Mangini v. McClurg*, 24 N.Y.2d 556, 562, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969).

As stated in *Mangini*, "the New York cases in which a release has been limited and found not to cover unforeseen matters are in fact 'many.'" *Actrade Liquidation Trust*, 424 B.R. at 69 (citing *Mangini*, 24 N.Y.2d at 562). Cases cited by *Mangini* include *Cahill v. Regan*, 5 N.Y.2d 292, 184 N.Y.S.2d 348, 157 N.E.2d 505 (1959), where the court held that: "[c]ertainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of." *Id*. at 299-300. In *Cahill*, releases were exchanged in a replevin action, and one party sought to apply them to a subsequent patent dispute. The court limited the releases to the matters in dispute at the time the releases were executed and, on this ground, declined to extend the general releases to the later patent action. *Id*.

The *Mangini* court also cited *Simon v. Simon*, 174 App. Div. 447, 84 N.Y.S.2d 307 (1st Dep't 1948), in which it was held that "[w]hether a release is to be treated as including all possible claims depends upon the purpose for which the release is given." *Id*. at 449. In *Simon*, the court held that the parties sought to settle alimony claims and a claim by the plaintiff to a co-partnership interest when the parties executed the release. There was no dispute at the time as to the plaintiff's title to certain property. Although the release was general in form, the court declined to bar any claims relating to such property. *See also Haskell v. Miller*, 221 App. Div. 48, 222 N.Y.S. 619 (1st Dep't 1927) (holding that the fact that settlement agreements contained recitals regarding particular claims limited the general words of a release to the claims that were within the parties' contemplation); *Mitchell v. Mitchell*, 170 A.D. 452, 156 N.Y.S. 76 (App. Div. 1915) (same); *Rubinstein v. Rubinstein*, 109 N.Y.S.2d 725, 732 (Sup. Ct. N.Y. Co. 1951) (same).

Additionally, the dispositive factor in determining the scope of a release, which Defendants must know, is the parties' intent. *Id*. at 284-85; *see also Neuman v. Harmon*, 965 F. Supp. 503, 509 (S.D.N.Y. 1997). A court must "determine the intent of the parties by examining the entirety of the settlement, the parties' acts, and all other conduct and surrounding circumstances that bear on the issue." *Actrade*, 424 B.R. at 73. See below.

**<u>Defendants Ignore Their Own Inoperative Release</u>**

Second, consistent with Defendants' misrepresentation of New York law is their refusal to even acknowledge the fact that Plaintiff Judge Moore explicitly crossed out and initialed the language in the release which referred to "sexual oriented or offensive behavior or questioning." By signing the agreement, Defendants agreed to this express modification. But, even if Defendants did not agree to it – which they did – the "release" would still fail as there could not have been a meeting of the minds or an intent to be bound to something that the Judge affirmatively did not agree to. Again, "[t]he words must manifest the releasor's intent to discharge and the dispositive element in determining the scope of a release is the parties' intent. *Neuman*, 965 F. Supp. at 509; *see also Albany Savings Bank v. Halpin*, 918 F. Supp. 553, 557 (N.D.N.Y. 1996) (the intent of the parties "governs the scope of a release."). This Court must determine intent by examining, among other things, "the parties' acts." *Actrade Liquidation Trust*, 424 B.R. at 73. When Plaintiff Judge Moore modified the release and crossed out the language referring to sexual behavior, and Defendants signed it, not only did they agree not to raise any sexual issue but also it clearly demonstrates that the parties did not have a meeting of the minds.

**<u>Defendants' Citations Are Not Applicable</u>**

Third, the Borat and Jerry Falwell cases are inapposite and simply do not apply. *Psenicksa v. Twentieth Century Fox Film Corp.*, No. 07-cv-10972, 2008 Dist. LEXIS 69214 (S.D.N.Y. Sept. 3, 2008) discussed oral misrepresentations, not a signed "release" where one party signed and agreed to a modification concerning the very issue that was sued upon. And *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) held that the First Amendment does not permit a public figure's recovery for what was *clearly* a parody and *did not purport to convey any true facts*. *Id*. at 57. The plaintiff there, a well-known pastor and televangelist, was depicted as recalling his "first time" during a drunken incestuous rendezvous with his mother in an

4

outhouse. *Id*. at 48. Moreover, there, on the bottom of the advertisement parody which presented the ridiculous story read "ad parody not to be taken seriously." *Id*.

Here, Defendants' misconduct clearly conveys the point that Plaintiff Judge Moore is a pedophile as he set off the "sex offender detector."

THIS IS NOT PARODY, BUT A REFERENCE TO A REAL LIFE BUT OUTRAGEOUSLY AND FALSE ALLEGATION THAT IF LEFT UNADDRESSED WOULD RING TRUE! DEFENDANTS CANNOT DISINGENUOUSLY HIDE BEHIND THE PHONY VEIL OF ALLEGED PARODY, WHICH THIS IS NOT!

This Court's role is to merely say whether the publication and actions of Defendants could reasonably be construed as "tend[ing] to expose [Judge Moore] to hatred, contempt, or aversion, or to induce an evil or unsavory opinion of him. . ." *Tracy v. Newsday, Inc*., 5 N.Y.2d 134, 135-36, 182 N.Y.2d 1, 3 (1959). The issue is not whether a "sex offender wand" is real; indeed defamation law does not require that interpretation. The issue is whether a viewer could have perceived a defamatory meaning. Defendants' misleading accusations are grounded in assertions of fact about Plaintiffs' alleged activities and are not framed in hyperbole, but rather purport to rely on news reports that allegedly establish the existence of Plaintiffs' alleged misconduct. *See Kelly v. Schmidberger*, 806 F.2d 44, 48 (2d Cir. 1986) (finding statement that plaintiff priests placed church property "in their own names" to be factual and imputing corrupt and possibly criminal conduct); *Coliniatis v. Dimas*, 848 F. Supp. 462, 466, 467 (S.D.N.Y. 1994) (determining that letter making accusation on "information of substantial but not absolute reliability" that company executive was engaged in a kick-back scheme could be factually verified and did not contain loose, figurative, or hyperbolic language that would negate the impression that the writer was asserting a statement of fact). This type of defamation, which, among other things, accuses Judge Moore of the worst kind of crime, is actionable on its face.

**Plaintiff Judge Moore Put Defendants on Notice Before the Defamatory Publication**

Plaintiff Judge Moore put Defendants on notice before their defamatory publication that if they aired the fraudulently induced interview, appropriate legal remedies would follow. *See* Exhibit 1. Specifically, counsel for Plaintiff Judge Moore sent a letter to David Nevins, President and CEO of Showtime and Leslie Moonves, CEO of CBS which read:

> PLEASE BE ADVISED that my client, Judge Roy Moore, was fraudulently induced to fly to Washington, DC in mid-February 2018 for an interview with so-called Yerushalayim TV. I understand that Showtime and CBS intend to air this interview.
>
> During that interview, Judge Moore signed a release. However, "[a] release obtained by fraud is void." *Taylor v. Dorough*, 547 So.2d 536, 540 (Ala. 1989).

> If CBS/Showtime airs an episode based on the above-referenced fraudulently obtained interview that defames my client, resort to appropriate legal remedies will follow.
>
> This letter is a preemptive notice under § 6-5-186, Ala. Code 1975.

*See* Exhibit 1. Despite this warning, Defendants, to boost the ratings of their show, for pure profit, maliciously aired the defamatory broadcast anyway. Plaintiff Judge Moore informed Defendants that the so-called release was obtained through fraud and was therefore void and inoperative. Moreover, to the extent the release "releases" a party from liability – which it does not – Defendants CBS and Showtime were not even named in the alleged release. Therefore, even if the Court found it operative – which this Court cannot find -- Defendants still would not be released from their outrageous and malicious conduct.

**Conclusion**

Plaintiff Judge Moore respectfully asks this Court to step in and dispel the arrogant notion that these media conglomerates are immune from liability when they intentionally and maliciously destroy a person's reputation. Indeed, "the danger implicit in affording blanket protection to Defendants' phony claim of parody simply does not wash. That straw dog simply will not hunt! The principle under New York law is clear and well established; namely that a person shall not be allowed to murder another person's reputation (even) in jest." *Frank v. National Broadcasting, Co.*, 119 A.D.2d 252, 257 (N.Y. App. Div. 1986).

For all of these compelling reasons, Defendants' motion to dismiss must now be denied and this case should now move forward.


Sincerely,


/s/ Larry Klayman
Larry Klayman, Esq.

cc: Defendants' Counsel

# EXHIBIT 1

Mr. David Nevins
President & CEO
Showtime Networks, Inc.
1633 Broadway
New York, NY 10019

Leslie Moonves, CEO
CBS Corporation
51 W. 52nd Street
New, NY 10019

RE: *Fraudulently obtained interview with Judge Roy Moore*

Dear Mr. Nevins:

PLEASE BE ADVISED that my client, Judge Roy Moore, was fraudulently induced to fly to Washington, DC in mid-February 2018 for an interview with so-called Yerushalayim TV. I understand that Showtime and CBS intend to air this interview.

During that interview, Judge Moore signed a release. However, "[a] release obtained by fraud is void." *Taylor v. Dorough*, 547 So. 2d 536, 540 (Ala. 1989).

If CBS/Showtime airs an episode based on the above-referenced fraudulently obtained interview that defames my client, resort to appropriate legal remedies will follow.

This letter is a preemptive notice under § 6-5-186, Ala. Code 1975.

Sincerely,

Melissa L. Isaak

**Label 1 (top):**

FROM:
Isaak Law Firm
1290 Shellfield Rd
Enterprise, AL 36330

USPS Priority Mail Express
EE 136181280 US

TO:
Mr. David Nevins
President & CEO
Showtime Networks, Inc.
1633 Broadway
New York, NY 10019
ZIP+4: 10019

PO ZIP Code: 36330
Scheduled Delivery Date: 07/27/18
Postage: $24.70
Date Accepted: 07/26/18
Scheduled Delivery Time: 12 NOON
Time Accepted: 2:10 PM
Return Receipt Fee: $2.75
Weight: 2 lb 1 oz
Flat Rate
Acceptance Employee Initials: BS
Total Postage & Fees: $27.45

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

LABEL 11-B, OCTOBER 2016   PSN 7690-02-000-9996   2-CUSTOMER CO

---

**Label 2 (bottom):**

FROM: PHONE (334) 770-4636
Isaak Law Firm
1290 Shellfield Rd
Enterprise, AL 36330

USPS Priority Mail Express
EE 136181276 US

TO:
Leslie Moonves, CEO
CBS Corporation
51 W 52nd St
New York, NY 10019
ZIP+4: 10019

PO ZIP Code: 36330
Scheduled Delivery Date: 07/27/18
Postage: $24.70
Date Accepted: 07/26/18
Scheduled Delivery Time: 12 NOON
Time Accepted: 2:07 PM
Weight: 2 lb 1 oz
Flat Rate
Acceptance Employee Initials: BS
Total Postage & Fees: $27.45

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

LABEL 11-B, OCTOBER 2016   PSN 7690-02-000-9996   2-CUSTOMER CO

```
=====================================
              ENTERPRISE
            616 GLOVER AVE
              ENTERPRISE
                  AL
              36330-2008
              0127600330
  07/26/2018   (800)275-8777   2:11 PM
=====================================
=====================================
Product              Sale       Final
Description          Qty        Price

PM Exp 1-Day          1        $24.70
Flat Rate Env
    (Domestic)
    (NEW YORK, NY  10019)
    (Flat Rate)
    (Signature Requested)
    (Scheduled Delivery Date)
    (Friday 07/27/2018 12:00 PM)
    (Money Back Guarantee)
    (USPS Tracking #)
    (EE136181276US)
PM Exp                1         $0.00
Insurance
    (Up to $100.00 included)
Return                1         $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940240038079567762)
PM Exp 1-Day          1        $24.70
Flat Rate Env
    (Domestic)
    (NEW YORK, NY  10019)
    (Flat Rate)
    (Signature Requested)
    (Scheduled Delivery Date)
    (Friday 07/27/2018 12:00 PM)
    (Money Back Guarantee)
    (USPS Tracking #)
    (EE136181280US)
PM Exp                1         $0.00
Insurance
    (Up to $100.00 included)
Return                1         $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940240038079567779)

Total                          $54.90

Cash                           $60.00
Change                        ($5.10)
```

Includes up to $100 insurance

In a hurry? Self-service kiosks offer quick and easy check-out. Any Retail Associate can show you how.

Save this receipt as evidence of insurance. For information on filing an insurance claim go to https://www.usps.com/help/claims.htm.

Preview your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage
Refunds for guaranteed services only
Thank you for your business