# K<span/>LAYMAN L<span/>AW G<span/>ROUP
A P<span/>ROFESSIONAL A<span/>SSOCIATION

Larry Klayman, Esq.  2020 Pennsylvania Ave. N.W., #800  Tel: 561-558-5336

Washington, DC, 20006

Fax: 202-379-9289

March 27, 2020

**Via ECF**

Hon. Andrew L. Carter, Jr.
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

**Re:**   *Moore, et al. v. Cohen, et al.*, **1:19-cv-4977-ALC and the Court's Order During the Status Conference of March 9, 2020 – Letter Brief Reiterating the Bona Fide Actionable Claims of Mrs. Kayla Moore Against Defendants**

Dear Judge Carter:

Pursuant to Your Honor's Order of March 9, 2020 concerning whether this case may proceed with only Plaintiff Kayla Moore ("Mrs. Moore") as a plaintiff, Plaintiffs hereby respectfully submit the following based on the compelling facts and law of this case:

First, Plaintiffs submit that both Plaintiff Judge Roy Moore ("Judge Moore") and his wife, Mrs. Moore, have sufficiently pled causes of action for defamation for Judge Moore and intentional infliction of emotional distress and fraud for both Judge Moore and Mrs. Moore. As outlined in Plaintiffs previous letter brief of March 16, 2020 [Dkt. # 63], Defendants' release fails to protect them for their malicious conduct for a myriad of reasons, not the least of which is the fact that Defendants agreed to Judge Moore's alteration of it, thereby acknowledging his desire to change it while simultaneously proving that they acted intentionally when they maliciously defamed him.

Second, and importantly, Mrs. Moore is not a party to the release. Even assuming, *arguendo*, that the Defendants' release is solid, it is only between Judge Moore and the fictious and non-existent Yerushalayim TV. "This is an agreement between Yerushalayim TV (including its assigns, licensees, parents, subsidiaries, and affiliates) (collectively, the "Producer") and the undersigned participant (the "Participant"). *See* Exhibit 1. It is crystal clear that Mrs. Moore is not the "Participant" as it was only Judge Moore and Yerushalayim TV who signed the release.

Third, Mrs. Moore sufficiently pled that she was directly affected by Defendants' unlawful conduct. *See* Compl. at ¶ 8. Indeed, the Complaint is replete with allegations concerning Mrs. Moore. For example, Mrs. Moore pled:

1

> In order to **fraudulently induce Judge Moore and Mrs. Moore** to travel to Washington, D.C., where filming was to and did take place, and where the majority of acts pled herein occurred . . . Defendant Cohen and his agents falsely and fraudulently represented to Plaintiff that Yerushalayim TV – which does not actually exist – was the producer and broadcaster of the show . . . Defendant Cohen and his agents **falsely and fraudulently represented that Judge Moore and Mrs. Moore were both being invited to Washington, D.C**., for Judge Moore to receive an award for his strong support of Israel in commemoration of its 70th anniversary as a nation state.

Compl. at ¶ 15 (emphasis added).

> Had **Judge Moore and Mrs. Moore** known that Defendant Cohen had fraudulently induced Judge Moore into this interview, which as a "set up" to harm and **thus damage Plaintiffs and the rest of their entire family**, Judge Moore would not have agreed to appear. Plaintiff**s** relied on and had reason to rely on Defendant Cohen's and his agents' representations including Defendants Showtime and CBS, which he was led to believe were truthful and he had no reason to doubt.

*Id*. at ¶ 16 (emphasis added).

> Had Plaintiff**s** known that the promise of a bona fide award was a ruse to trick Judge Moore into appearing on "Who is America?", Judge Moore would not have agreed to appear on Defendants Cohen's, Showtime's and CBS's show and **Mrs. Moore would not have agreed to travel to Washington D.C. to accompany and honor her husband.**

*Id*. at ¶ 17 (emphasis added).

"Mrs. Moore was forced to endure the effects of this interview" which "falsely painted, portrayed, mocked and with malice defamed Judge Moore as a sex offender, which he is not." Compl. at ¶ 18. The Complaint continued: "Had Judge Moore and Mrs. Moore know that "Erran Morad" was Defendant Cohen . . . Plaintiff**s** would not have agreed to travel to Washington, D.C. *Id*. at ¶ 20 (emphasis added). "[Defendants' misconduct] has severely harmed Judge Moore's reputation and caused him, **Mrs. Moore**, and his entire family severe emotional distress, as well as caused and will cause Plaintiff**s** financial damage. *Id*. at ¶ 22 (emphasis added).

Fourth, Mrs. Moore sufficiently pled the requisite elements of intentional infliction of emotional distress. Under New York law, to be successful in a claim for intentional infliction of emotional distress, a plaintiff need only show: (1) extreme and outrageous conduct; (2) intent to cause or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Chanko v. Am. Broadcasting Companies, Inc*., 27 N.Y.3d 46, 56-67 (N.Y Ct. App. 2016) (citing *Howell v. N.Y. Post Co*., 81 N.Y.2d 115, 121 (N.Y. Ct. App. 1993)).

Here, Mrs. Moore expressly pled that "Judge Moore has been the subject of widespread ridicule and has suffered severe loss of reputation, which has in turn also caused him, Mrs. Moore, and his entire family severe emotional distress and financial damage . . ." Compl. at ¶ 38. She also pled that [she has] suffered extreme emotional distress as a result of Judge Moore being falsely portrayed, mocked and defamed as a sex offender and pedophile in this district, on national television and worldwide." *Id*. at ¶ 37.

Importantly, demonstrating that the harm was caused "intentionally or recklessly" can support the tort of intentional infliction of emotional distress. *Freihofer v. Hearst Corp*., 490 N.Y.S.2d 735, 741 (1985); see also *James v. Flynn*, 19 N.Y.S.3d 618, 620 (2015) ("[R]eckless conduct is encompassed within the tort of intentional infliction of emotional distress . . ."). There is no question that Defendants acted intentionally when they maliciously defamed Judge Moore and intentionally caused Mrs. Moore severe emotional distress by first inviting her to travel from Alabama to the District of Columbia under false pretenses and then by forcing her to watch them maliciously mock and defame her husband in the worst possible way as a criminal, sex offender. In *Klinge v. Ithaca College*, 167 Misc. 2d 458 (N.Y. Sup. Ct. 1995), for example, the court held that even "[a]n unprivileged publication of a charge of plagiarism in an academic community, if false or made with reckless indifference to its truth, meets the threshold test requiring extreme and outrageous conduct." *Id*. at 467. It is undisputable that portraying to the world that the former Chief Justice of the Supreme Court of Alabama is a pedophile in front of his wife is far more outrageous and extreme than a false charge of plagiarism.

And finally, Mrs. Moore sufficiently pled the requisite elements of fraud. In New York, a plaintiff need only plead: (1) a material misrepresentation or omission of fact; (2) knowledge of that fact's falsity; (3) an intent to induce reliance; and (4) justifiable reliance by the plaintiff; and (5) damages. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015). Mrs. Moore pled that Defendants "made false material representations that [plaintiffs] were being flown to Washington, D.C to receive an award." Compl. at ¶ 41. "Defendant[s] . . . knowingly made this false material representation to fraudulently induct Judge Moore to appear on the program, with Mrs. Moore present . . ." *Id*. at ¶ 42. "Plaintiffs justifiably relied on Defendant Cohen's and the other Defendants false representations[.]" *Id*. at ¶ 43. "Judge Moore, Mrs. Moore, and his entire family have suffered extreme emotional distress as a result" and that "Plaintiffs [have] been the subject of widespread ridicule and Plaintiffs' entire family, including Mrs. Moore, have suffered loss of reputation, financial loss, and loss of time spent going to and being in Washington, D.C." *Id*. at ¶ 48.

Because Mrs. Moore is not a party to the "release" and because she sufficiently pled that Defendants harmed her and in fact they did harm her, this case can proceed with only her as a plaintiff even in the extremely unlikely event that the allegations of Judge Moore are dismissed.

Your Honor, Plaintiffs look forward to the Court disposing of the meritless motions to dismiss of the Defendants and allowing this case to now proceed to discovery.

Sincerely,


Larry Klayman
cc: Defendants' counsel

STANDARD CONSENT AGREEMENT

This is an agreement between Yerushalayim TV(including its assigns, licensees, parents, subsidiaries, and affiliates) (collectively, the "Producer") and the undersigned participant (the "Participant"). In exchange for the Producer making a $ _200_ donation to a charity chosen by the Participant and allowing an opportunity for the Participant to appear in a television series, the Participant agrees as follows: Foundation For Moral Law

1. The Participant agrees to be filmed and/or audiotaped by the Producer for a reality-style television series (the "Program"). It is understood that the Producer hopes to reach a young adult audience by using entertaining content and formats.

2. The Participant agrees that any rights that the Participant may have in the Program or the Participant's contribution are hereby assigned to the Producer, and that the Producer shall be exclusively entitled to use, or to assign or license to others the right to use, the Program and any recorded material that includes the Participant, without restriction in any media throughout the universe in perpetuity and without liability on the part of the Producer, and the Participant hereby grants any consents required for that. The Participant also agrees to allow the Producer, and any of its assignees or licensees, to use the Participant's contribution, photograph, film footage, and biographical material in connection not only with the Program, but also in any advertising, marketing or publicity for the Program and in connection with any ancillary products associated with the Program.

3. The Participant understands that the Producer and its assignees or licensees are relying upon this consent agreement in spending time, money and effort on the Program and the Participant's participation in it, and that the consent agreement, for this and other reasons, cannot be revoked.

4. The Participant specifically, but without limitation, waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associated with the Program, which are related to the Program or its production, or this agreement, including, but not limited to, claims involving assertions of (a) failure to adequately compensate Participant, (b) failure to use the footage of Participant in the Program, (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the Participant's name or likeness or image), (d) damages caused by "acts of God" (such as, but not limited to, injuries from natural disasters), (e) damages caused by acts of terrorism or war, (f) intrusion or invasion of privacy (such as any allegedly sexual-oriented or offensive behavior or questioning), (g) false light (such as any allegedly false or misleading portrayal of the Participant), (h) infliction of emotional distress (whether allegedly intentional or negligent), (i) trespass (to property or person), (j) breach of any alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, (l) copyright or trademark infringement, (m) defamation (such as any allegedly false statements made in the Program), (n) violations of Section 43(a) of the Lanham Act (such as allegedly false or misleading statements or suggestions about the Participant in relation to the Program or the Program in relation to the Participant), (o) prima facie tort (such as alleged intentional harm to the Participant), (p) fraud (such as any alleged deception about the Program or this consent agreement), (q) breach of alleged moral rights, or (r) tortious or wrongful interference with any contracts or business of the Participant.

5. This is the entire agreement between the Participant and the Producer or anyone else in relation to the Program, and the Participant acknowledges that in entering into it, the Participant is not relying upon any promises or statements made by anyone about the nature of the Program or the identity, behavior, or qualifications of any other Participants, cast members, or other persons involved in the Program. Participant is signing this agreement with no expectations or understandings concerning the conduct, offensive or otherwise, of anyone involved in this Program.

6. Although the Participant agrees not to bring any claim in connection with the Program or its production, if any claim nevertheless is made, the Participant agrees that any such claim must be brought before, and adjudicated by, only a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York. This paragraph is intended by the parties to stand on its own, and it is intended to be valid and enforceable, even if a court finds that other paragraphs are not valid or enforceable.

AGREED AND ACCEPTED:
SIGNED: _Roy S. Moore_

PRINT: _Roy Moore_

Dated: _2/14/18_

Yerushalayim TV

By: _[signature]_

Print: _____