

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Elizabeth A. McNamara**
212.489.8230 tel
212.489.8340 fax

lizmcnamara@dwt.com

March 26, 2020

**Via CM/ECF and Electronic Mail**

Hon. Andrew L. Carter, Jr.
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *Moore, et al v. Cohen, et al.*, **1:19-cv-4977-ALC**

Dear Judge Carter:

      We represent Defendants Sacha Baron Cohen, Showtime Networks Inc. ("SNI"), and CBS Corporation ("CBS") (collectively, "Defendants") in the above-referenced case. We write pursuant to the Court's Order of March 9, 2020 to (a) respond to Plaintiffs' March 18, 2020 submission (ECF No. 63) (the "Submission") and (b) address Your Honor's questions regarding the merits of the claims by co-Plaintiff Kayla Moore.

      **A.**    **Plaintiffs' March 18 Submission Simply Reiterates Arguments Defendants Already Addressed**

      As Defendants understood the Court's Order of March 9, 2020, Plaintiffs were asked to make a submission identifying and clarifying the precise misstatements on which their claims are based (the "Submission"). Rather than comply with the Court's request, Plaintiffs' Submission is nothing more than a sur-reply in further opposition to the motion to dismiss, trying to cast legal arguments with which Plaintiffs disagree as "misstate[ments of] … fundamental aspects of this case." This is not what the Court directed Plaintiffs to file.

      Apart from the fact that Plaintiffs' unauthorized sur-reply is not responsive to the Court's Order, the Submission does nothing more than rehash arguments Plaintiffs have already made, even going so far as to recycle entire paragraphs wholesale from Plaintiffs' opposition brief. *Compare* ECF No. 63 at 2, *with* ECF No. 55 at 9-10 (including identical block quote from *E*Trade Fin. Corp.* case), and ECF No. 63 at 3, *with* ECF No. 55 at 10 (identical paragraphs discussing *Actrade Liquidation Trust* case).

      Defendants addressed in their reply memo of law in further support of the motion to dismiss all of the arguments in Plaintiffs' Submission, and will not burden the Court with reprinting those points again here. *See* ECF No. 57 ("Defs. Reply") at 4-5 (addressing Plaintiffs' "general release" argument); *id.* at 5-7 (addressing the impact (or lack thereof) of Judge Moore's crossing out a single phrase concerning privacy claims in the Standard Consent Agreement); *id.* at 1-3, 7-9 (discussing the controlling nature of *Psenicska* and *Hustler v. Falwell*, and, more broadly, Plaintiff Judge Moore's inability to assert a defamation claim based on obvious political satire); and *id.* at 3 n.4 (pointing out that Plaintiffs had not "provide[d] [any] authority for the

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

proposition that a party can unilaterally nullify a contract by simply announcing their belief that it was fraudulently induced" in a letter).

As for identifying the specific statements from the Episode that Plaintiff Judge Moore contends are false and defamatory, Plaintiffs' submission is silent. They make no effort to identify a single actual statement, beyond repeating the conclusory assertion that the Episode "conveys the point that Plaintiff Judge Moore is a pedophile" because he "set off" a (plainly fake) "sex offender detector." ECF No. 63 at 5. Plaintiffs have provided no additional clarification for the Court, and Defendants have fully addressed why these previously identified conclusions have no merit. *See* ECF No. 51 ("Defs. Mem.") at 18-22; Defs. Reply at 7-9.[1] Thus, for the reasons laid out in Defendants' motion papers, Plaintiff Judge Moore's defamation claim must be dismissed.

> **B.  Mrs. Moore's Tag-Along Claims Cannot Survive Dismissal of Judge Moore's Claims**

The Court also ordered that the parties address the viability of Plaintiff Kayla Moore's claims independent from Judge Moore's claims. For numerous reasons, Mrs. Moore's claims for intentional infliction of emotional distress and fraud cannot survive dismissal any more than Judge Moore's can. First, although she did not physically sign the Standard Consent Agreement, Mrs. Moore's claims are within the scope of the waiver of claims contained therein because her claims are entirely derivative of the claims that Judge Moore waived and, further, because, as president of the Foundation for Moral Law, which received a donation as part of the consideration for the Standard Consent Agreement, she is a beneficiary of the Agreement. Second, even if the Standard Consent Agreement were not enforced against her, her claims fail on their merits.

> **1.  Plaintiffs Cannot Avoid the Waiver of Claims in the Standard Consent Agreement by Adding Mrs. Moore as a Plaintiff**

Mrs. Moore's claims should be dismissed at the outset because the waiver of claims in the Standard Consent Agreement precludes the only claims she asserted, *i.e.*, her claims for intentional infliction of emotional distress and fraud, both of which are expressly included in the list of claims being waived. *See* Defs. Mem. at 6 (quoting SCA ¶ 4). The fact that she did not personally sign the Standard Consent Agreement does not alter this conclusion.

As noted in Defendants' opening brief, it is well settled that "[p]laintiffs cannot escape their contractual obligations simply by joining parties who did not sign the contract and then claiming that the [provisions] do[] not apply." *Novak v. Tucows, Inc.*, No. 06 CV 1909, 2007 WL 922306, at *13 (E.D.N.Y. Mar. 26, 2007) (citation omitted), *aff'd*, 330 F. App'x 204 (2d Cir.

---

[1] Plaintiff Judge Moore tries to underscore his conclusory contention with an all-caps observation that "THIS IS NOT PARODY". ECF No. 63, at 5 (emphasis in original). But that hardly addresses the Court's Order to provide the Court with the actual alleged misstatements that are being challenged. Nor do Plaintiffs expand on the alleged misrepresentations that they claim induced them to come to Washington, D.C. for the interview depicted in the Episode. Those alleged misrepresentations are spelled out in Plaintiffs' Complaint, and Plaintiffs have not identified any additional statements. *See, e.g.*, Compl. ¶ 15.

March 27, 2020
Page 3

2009).  *See* Defs. Mem. at 18 n.13.  Accordingly, courts routinely enforce contractual provisions against parties that did not personally sign the contract, under a variety of theories.  *See, e.g.*, *Hines v. 1025 Fifth Ave., Inc.*, No. 14-cv-3661, 2015 WL 765943, at *4 (S.D.N.Y. Feb. 23, 2015) (enforcing waiver of jury trial in co-op lease against father and daughter, even though agreement containing clause was signed only by their wife/mother, because they were third party beneficiaries of lease); *Buckley v. Nat'l Freight, Inc.*, 90 N.Y.2d 210, 216–17 (1997) (wife's signing of settlement agreement releasing claims barred husband's claim for loss of consortium because claim was derivative of released claims); *Rector v. Calamus Grp., Inc.*, 17 A.D.3d 960, 962 (3d Dep't 2005) (enforcing limitation of liability in home inspection contract against wife of signatory to agreement under theory that wife was third-party beneficiary of agreement); *Salazar v. On the Trail Rentals, Inc.*, 506 F. App'x 709, 711–13 (10th Cir. 2012) (enforcing exculpatory clause in snowmobile rental agreement, signed by decedent in crash, against survivors seeking to bring wrongful death claims, to preclude wrongful death claims because, "if [decedent] had no right to prosecute a claim, neither do plaintiffs").

In particular, courts in this Circuit have held that provisions of a contract can be enforced against a non-signatory when they are "'closely related' to one of the signatories such that 'enforcement . . . is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *MGM Studios Inc. v. Canal+ Distrib. S.A.S.,* No. 07 Civ. 2918, 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) (enforcing forum selection clause).  In particular, courts have "repeatedly found non-signatories 'closely related' to signatories where their interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." *KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 386–87 (S.D.N.Y. 2011) (citations and internal quotation marks omitted) (collecting cases).

Here, Mrs. Moore's claims are plainly "completely derivative of," "directly related to" and "predicated upon" Judge Moore's claims.  *Id.*  In the Complaint, the damages claimed by *both* Plaintiffs are framed in terms of reputational harm *to Judge Moore*.  *See* Defs. Mem. at 24 n.18-19; Compl. ¶¶ 37-38 (alleging that "Plaintiffs have suffered extreme emotional distress *as a result of Judge Moore being falsely portrayed, mocked and defamed as a sex offender and pedophile*" and that "Judge Moore has been the subject of widespread ridicule and has suffered *severe loss of reputation*, *which has in turn also caused him, Mrs. Moore, and his entire family severe emotional distress …*") (emphasis added); *id.* ¶ 47 (alleging that, as a result of Defendants' "false and fraudulent representations, Judge Moore, Mrs. Moore, and his entire family have suffered extreme emotional distress *as a result of Judge Moore being falsely portrayed as a sex offender and pedophile…*") (emphasis added).  Accordingly, the waiver of those claims by Judge Moore also serves as a waiver of Mrs. Moore's derivative claims.

In fact, applying these principles in this very case, the District Court for the District of Columbia did not hesitate to enforce the forum selection clause in the Standard Consent Agreement against both Judge Moore and Mrs. Moore on the grounds that Mrs. Moore's claims are "***closely related***" and "***derivative from***" Judge Moore's claims, so she therefore "can't complain about the transfer" to this court..  ECF No. 55-1 (Transcript of Hearing Before Hon. Thomas F. Hogan, Arp. 29, 2019, *Moore v. Cohen, et al*., 18-cv-2082 (D.D.C.)) at 32:8-33:1 (emphasis added).

   Even when the claims are not entirely derivative of the claims made by the signatory to the agreement, the Second Circuit has still enforced a contract against a non-signatory where the non-signatory received a "direct benefit" from the contract containing the operative clause. *See, e.g., Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) ("A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause."). For this reason as well, the waiver of claims contained in the Standard Consent Agreement can be enforced against Mrs. Moore. Specifically, Mrs. Moore is the president of the Foundation for Moral Law, the non-profit organization founded by Judge Moore. Pursuant to the Standard Consent Agreement, the Foundation for Moral Law received a $200 donation as partial consideration for the Agreement. *See* ECF No. 52-1. Having received a "direct benefit" from the Standard Consent Agreement, Mrs. Moore is estopped from avoiding the effect of the waiver of claims contained in the agreement. *See generally LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 156 (E.D.N.Y. 2012) ("Certainly, a number of courts in this Circuit and others have espoused the general principle that a party is estopped from denying a contract provision when it has directly benefited from the contract.") (collecting cases).

   In sum, whether under the "derivative claims" or "direct-benefit estoppel" theory, the Standard Consent Agreement's waiver of the precise claims asserted here ("(h) infliction of emotional distress" and "(p) fraud") applies with equal force to Mrs. Moore's entirely redundant claims. Thus, for that reason alone, the Court should dismiss her claims.

   **2.  Mrs. Moore's Claims Also Fail On Their Merits**

   As discussed in Defendants' motion papers, even if the Standard Consent Agreement did not exist (or was not enforced against either or both Plaintiffs), Mrs. Moore's claims still fail as a matter of law and should be dismissed. Mrs. Moore does not join in the defamation claim, nor could she, since she would not have standing to assert that claim on behalf of her husband. Instead, she joins her husband's claims for intentional infliction of emotional distress and fraud. However, as discussed above, Mrs. Moore's claims are entirely derivative of Judge Moore's, since they arise out of the exact same facts and are based solely on alleged harm to *his* reputation. *See* Compl. ¶¶ 37-38, 47-48. Therefore, as a general matter, the dismissal of Judge Moore's claims necessarily defeats her claims as well. *See, e.g., Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 606 (E.D.N.Y. 2011) (holding that "a derivative action that depends on the viability of the primary cause of action"—there, a loss of consortium claim—must be dismissed when the primary claim is dismissed); *Lee v. TMZ Prods. Inc*, 710 F. App'x 551, 560–61 (3d Cir. 2017) ("[T]he failure of Lee's underlying defamation and emotional distress claims requires dismissal of the derivative claims asserted by her family members.").

   Even if Mrs. Moore's claims could somehow stand on their own (and, as pleaded, they cannot), they still cannot survive dismissal. As set forth in Defendants' motion papers, the emotional distress claim (on behalf of each Plaintiff) fails for numerous independent reasons, including because it is duplicative of the meritless defamation claim, and is therefore barred by *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988), and because Plaintiffs cannot plead the requisite "extreme and outrageous" conduct necessary to support such a claim based on the airing of a single, satirical interview segment. *See* Defs. Mem. at 22-24. Mrs. Moore's claim

March 27, 2020
Page 5

has the added deficiency that she is claiming emotional distress based on the harm to *Judge Moore's* reputation.  As noted in Defendants' opening brief, "[j]ust as '[o]nly the party about whom the allegedly libelous statements were made has standing to sue' for defamation, a 'family member not named in [an] allegedly defamatory [publication] has no claim for emotional distress.'"  Defs. Mem. at 24 n.18 (quoting *Chaiken v. VV Publ'g Corp.*, No. 91 Civ. 2102, 1992 WL 168282, at *2 (S.D.N.Y. June 30, 1992)).  *See also Sylvester v. City of N.Y.*, 385 F. Supp. 2d 431, 442 (S.D.N.Y. 2005) (noting lack of authority for emotional distress claim from "false statements … directed at the plaintiffs' family member, but not the plaintiffs").

Similarly, Plaintiffs have failed adequately to plead a fraud claim on behalf of either Judge Moore or Mrs. Moore.  *See* Defs. Mem. at 24-25; Defs. Reply at 9-10.  It is well settled that Judge Moore cannot premise a fraud claim on harm to his own reputation, which is all that Plaintiffs assert.  *See* Compl. ¶¶ 47-48; *see, e.g.*, *Chevron Corp. v. Donziger*, No. 11-cv-691, 2013 WL 3879702, at *2 (S.D.N.Y. July 29, 2013) (noting "principle that New York does not permit recovery on a fraud theory for reputational injury"); *W. Tsusho Co. v. Prescott Bush & Co.*, No. 92-cv-3378, 1993 WL 228072, at *3 (S.D.N.Y. June 23, 1993) (explaining that "[o]nly actual pecuniary loss is compensable in fraud," which does not include harm to "personal reputations" or "lost time"); *see also* Defs. Mem. at 24-25.  *A fortiori*, Mrs. Moore cannot plead a fraud claim on reputational harm to *someone else*.  *Cf. Chaiken*, 1992 WL 168282, at *2.  Further, Plaintiffs have also failed to allege <u>any</u> pecuniary loss from the alleged fraud, which they must do to survive dismissal.  *See* Defs. Reply at 10.

Finally, and more broadly, this entire lawsuit is an affront to the First Amendment by a controversial public figure seeking to squelch political satire, which decades ago the Supreme Court underscored is a critical part of our national discourse.  *See Falwell*, 485 U.S. at 51-52.  Whatever harm there has been to Judge Moore's reputation came about because of allegations of misconduct that were widely reported before the Episode was created, not as a result of mockery on a satiric comedy show.  Indeed, the satirical effect of the Episode is based entirely on those *pre-existing* allegations.  Judge Moore cannot salvage his unfounded effort to chill First Amendment-protected speech by enlisting his wife to assert the same deficient claims.  This entire case should be dismissed with prejudice.

We appreciate the Court's consideration of these important issues.  Please do not hesitate to let us know if the Court would like any further information in order to resolve the case.

Respectfully Submitted,

Davis Wright Tremaine LLP

/s/Elizabeth A. McNamara


cc: Plaintiffs' counsel (via CM/ECF and email)