

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Elizabeth A. McNamara**
212.489.8230 tel
212.489.8340 fax
lizmcnamara@dwt.com

November 13, 2020

**Via CM/ECF and Electronic Mail**
Hon. John P. Cronan
U.S. District Court for the Southern District of New York
500 Pearl St.
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __11/24/2020__

Re: *Moore, et al v. Cohen, et al.*, **1:19-cv-4977-ALC**

Dear Judge Cronan:

    We represent Defendants Sacha Baron Cohen, Showtime Networks Inc. ("SNI"), and CBS Corporation n/k/a ViacomCBS Inc. ("ViacomCBS") (collectively, "Defendants") in the above-referenced case.  We write pursuant to Rule 6.A of Your Honor's Individual Practices to request a pre-motion conference for an early motion for summary judgment and a stay of further discovery pending resolution of that motion, without prejudice to either party making a later motion for summary judgment on other grounds after the close of discovery, in the event the requested motion is denied.

    Defendants submit that early discovery establishes that the Standard Consent Agreement entered into by Plaintiff Judge Roy Moore is binding and bars Plaintiffs' claims against all Defendants.  Independently, the claims fail as fully protected parody under the First Amendment.  Given the important First Amendment values at stake, as then Judge Kavanaugh observed, "the Supreme Court directs courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109–10 (D.C. Cir. 2017).

**Background**

    In this case, Plaintiffs assert claims for defamation, intentional infliction of emotional distress, and fraud arising out of Judge Moore's appearance in a comedy television program called "Who Is America?" (the "Program"), which was created by and stars Defendant Cohen, and aired on SNI's SHOWTIME television network (SNI is a wholly owned subsidiary of ViacomCBS).  During the segment with Judge Moore, Cohen appears as a fictional Israeli Mossad agent character and uses an obviously pretend device to "detect" whether Judge Moore was a "sex offender" in satirical commentary on the widely reported allegations (featured in the segment) of misconduct by Judge Moore that led to his loss in the special election for the U.S. Senate seat for Alabama in 2017.

    Defendants moved to dismiss the complaint under Rule 12(b)(6), on two grounds: <u>First</u>, the action is barred by the comprehensive waiver of claims contained in the Standard Consent Agreement ("SCA") that Judge Moore signed as a condition of appearing on the Program.  The Second Circuit has affirmed enforcement of an almost identical agreement involving the very same performer (in connection with the *Borat* film) in the face of the same arguments about fraudulent inducement that Plaintiffs make in this case.  *See Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368, 371 (2d Cir. 2009); *see also* ECF No. 51 (Defs. Mem.) at 9-11; ECF No. 57 (Defs. Reply) at 1-3.  <u>Second</u>, the claims fail on their merits because the First

4838-5643-2338v.2 3940173-000105

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

November 13, 2020
Page 2

Amendment protects satirical commentary concerning public officials where, as here, the statements at issue "could not reasonably be interpreted as stating actual facts" about the plaintiff. *Hustler v. Falwell*, 485 U.S. 46, 50 (1988).

Supporting the first ground, Defendants showed the SCA was entered into between Judge Moore and a production company called Yerushalayim TV ("YTV"), which the SCA defines to include the company and its "assigns, licensees, parents, subsidiaries and affiliates." *See* ECF No. 52-1. Further, the evidence showed that YTV was wholly owned by certain production companies that are, in turn, wholly owned by Defendant Cohen, and those production companies licensed the Program to SNI. By the SCA's express terms, Judge Moore agreed to waive the exact claims "related to the Program" asserted in this action as against "anyone associated with the Program," including the Defendants, and Judge Moore specifically disclaimed any reliance on statements "about the nature of the Program or the identity, behavior, or qualifications of any … persons involved in the Program." *Id. See Psenicska*, 409 F. App'x at 371 (holding this language in the *Borat* agreements destroyed the plaintiffs' fraudulent inducement arguments).

On July 2, 2020, Judge Carter held a conference in which he denied the motion to dismiss because the application of the SCA to each Defendant was "dependent on [their] relationship to YTV." However, the existence of YTV as a valid legal entity and each Defendant's relationship to YTV were facts outside the four corners of the complaint and could not be assumed on a Rule 12(b)(6) motion. Separately, Judge Carter declined to rule on the merits of Defendants' First Amendment arguments. *See* ECF No. 88 (Transcript of July 2 Conference) at 3-4; ECF No. 75 (Order stating that Defendants may make those arguments on summary judgment).

In denying the motion to dismiss, Judge Carter noted that the case "should be able to move to summary judgment fairly quickly," because "the bulk of discovery will be related to [the SCA] and the corporate relationships discussed." *See id.* at 4. Although the Court later denied Defendants' request to formally bifurcate discovery into two phases, even the Plaintiffs acknowledged that Defendants are "free to move for summary judgment at any time," once there is "sufficient proof" in the record. *See* ECF No. 86 (Transcript of July 31 Conference).

### An Early Motion For Summary Judgment Is Appropriate Here

The record now contains the necessary evidence to dismiss the action. In particular, Defendants have produced to Plaintiffs the documents sufficient to establish the key facts Judge Carter was unable to find at the pleading stage. Defendants produced corporate records and state filings establishing that YTV was a validly formed LLC, wholly owned by Defendant Cohen through certain intermediate production companies, of which he is ultimately the sole member. Two of those production companies are the co-owners of the Program, and entered into an agreement with SNI to license the Program to SNI. Based on these business and public records, there can be no genuine dispute that Defendant Cohen is the ultimate "parent" of YTV, and SNI and ViacomCBS (SNI's parent) are ultimately YTV's "licensees." Accordingly, the waiver of claims in the SCA is fully applicable to and enforceable by the Defendants. And even if the SCA did not dispose of Plaintiffs' claims – and it does – the claims fail as a matter of law based on an examination of the relevant segment of the Program on its face; no further discovery would be necessary to rule on the First Amendment defenses.

Courts in both this Circuit, and the D.C. Circuit (where Plaintiffs initially filed this action) recognize the "particular value in resolving defamation claims at the pleading stage"—or

4838-5643-2338v.2 3940173-000105

November 13, 2020
Page 3

as early as possible—"so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456-57 (S.D.N.Y. 2012) (citation omitted). As found by the D.C. Circuit:

> The First Amendment guarantees freedom of speech and freedom of the press. Costly and time-consuming defamation litigation can threaten those essential freedoms. To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.

*Kahl*, 856 F.3d at 109–10; *see also id.* at 116 ("Summary proceedings are essential in the First Amendment area because if a suit entails long and expensive litigation, then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails.") (citation omitted); *see also Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) ("Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage.") (citation omitted), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

This is a case brought by a controversial, outspoken public official that challenges the fundamental right of a comedian to satirize widely publicized allegations against him. With the production of the limited set of corporate records, there is sufficient evidence to grant judgment for Defendants as a matter of law under Rule 56 immediately, a ruling that would be consistent with the Second Circuit's *Psenicska* decision enforcing the same agreements for the *Borat* movie. Defendants respectfully submit that, in light of the serious First Amendment interests at stake, the Court should allow Defendants to move for summary judgment now, before the parties (and Court) are required to expend further time and resources on protracted, intrusive discovery.[1]

This approach would, if necessary, reserve the parties' right to engage in full discovery concerning other defenses, including the substantial truth of any verifiable implication that could be drawn from the segment, or any evidence supporting Plaintiffs' burden of presenting clear and convincing evidence that Defendants made the statements with Constitutional "actual malice." *See Masson v. New Yorker*, 501 U.S. 496 (1991); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964). Any additional summary judgment motion on such defenses would only become necessary in the event the Court denies the motion contemplated by this letter. But Defendants believe that motion will ultimately not be necessary, as the Court will have sufficient evidence to dispose of the case on the multiple grounds discussed in this letter.

Defendants welcome the opportunity to discuss the contemplated motion and any other aspects of the case with the Court at a pre-motion conference.

---

[1] A district court may deny, limit or qualify discovery for "good cause" to "protect a party … from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c); *see, e.g.*, *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 104–05 (2d Cir. 1981) (affirming that district court "acted well within its discretion" in staying discovery pending determination of the defendants' motion for summary judgment). This approach is particularly called for here where Plaintiffs have made clear that they intend to seek untethered discovery having no reasonable relation to the issues involved in the action. *See, e.g.,* Plaintiff's Initial Disclosures, listing dozens of witnesses, including the CEOs of SNI and ViacomCBS.

November 13, 2020
Page 4

Respectfully Submitted,

Davis Wright Tremaine LLP

/s/ Elizabeth A. McNamara

cc: Plaintiffs' counsel (via CM/ECF and email)

The parties are hereby ordered to appear for a pre-motion conference on December 3, 2020, at 2:00 p.m. Unless the Court directs otherwise, the Court plans to conduct the conference by teleconference. At the scheduled time, counsel for all parties should call (866) 434-5269, access code 9176261.

The Clerk of Court is respectfully directed to close the motion pending on Dkt. 90.

SO ORDERED.
Date: November 24, 2020

New York, New York

_____
JOHN P. CRONAN
United States District Judge

4838-5643-2338v.2 3940173-000105