# EXHIBIT A

**Strom, Rachel**

| | |
|---|---|
| **From:** | McNamara, Elizabeth |
| **Sent:** | Monday, December 07, 2020 8:11 PM |
| **To:** | Larry Klayman |
| **Cc:** | Oliver Peer; Strom, Rachel; Feder, Eric |
| **Subject:** | Moore v Cohen, et al. :  Discovery for Summary Judgment |
| **Attachments:** | Moore - Motion to Transfer - Countee Declaration w Exs.pdf |

Larry:

Thank you again for speaking today in an effort to narrow the open issues for the period of limited discovery.  As promised on the call, we have ordered the transcript of the conference before Judge Cronan from last Thursday, and will forward it when it comes, which should be later this evening or early tomorrow.

We wanted to lay out what we understand our respective positions are concerning the  limited discovery that Judge Cronan has ordered in connection with the summary judgment motion to be filed by Defendants by February 8, 2020.  The summary judgment motion will be made on two grounds:  (1) whether the Episode at issue is protected as parody and commentary by the First Amendment (the "First Amendment Issue") and (2) whether the Consent Agreement precludes the Plaintiffs' claims (the "Consent Agreement Issue").  As you requested, we provide you with my clients' position regarding discovery and the issues we discussed:

**First**, with respect to the discovery on the First Amendment Issue:

You asked that we produce all documents (including text messages, memos, emails and other communications) concerning the defendants knowledge and intent concerning the Episode.  You explained that these are relevant in order to establish actual malice and/or common law malice.

We disagree that this discovery is within the scope of what Judge Cronan has ordered to proceed during the current limited discovery period.  Although the actual malice requirement is grounded in First Amendment principles, it is not a part of our early motion for summary judgment.  The First Amendment Issue in that motion concerns whether the segment of the program featuring Judge Moore can be construed as stating actual facts about him, as would be required for a libel claim.  Otherwise, it is protected political satire/parody.  The only evidence necessary to resolve the issue is the episode of the program itself, in its relevant context. (To that end, we stated we would be producing and relying on the full episode in question, as well as the two episodes that preceded it.)

The issues of intent and knowledge that may be relevant to an actual malice defense are not relevant to these arguments.   As we are confident the transcript will reflect, Judge Cronan was clear that the First Amendment Issue for purposes of this period of limited discovery was limited to the "parody" argument, and that discovery related to actual malice (along with other issues, such as substantial truth) was stayed pending the resolution of the early motion for summary judgment.  We therefore object to producing discovery on issues related to intent and actual or common law malice at this stage.

**Second**, with respect to document discovery on the Consent Agreement Issue, specifically the enforceability and application of the Standard Consent Agreement ("SCA"):

We have produced to you the documents establishing the corporate structure and ownership of Yerushalayim TV ("YTV"), as well as the relationships between that entity and the defendants in this case.  We have agreed to produce

any further non-privileged documents that bear on the incorporation (and dissolution) of YTV and its relationship to the other corporate entities.

Both parties agreed to confer with their clients and will produce further communications among the parties related to Judge Moore's appearance on the program, including any documents reflecting logistics and payment of costs related to travel to Washington, DC for the shoot. Both parties would also produce any further documents related to Judge Moore's "strike-through" of language in the SCA that he signed.

**Third**, with regard to depositions on the Consent Agreement Issue, while we believe that the documents produced surrounding the incorporation and relationship among the relevant entities speak for themselves, we are prepared to offer Todd Schulman (who worked for Mr. Cohen's production companies) and Jenifer Wallis (the attorney who formed YTV) as witnesses to authenticate these documents and confirm/address the relevant corporate relationships.

Defendant Showtime has no additional information related to the application and enforceability of the SCA or the creation of YTV or other relevant corporate entities. (Defendant ViacomCBS, which is involved in this case solely because it is the corporate parent of Showtime, had nothing to do with the production of the program.) The only issue related to Showtime that is relevant at this point is the fact that Showtime licensed the program from Sacha Baron Cohen's production companies and then distributed the program on its cable network and other media platforms. For your reference, we attach the declaration we filed in connection with our motion to transfer from the District of Columbia, which attests to these basic facts. We would anticipate filing a similar declaration in support of the early motion for summary judgment. Please let us know if you believe a deposition of that witness (limited solely to the issues set forth in the declaration) will be necessary.

At the same time, you offered to make Judge Moore available for a deposition to address issues relevant to the Consent Agreement Issue and his allegations of fraud.

Finally, you contend that a deposition of Sacha Baron Cohen is necessary for these purposes as well. We disagree. Mr. Cohen was the ultimate owner of the entities, but was not directly involved in the process or mechanics of forming the entities and would not be knowledgeable (except at the most abstract level) of the relevant corporate structures. By way of illustration, it is our belief that Mr. Cohen has never once emailed or otherwise directly communicated with Jenifer Wallis, the attorney who actually formed the YTV entity. That process was handled by Mr. Schulman, which is why he would be the appropriate witness at this stage. Mr. Cohen simply would not have any relevant testimony for the facts at issue in the early summary judgment motion.

To be clear, we do not contend that Mr. Cohen should never be subject to a deposition in this case. Should the anticipated motion for summary judgment be denied, Mr. Cohen's testimony concerning issues relevant to actual malice and/or common law malice would likely be relevant. But since his testimony would provide no additional material information concerning the issues relevant to the Consent Agreement Issue and the summary judgment motion, we object to his deposition at this time.

As to any of the witnesses, it will be understood that they are being deposed on the limited topics relevant to the summary judgment motion. The parties will not object to their being deposed again should Judge Cronan deny the motion for summary judgment and action proceeds.

Please let us know if anything we have written regarding your positions is inaccurate. Thanks, Liz

**Elizabeth McNamara** | Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor | New York, NY 10020
Tel: (212) 603-6437 | Fax: (212) 379-5237
Email: lizmcnamara@dwt.com | Website: www.dwt.com

3