# EXHIBIT 9



COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS







(800) 528-3335

NAEGELIUSA.COM

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROY STEWART MOORE, et al.,

     Plaintiffs,

v.                                Index No. 19 Civ. 4977 (ALC)

SACHA BARON COHEN, et al.,

     Defendants.

_____

**CONFIDENTIAL**

**REMOTE VIDEO DEPOSITION BY VIDEOCONFERENCE**

**JENIFER WALLIS**

**TAKEN ON**
**THURSDAY, JANUARY 14, 2021**
**9:05 A.M.**

**LOS ANGELES, CALIFORNIA**

1                          **APPEARANCES**

2

3  **APPEARING ON BEHALF OF THE PLAINTIFFS:**

4  LARRY E. KLAYMAN, ESQUIRE (via video conference)

5  **Klayman Law Group PA**

6  2020 Pennsylvania Avenue Northwest, Suite 345

7  Washington, D.C.  20006

8  (310) 595-0800

9  leklayman@gmail.com

10  leklayman@yahoo.com

11

12  MELISSA L. ISAAK, ESQUIRE (via video conference)

13  **Isaak Law Firm**

14  2815-B Zelda Road

15  Montgomery, AL  36106

16  (334) 262-8200

17  melissa@protectingmen.com

18

19

20

21

22

23

24

25

1             **APPEARANCES CONTINUED**

2

3 **APPEARING ON BEHALF OF THE DEFENDANTS:**

4 ELIZABETH A. MCNAMARA, ESQUIRE (via video conference)

5 RACHEL STROM, ESQUIRE (via video conference)

6 **Davis Wright Tremaine LLP**

7 1251 Avenue of the Americas, 21st Floor

8 New York, NY  10020

9 (212) 603-6437

10 (212) 489-8340 (Fax)

11 lizmcnamara@dwt.com

12

13 ERIC FEDER, ESQUIRE (via video conference)

14 **Davis Wright Tremaine LLP**

15 1301 K Street Northwest, Suite 500

16 Washington, D.C.  20005

17 (202) 973-4273

18 (202) 973-4473 (Fax)

19 ericfeder@dwt.com

20

21 **ALSO PRESENT:**

22 Roy Moore, Plaintiff

23

24

25



1                              INDEX

2                                                          Page

3

4    EXAMINATION BY MR. KLAYMAN                             11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  CERTIFIED QUESTIONS

 2

 3  PAGE 11 LINE 24

 4      Q.   What is your understanding of his work?

 5

 6  PAGE 19 LINE 12

 7      Q.   Now, what is the reason that all of these

 8  companies were created?

 9

10  PAGE 23 LINE 6

11      Q.   You are aware -- and it gets back to my first

12  question -- that Sacha Baron Cohen has created

13  shows where he disguises himself and deceives people

14  interviews to him.  You were aware of that at the time

15  you created Yerushalayim TV, correct?

16

17  PAGE 32 LINE 21

18      Q.   And the reason that you incorporated in

19  with limited public information is because you wanted to

20  keep as much secret about what Sacha Baron Cohen and his

21  companies were doing at that time?

22

23

24

25
```

1  CERTIFIED QUESTIONS CONTINUED

2

3  PAGE 37 LINE 16

4      Q.    All right, let me get to this.  The purpose of

5  this registration was to prevent disclosure of the

6  behind all of these companies was the owner, Sacha Baron

7  Cohen?

8

9  PAGE 37 LINE 25

10     Q.    In fact, you were told by your client to

11 that Sacha Baron Cohen's name was never associated with

12 Yerushalayim TV or any of these companies?

13

14 PAGE 40 LINE 12

15     Q.    Given the fact that Sacha Baron Cohen was

16 involved, did that not cause you concern that he was

17 to use this company to create false impression upon

18 that he interviewed?

19

20 PAGE 40 LINE 20

21     Q.    Doesn't concern you that concealing the true

22 owners of the company can give rise to the potential for

23 fraud?

24

25



1  CERTIFIED QUESTIONS CONTINUED

2

3  PAGE 77 LINE 14

4      Q.   At the time that you formed Yerushalayim TV,

5  you told what it was going to be used for?

6

7  PAGE 77 LINE 24

8      Q.   Are you aware that to lure people to be on

9  (sic) is America, they were told that the show was being

10  called modern American icons?

11

12  PAGE 78 LINE 16

13      Q.   Isn't it an improper purpose to use

14  TV to trick people to be interviewed?

15

16

17

18

19

20

21

22

23

24

25

```
 1                         EXHIBITS

 2    Exhibit                                     Page

 3

 4      1       STANDARD CONSENT AGREEMENT           21

 5

 6      2       ARTICLES OF ORGANIZATION            28

 7

 8      3       AGENT SERVICES AGREEMENT            37

 9

10      4       OPERATING AGREEMENT                 40

11

12      5       LLC ANNUAL REPORT                   43

13

14      6       GREENPARK ARTICLES OF ORGANIZATION  50

15

16      7       STATEMENT OF INFORMATION            52

17

18      8       IRS DOCUMENT                        53

19

20      9       LA QUINTA ARTICLES OF ORGANIZATION  54

21

22     10       STATEMENT OF INFORMATION LA QUINTA LLC  55

23

24     11       JAN 16 2019 STATEMENT OF INFORMATION  57

25
```



NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

```
 1                    EXHIBITS CONTINUED

 2   Exhibit                                        Page

 3

 4    12       OPERATING AGREEMENT                   58

 5

 6    13       AGREEMENT DETAILS                      60

 7

 8    14       ARTICLES OF ORGANIZATION PLEASE YOU    71

 9             CAN TOUCH

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

1               CONFIDENTIAL

2     REMOTE VIDEO DEPOSITION BY VIDEOCONFERENCE

3                JENIFER WALLIS

4                  TAKEN ON

5          THURSDAY, JANUARY 14, 2021

6                  9:05 A.M.

7

8          **THE VIDEOGRAPHER:**  We are on the record.

9   The time is 9:05 a.m., Pacific Standard Time.  The

10  date is January 14th, 2021.  This is the beginning

11  of the deposition of Jenifer Wallis.  The case

12  caption is Moore vs. Cohen. Will counsel please

13  introduce yourselves and state who you represent?

14          **MR. KLAYMAN:**  Larry Klayman.  I'm counsel

15  for the Plaintiffs, Judge Roy Moore and Kayla Moore,

16  his wife, and we also have Melissa Isaak, who is of

17  counsel to me and the lawyer for Judge Moore as

18  well.

19          **MS. MCNAMARA:**  And I'm Elizabeth McNamara

20  of Davis Wright Tremaine.  We represent the

21  Defendants in this action, and I have with me my

22  colleague, Eric Feder.

23          **THE VIDEOGRAPHER:**  Okay.  The court

24  reporter will now swear in the witness.

25          **THE REPORTER:**  And Counsels, just before I

1   swear in the witness, because the nature of this

2   deposition is remote, I'd just like to stipulate for

3   the record that the swearing in and testimony will

4   be captured remotely and that all present agree to

5   this method of preserving today's record.  The

6   testimony will be transcribed and certified. Mr.

7   Klayman, do you agree?

8           **MR. KLAYMAN:**  We agree.

9           **THE REPORTER:**  Ms. McNamara, do you agree?

10          **MS. MCNAMARA:**  We agree, thank you.

11          **THE REPORTER:**  Not a problem.  With that,

12  may I please have you raise your right hand, Ms.

13  Wallis? Do you solemnly swear or affirm, under the

14  penalty of perjury, that you are Jenifer Wallis and

15  that the testimony you're about to provide will be

16  the truth, the whole truth and nothing but the

17  truth?

18          **THE WITNESS:**  I do.

19          **THE REPORTER:**  Thank you.

20  **JENIFER WALLIS,** having been duly sworn, was

21  examined, and testified as follows:

22  **EXAMINATION**

23  **BY MR. KLAYMAN:**

24     Q.   **Ms. Wallis, I'm legal counsel in this**

25  **lawsuit for Judge Roy Moore and his wife, Kayla**

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

1  transcript?

2          MR. KLAYMAN:  Yes, mark is as Exhibit 1,

3  but if you may also put it up on the screen.

4          **(Whereupon, Exhibit 1 was marked for**

5  **identification.)**

6          **THE VIDEOGRAPHER:**  Can you see that, Mr.

7  Klayman?

8          **MR. KLAYMAN:**  Yes, I can.

9  **BY MR. KLAYMAN:**

10     **Q.   And Ms. Wallis, you've seen this document**

11  **before, have you not, a standard consent agreement?**

12     A.   I -- only first saw it in deposition

13  preparation with my counsel.  I had not previously

14  seen it.

15     **Q.   Do you know who drafted this agreement on**

16  **behalf of --**

17     A.   I do -- I do not.  I did not draft this

18  agreement.

19     **Q.   Have you ever heard of these companies,**

20  **Greenpark Television?**

21     A.   Yes.

22     **Q.   And in what context do you know of**

23  **Greenpark Television?**

24     A.   Greenpark Television is the single member

25  of a company I created, Yerushalayim Television,

```
 1  LLC.

 2      Q.    What do you mean that it's a single

 3  member?

 4      A.    It is the sole owner of the LLC that I

 5  created, called Yerushalayim Television, LLC.

 6      Q.    And the owner of Greenpark Television is

 7  Sacha Baron Cohen, correct?

 8      A.    The owner of Greenpark Television is La

 9  Quinta, LLC.

10      Q.    La Quinta is owned by Sacha Baron Cohen?

11      A.    La Quinta is owned by Please You Can

12  Touch, LLC.  That is owned by Sacha Baron Cohen.

13      Q.    Now, what is the reason that all of these

14  companies were created?

15          MS. MCNAMARA:  Objection and instruct the

16  witness not to answer.

17          MR. KLAYMAN:  Certify it.

18  BY MR. KLAYMAN:

19      Q.    These companies were created to insulate

20  Baron Cohen from potential liability, correct?  To

21  make any plaintiff have to go through a number of

22  different groups before they would reach him

23  personally, correct?

24          MS. MCNAMARA:  I think the witness can

25  explain what an LLC means, if that's --
```

1  whether or not, with all of these different chains

2  of ownership, that a fraud was being committed?

3      A.   No, as a corporate attorney my job is to

4  create the corporate entity.  I'm not in-house

5  counsel.  My job is simply to create the corporate

6  entity.

7      Q.   Did you have communications with lawyers

8  for any of these companies in incorporating

9  Yerushalayim TV?

10      A.   No, I don't believe so.

11      Q.   Now, you used your office address as the

12  contact address for Yerushalayim TV, correct?

13      A.   I don't recall.  I would have to see the

14  articles of incorporation.

15      Q.   All right, well, let's go through them.

16  Let's first -- I turn your attention to Defendants'

17  Bates number 1.

18          THE VIDEOGRAPHER:  One moment, sir.

19          THE REPORTER:  And Mr. Klayman, we'll be

20  marking this as an exhibit as well, sir?

21          MR. KLAYMAN:  Yes, Exhibit 2.

22          (Whereupon, Exhibit 2 was marked for

23  identification.)

24          THE REPORTER:  I will continue on from

25  there.



NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

```
 1              THE VIDEOGRAPHER:  Can you see the
 2   document, sir?
 3              MR. KLAYMAN:  Yes.
 4   BY MR. KLAYMAN:
 5       Q.   You see that document?
 6       A.   Yes.
 7       Q.   What does this document reflect?
 8       A.   It is the articles of organization for
 9   Yerushalayim Television, LLC.
10       Q.   And your name appears at the bottom,
11   correct?
12       A.   I can't see the bottom.
13       Q.   All right, well, let's scroll down.
14       A.   Yes.
15       Q.   On what basis is your name appearing on
16   this document?
17       A.   As the attorney of record and organizer of
18   the LLC.
19       Q.   Now, the principal office address, which
20   is listed at Roman numeral four, is that your
21   address?  That was your office address?
22       A.   No.
23       Q.   What address is that?  Who resides -- who
24   or what resides at that address?
25       A.   That was the principal office address of
```

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

```
 1      Q.    Next turn to Defendants' Bates number 6

 2 and 7.

 3           THE REPORTER:  And Counsel, if I assume

 4 correctly, this would be Exhibit 3?

 5           MR. KLAYMAN:  Yes.

 6           (Whereupon, Exhibit 3 was marked for

 7 identification.)

 8           THE VIDEOGRAPHER:  Can you see the

 9 document, sir?

10           MR. KLAYMAN:  Yes.

11 BY MR. KLAYMAN:

12      Q.    Ms. Wallis, do you want to see the entire

13 document?  Just scroll down so you can familiarize

14 yourself with it again. Okay, Ms. Wallis, you --

15           MR. KLAYMAN:  I'll ask this be marked

16 Exhibit 3, and it consists of Bates number 6 through

17 9.

18 BY MR. KLAYMAN:

19      Q.    You prepared this document, did you not,

20 Ms. Wallis?

21      A.    Yeah.

22      Q.    And under part 5, where it says -- you can

23 see it right there -- the current directors,

24 officers, limited liability company managers,

25 managing partners, trustees or persons serving in a
```

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

```
 1  deposition.
 2          MR. KLAYMAN:  Certify all these questions.
 3  I turn your attention to what I'll ask the court
 4  reporter to mark as Exhibit 5.  It's Bates numbers
 5  14 and 15 of documents produced by the Defendants.
 6          (Whereupon, Exhibit 5 was marked for
 7  identification.)
 8  BY MR. KLAYMAN:
 9      Q.   What is this document, Ms. Wallis?
10      A.   That is the limited liability company
11  annual report for Yerushalayim Television, LLC, in
12  Wyoming.
13      Q.   And it's dated October 1st, 2018, correct?
14      A.   It seems -- it seems it was November 14th,
15  2018.
16      Q.   And you created this document?
17      A.   Yes.
18      Q.   And you filed it?
19      A.   Correct.
20      Q.   On or about November 14th, 2018?
21      A.   Yes.
22      Q.   This document reflects no economic
23  activity on behalf of Yerushalayim TV, correct?
24      A.   I don't believe there's a place for that
25  in this document.
```

1  of ethics of the State Bar of California and

2  Alabama, have you ever felt any responsibility with

3  regard to Yerushalayim TV being used to deceive

4  Judge Roy Moore?

5        MS. MCNAMARA:  Objection to form.  You can

6  answer that question.

7     A.   My answer is no.

8  BY MR. KLAYMAN:

9     Q.   Did there come a point in time when

10 Yerushalayim TV ceased to exist?

11    A.   Yes.

12    Q.   When was that?

13    A.   I do not recall.

14    Q.   What were the circumstances upon which it

15 ceased to exist?

16    A.   Once the annual filings are no longer

17 filed, it's administratively dissolved by the state

18 of formation.

19    Q.   You were instructed to make no further

20 administrative filings on behalf of Yerushalayim TV?

21    A.   I believe that calls for attorney-client

22 privileged communication.

23    Q.   Okay.  So you made no further filings on

24 behalf of Yerushalayim TV?

25    A.   Correct.

1    Q.    And when was it dissolved by the State of

2   Wyoming?

3    A.    I do not recall.

4         MR. KLAYMAN:   I turn your attention to

5   Defendants' Bates number 32.  We'll mark that as

6   Exhibit 6.

7         (Whereupon, Exhibit 6 was marked for

8   identification.)

9   BY MR. KLAYMAN:

10    Q.    Have you seen that document before, Ms.

11   Wallis?

12    A.    Yes.

13    Q.    Did you create this document?

14    A.    No.

15    Q.    Who did?

16    A.    I -- you would have to scroll to the

17   bottom of the page.

18    Q.    Okay.

19    A.    It appears Wendy Heller created that

20   document.

21    Q.    Who is Wendy Heller?

22    A.    I do not know.

23    Q.    Did there come a point in time when you

24   were terminated by Yerushalayim TV?

25    A.    No.

1      Q.   Why is it that you didn't play a role in

2  creating this document, which are titled Secretary

3  of State articles of organization, dated May 23rd,

4  2017?

5      A.   I don't know.  I don't believe I had been

6  hired at that point.

7      Q.   Who is Howard Altman?

8      A.   I'm not sure.  I don't -- I've never had

9  any interaction with Howard Altman, I don't believe.

10     Q.   All right.  This document pertains to

11 Greenpark Television, correct, not Yerushalayim TV?

12     A.   Correct.

13     Q.   But Greenpark Television is the owner, at

14 least as listed, of Yerushalayim TV?

15     A.   Correct.  It's the sole member of

16 Yerushalayim Television, LLC.

17     Q.   Is Howard Altman a lawyer?

18     A.   I don't know.

19     Q.   Is Wendy Heller a lawyer?

20     A.   I don't know.

21     Q.   And you've never seen this document

22 before?

23     A.   I said I had seen this document.

24     Q.   And when did you see it?

25     A.   When I was checking the corporate

1  structure of those entities that I was creating the

2  subsidiary for, so it would have been around the

3  time that I was creating Yerushalayim Television.

4       **Q.   Did you check to see whether or not**

5  **Greenpark Television was an active corporation?**

6       A.   Yes, and I believe we obtained a copy of

7  this from the client, and also from the California

8  Secretary of State website.

9           **MR. KLAYMAN:**   I turn your attention to

10  Defendants' Bates number 33, and I'll ask it be

11  marked as Exhibit 7, Plaintiffs' Exhibit 7.

12           **(Whereupon, Exhibit 7 was marked for**

13  **identification.)**

14  BY MR. KLAYMAN:

15       **Q.   Have you seen this document before?**

16       A.   Yes.   Isn't this the same document we just

17  looked at?

18       **Q.   No.**

19       A.   Okay.   Yes, I have seen this.

20       **Q.   When did you see it?**

21       A.   The same time when I would have been

22  forming Yerushalayim Television, LLC as a subsidiary

23  of Greenpark.

24       **Q.   Now, look at part 5.   That reflects La**

25  **Quinta Entertainment, LLC is the owner of Greenpark**

```
 1  Television, correct?

 2       A.   Correct.

 3            MR. KLAYMAN:  I'll turn your attention to

 4  what I'll ask to be marked as Exhibit 8.  That's

 5  Bates numbers 34 and 35.

 6            (Whereupon, Exhibit 8 was marked for

 7  identification.)

 8  BY MR. KLAYMAN:

 9       Q.   Have you seen that document before?

10       A.   Yes.

11       Q.   And when did you see it?

12       A.   Around the time that I was forming

13  Yerushalayim Television, LLC.

14       Q.   Did you ever (audio cutout)?

15       A.   I'm sorry, you -- your question blanked

16  out.

17            THE VIDEOGRAPHER:  Yes, Counsel, the

18  beginning.

19            MR. KLAYMAN:  All right.

20  BY MR. KLAYMAN:

21       Q.   This document, Exhibit 8, reflects the

22  assignment of an EIN, employer identification

23  number, for Greenpark Television, correct?

24       A.   Correct.

25       Q.   I take it Yerushalayim TV never got an EIN
```

1  number, to the best of your knowledge?

2      A.   I did not obtain one.  I don't know if it

3  ever did.

4          MR. KLAYMAN:  I'll turn your attention to

5  what I'll have marked as Exhibit 9.  That's Bates

6  number 36.

7          (Whereupon, Exhibit 9 was marked for

8  identification.)

9  BY MR. KLAYMAN:

10     Q.   Have you seen that document before?  It's

11 Secretary of State articles of organization, State

12 of California, Secretary of State, March 30th, 2017.

13     A.   Yes.

14     Q.   And when did you see it?  When did you

15 first come to learn?

16     A.   Around the time that I was creating

17 Yerushalayim Television, LLC.

18     Q.   And that pertains to La Quinta

19 Entertainment, LLC, correct?

20     A.   Correct.

21     Q.   Do you know whether any -- at the time

22 that Yerushalayim TV was being created, what law

23 firm, again, were you working for, or was it your

24 own law firm?

25     A.   Manning & Kass, Ellrod, Ramirez, Trester

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM

```
 1  in their downtown L.A. office.

 2       Q.    Did anyone else from that law firm play

 3  any role in the incorporation of Yerushalayim TV?

 4       A.    No.

 5       Q.    Did any person, to the best of your

 6  knowledge in that law firm have anything to do with

 7  La Quinta or Please You Can Touch, LLC or Greenpark

 8  Television?

 9       A.    No.

10            MR. KLAYMAN:   Did I have that document

11  marked that I just referred to, Court Reporter?

12            THE REPORTER:   Yes, sir, Exhibit 9.   It

13  should have been Bates stamped numbers 36, sir.

14            MR. KLAYMAN:   Okay.   I'll turn your

15  attention to Bates number 37, which is Exhibit 10.

16  I'll ask it be marked Exhibit 10 to this deposition.

17            (Whereupon, Exhibit 10 was marked for

18  identification.)

19  BY MR. KLAYMAN:

20       Q.    Have you seen that document before?   This

21  is a Secretary of State statement of information,

22  limited liability company, filed with the California

23  Secretary of State on April 17th, 2017.

24       A.    Yes.

25       Q.    When did you come -- (audio cutout) to
```

1  your knowledge?

2      A.   Can you repeat your question?  You blanked

3  --

4      Q.   When did you --

5      A.   -- out again.

6      Q.   When did you first learn of this document?

7  When did you first see it?

8      A.   The same time as the others.  Around the

9  time that I was creating Yerushalayim Television,

10 LLC.

11     Q.   And this document reflects the Please You

12 Can Touch, LLC as the owner of La Quinta

13 Entertainment, LLC?

14     A.   Correct.

15     Q.   And the address is 9100 Wilshire

16 Boulevard?

17     A.   Correct.

18     Q.   And the same address for Please You Can

19 Touch?

20     A.   Correct.

21     Q.   Who, if anyone, resides at that address or

22 at least does business at that address?

23     A.   I do not know.  Apparently La Quinta

24 Entertainment and Please You Can Touch.

25     Q.   You know of any person who does business

```
 1              (Whereupon, Exhibit 11 was marked for

 2    identification.)

 3    BY MR. KLAYMAN:

 4        Q.   Have you seen that document before, Ms.

 5    Wallis?

 6             MR. KLAYMAN:   Can you put that up on the

 7    screen?

 8        A.   Yes.

 9    BY MR. KLAYMAN:

10        Q.   And you saw that in and around the time

11    that you formed Yerushalayim TV?

12        A.   Correct.

13        Q.   And this document reflects that Please You

14    Can Touch, LLC is --

15        A.   Oh, wait.  This says filed January 16th,

16    2019, so no, I wouldn't have seen this document in

17    2017.

18        Q.   Have you ever seen this document before?

19        A.   I don't recall.

20        Q.   This document reflects that La Quinta is

21    owned by Please You Can Touch, LLC as you previously

22    testified, correct?

23        A.   Yes.

24             MR. KLAYMAN:   I'll ask the court reporter

25    to mark the next document Exhibit 12, Bates numbers
```

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

1   39, through and including 44.

2          (Whereupon, Exhibit 12 was marked for

3   identification.)

4   BY MR. KLAYMAN:

5       Q.   This is a document, an operating agreement

6   of La Quinta Entertainment, LLC.  Did you see this

7   document in and around the time you formed

8   Yerushalayim TV?

9       A.   Yes.

10      Q.   And turn to Bates number 42 of this

11   document, which is Exhibit 12 -- we marked it as

12   Exhibit 12, Plaintiffs' deposition.  Section 8.1, to

13   the extent not inconsistent with applicable law,

14   neither the member nor any of the member's officers,

15   directors, employees, partners, members,

16   shareholders, or affiliates shall be liable,

17   responsible or accountable in damages or otherwise

18   to the company for any operations of the company.

19   If the person acted in good faith and in a manner

20   the person reasonably believed to be in or not

21   opposed to the best interest of the company, and

22   with respect to any criminal action or proceeding,

23   had no reasonable cause to believe the person's

24   conduct was unlawful.

25          You reviewed this document at the time

1  that you were forming Yerushalayim TV, correct?

2      A.   Correct.

3      Q.   Did you make an inquiry, with regard to

4  Section 8.1, as to whether the purpose of all of

5  these companies that stood behind Yerushalayim TV

6  were engaged in bad faith, unlawful or criminal

7  activity?

8      A.   No, that's a common provision in operating

9  agreements that I've seen in almost every operating

10 agreement that I've dealt with.  It didn't raise any

11 flags.

12     Q.   So you didn't ask any questions as to

13 whether Yerushalayim TV was being used for any bad

14 faith, illegal or criminal activity?

15     A.   No.

16         MR. KLAYMAN:   I'll turn your attention to,

17 and I'll ask the court reporter to make as Exhibit

18 13, this is a State of California, Secretary of

19 State limited liability articles of organization

20 with regard to Please You Can Touch, LLC.

21         (Whereupon, Exhibit 13 was marked for

22 identification.)

23 BY MR. KLAYMAN:

24     Q.   Did you see this document in and around

25 the time that you formed Yerushalayim TV?

NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

```
 1              MS. MCNAMARA:  You have not given the
 2   Bates number, and so I don't think the court
 3   reporter --
 4              MR. KLAYMAN:  Bates number 45.  Bates
 5   number 45.
 6       A.   Could you repeat your question?
 7   BY MR. KLAYMAN:
 8       Q.   Did you see this document in and around
 9   the time that you formed Yerushalayim TV?
10       A.   Yes.
11       Q.   Have you ever heard of the company Four By
12   Two Films, Inc.?
13       A.   Yes.
14       Q.   In what context did you learn of that
15   company?
16       A.   When I was retained to represent Four By
17   Two Films and its affiliated companies.
18       Q.   Who advised you of Four By Two Films, of
19   its existence?
20       A.   That would have been Todd Schulman.
21       Q.   Four By Two Films is owned by Sacha Baron
22   Cohen, correct?
23       A.   That's my understanding.
24       Q.   And does Four By Two Films own all of
25   these other companies that we've been talking about?
```

NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

1          MR. KLAYMAN:  I turn your attention to

2    Bates numbers 48, through and including 55.

3          THE REPORTER:  Exhibit 14, correct,

4    Counsel?

5          MR. KLAYMAN:  Yes, Exhibit 14.

6          (Whereupon, Exhibit 14 was marked for

7    identification.)

8    BY MR. KLAYMAN:

9      Q.   This is a document styled operating

10   agreement of Please You Can Touch, LLC.  Did you see

11   and review this document in and around the time that

12   you incorporated Yerushalayim TV?

13     A.   Yes.

14     Q.   Yerushalayim TV was dissolved shortly

15   after the airing of the show "Who is America?",

16   correct?

17          MS. MCNAMARA:  Objection to form.

18     A.   I don't recall the date of the airing or

19   the date of dissolution.

20   BY MR. KLAYMAN:

21     Q.   But it was, relatively speaking, shortly

22   after Who is America --

23     A.   I don't -- I don't know that it was

24   shortly thereafter.  I don't recall those dates.

25     Q.   You were instructed to allow that company