# EXHIBIT 29

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


ROY STEWART MOORE, ET AL,          :
                                   :
                Plaintiffs,        :       Docket No. CA 18-2082
                                   :
              vs.                  :          Washington, D.C.
                                   :       Monday, April 29, 2019
SACHA NOAM BARON COHEN, ET AL      :          10:00 a.m
                                   :
                Defendants.        :
-----------------------------x



TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE THOMAS F. HOGAN
UNITED STATES DISTRICT SENIOR JUDGE


APPEARANCES:

For the Plaintiffs:     LARRY KLAYMAN, Esquire
                        Klayman Law Group, P.A.
                        2020 Pennsylvania Ave., NW
                        Suite 800
                        Washington, DC  20006

For the Defendants:     ELIZABETH A. MCNAMARA, Esquire
                        Davis Wright Tremaine LLP
                        1251 Avenue of the Americas
                        21st Floor
                        New York, New York  10020-1104

                        ERIC J. FEDER, Esquire
                        LISA ZYCHERMAN, Esquire
                        Davis Wright Tremaine LLP
                        1919 Pennsylvania Avenue, NW
                        Suite 800
                        Washington, DC  20006-3401

Court Reporter:         CRYSTAL M. PILGRIM, RPR
                        Official Court Reporter
                        United States District Court
                        District of Columbia
                        333 Constitution Avenue, NW
                        Washington, DC  20001

```
1                    P-R-O-C-E-E-D-I-N-G-S

2          THE DEPUTY CLERK:  Your Honor, this is civil action

3  18-2082, Roy Stewart Moore, et al versus Sacha Noam Baron

4  Cohen, et al.

5     Will counsel please approach the lectern and state your

6  appearances for the record and introduce any parties at your

7  table.

8          MR. KLAYMAN:  Good morning, Your Honor, Larry

9  Klayman.  I'm here on behalf of Chief Justice Roy Moore,

10 plaintiff, his wife Kayla Moore, plaintiff.

11    Sitting here is Melissa Issak.  She's local counsel from

12 Montgomery, Alabama I wanted to get your permission to sit with

13 us.

14         THE COURT:  Thank you.  Former Chief Judge Moore is

15 no longer Chief Judge.  He's now a civilian I take it.

16         MR. KLAYMAN:  Correct.

17         THE COURT:  All right, thank you.

18         MS. MCNAMARA:  Good morning, Your Honor, Elizabeth

19 McNamara with Davis Wright Tremaine on behalf of all of the

20 defendants.  I'm here with my colleagues Eric Feder and Lisa

21 Zycherman.

22         THE COURT:  All right, thank you.

23    We're here today for motions that have been filed by the

24 various defendants to transfer the case under 28 U.S.C. 1404

25 (A).  As well as a motion for plaintiff to file, a leave to
```

1    file a sur-reply to the opposition to the motion to transfer

2    which I think I've reviewed not necessarily to rule upon at

3    this time.

4        In any event, the issue really is the plaintiff in this

5    case, the former Chief Justice of the Supreme Court of Alabama

6    and his wife, a lawsuit filed against Baron Cohen, Showtime

7    Network and CBS here in the District of Columbia for defamation

8    on behalf of the Judge Moore, intentional infliction of

9    emotional distress on both the plaintiffs and fraud on behalf

10   of the plaintiffs arising out of his appearance on Who is

11   America, the program which is apparently a political comedic

12   television series featuring Mr. Cohen produced by Showtime and

13   CBS.

14       The issue really is there's a forum-selection clause in

15   the contract that requires, according to the movants, in the

16   event that in the choice of law in this forum selection in the

17   contract consent agreement 6, I believe, in any event agrees,

18   the participants agree not no bring any claim in connection

19   with the program production, but if they do bring one it must

20   be brought before and adjudicated by only a competent court

21   located in the State and County of New York and governed by the

22   substantive law of the State of New York.  And that paragraph

23   intended by the parties will stand on its own is intended to be

24   valid and enforceable even if a Court finds that the other

25   paragraphs are not valid and enforceable.

1    The defendants argued this case should be transferred

2 based upon the forum selection law contained in the agreement

3 and this is controlled more than by the federal procedure, but

4 by the Atlantic Construction Company case of the Supreme Court

5 in 2013.

6    So with that background, we'll start.  I'll start with the

7 movant very quickly with a couple of questions, then I'll turn

8 to Mr. Klayman.

9         MS. MCNAMARA:  Thank you, Your Honor.  Do you have

10 some specific questions or do you want me to address?

11         THE COURT:  I do have some questions you can start

12 and then I'll see where I think I want to have you explain a

13 couple of things.

14         MS. MCNAMARA:  Absolutely, Your Honor.  As you've I

15 think correctly laid out the issue here is really discreet and

16 we submit decided really by the Supreme Court decision in

17 Atlantic Marine in 2013 as you've already noted.

18    I mean, there's no dispute on this record that Judge Moore

19 executed the consent agreement and there's no dispute that the

20 consent agreement included a mandatory forum-selection clause

21 providing that any action has to be brought in New York under

22 New York law.  And as you've laid out, there's no dispute as to

23 the operative law.  The forum-selection clause would --

24         THE COURT:  What about his position that the whole

25 contract is void ab initio because of fraud?  It was induced

1  fraud to come to D.C. induced to enter into this interview

2  which was all a sham, he was not aware of and induced therefore

3  to make these statements were used to defame him and therefore,

4  he shouldn't be bound by the contract including the

5  forum-selection clause.

6          MS. MCNAMARA:  Yes, Your Honor, and that precise

7  issue has been raised and litigated in a number of cases

8  including what we consider to be a controlling case here, the

9  Northern District of Alabama case, but also a number of cases

10 here in this District as well as the Supreme Court which

11 addressed it all the way back in 1974.  And the established

12 principle from this entire line of cases is that if the

13 allegations of fraud go to the contract as a whole and there's

14 an argument as here, that the contract ab initio was somehow

15 fraudulently induced, that is not sufficient to preclude the

16 enforcement of the forum-selection clause.

17      The plaintiff must allege with plausible allegations that

18 he was fraudulently induced into the forum-selection clause.

19 Here the plaintiff makes no such allegation and nor could he we

20 submit.  The forum-selection clause is, as you've noted,

21 paragraph 6 in a one page agreement.  It's clearly there.  It

22 was not concealed which is one ground that courts have

23 indicated might be a basis for finding fraud, if the

24 forum-selection clause is concealed.  Here it plainly was not.

25 He read the contract.  He not only read the contract, he edited

1    the contract initially a change to the agreement.

2        Moreover, the other argument that sometimes is raised

3    where fraud as to the specific clause versus the entire

4    contract is if there was some differential in negotiating power

5    or an unsophisticated plaintiff.  Here we have far to the

6    contrary.  No one could argue that Judge Moore who not only is

7    an attorney and under the Cheney decision in this Court, just

8    being an attorney would be sufficient to override any plausible

9    argument that he wasn't sufficiently sophisticated to

10   understand the terms of the contract.  But here, he not only

11   was a former attorney, but he was the Chief Judge of Alabama

12   Supreme Court.  And no plausible argument we submit, Your

13   Honor, can be raised that he did not have the wherewithal to

14   understand the provision that's operative here and that

15   dictates the transfer of the case to New York.

16       As I've noted, we think the controlling case here really

17   is the Streit v. Twentieth Century Fox case out of Northern

18   District of Alabama where on remarkably identical facts dealing

19   with virtually --

20           THE COURT:  The same companies in general except

21   Twentieth Century?

22           MS. MCNAMARA:  Yes, it was Sacha Baron Cohen.  It was

23   his movie.  It was the same language in the agreement.  There

24   the Court addressed the precise issue being raised by the

25   plaintiffs here; i.e. that they contended that they were

1  fraudulently induced to enter the contract, but there was no

2  claim as there is none here that he was fraudulently induced

3  into signing the contract with a forum-selection clause.

4        THE COURT:  How do they litigate then their fraud

5  overall charge that they don't think they're bound by the

6  contract, they can't raise it here?

7        MS. MCNAMARA:  Yes, Your Honor.  It will be litigated

8  once it's transferred in New York.  I can foreshadow we will be

9  moving to dismiss under the consent agreement.  And at that

10  juncture it can appropriately be litigated.  If they believe

11  that those terms of the rest of the consent agreement are not

12  enforceable because of some fraud, then that is the forum in

13  which that argument has to be litigated and decided.  And

14  again, foreshadowing that's precluded by the Psenicska case out

15  of the Second Circuit.  But nonetheless, that is the proper

16  forum for him to raise the argument.

17        THE COURT:  The case arose here, right?  I mean, the

18  action that he's complaining of happened here in the District

19  of Columbia?

20        MS. MCNAMARA:  Yes, I don't think that there's any

21  dispute that we're alleging here that this seems to be a focus

22  of the plaintiffs that the District of Columbia would be a

23  proper venue.  In Atlantic Marine the operative Supreme Court

24  decision, thereto where the plaintiff had filed the action was

25  a proper venue under traditional venue analysis.

1            THE COURT:  Right.

2            MS. MCNAMARA:  But the Court still found that

3    transfer was warranted under the controlling terms of that

4    contract.  So the fact that this may be a proper venue is for

5    purposes of this transfer motion really irrelevant, Your Honor.

6            THE COURT:  All right, yes, Justice Alito in the

7    Atlantic Marine discussed reversing the lower court actually.

8            MS. MCNAMARA:  Exactly on that very point.  So I

9    think that obviously that's the controlling law here and that's

10   what further dictates the transfer of this motion to New York.

11           On the other argument that, that the plaintiffs try to put

12   forth in opposition to this motion, Your Honor, is that the

13   defendants are quote, "strangers" to the consent agreement.

14           THE COURT:  That goes to the supplemental motion to

15   file a sur-reply as well because the Salon article saying that

16   they're separate people and that --

17           MS. MCNAMARA:  Well, I understood the supplemental

18   sur-reply really to be putting forth further evidence of this

19   being an arguably a proper venue.  That there were statements

20   in that article that indicated that Sacha Baron Cohen had been

21   in D.C. and was operating in D.C. in connection with the

22   production of the film, at least part of it.  So I didn't see

23   that it went to his strangers to the consent agreement

24   argument, but maybe I was missing something, Your Honor.

25           THE COURT:  All right.

1          MS. MCNAMARA:  On that argument, we submit and I

2   think as we've indicated in our papers that it fails for two

3   independent reasons.  First, is that the defendants are in fact

4   covered by the agreement.  Under the agreement producers --

5          THE COURT:  He argued supplemental defendants are not

6   intended to be third party beneficiaries.

7          MS. MCNAMARA:  I see, I stand to be corrected, thank

8   you, Your Honor.

9          So here we submit that the argument that the YTV,

10  Yerushalayim TV was a signatory on the consent agreement is

11  unfounded for two reasons, Your Honor.  First is the fact that

12  terms, the expressed terms of the agreement producer is defined

13  and I quote from the agreement, "as YTV and its assignees,

14  licensees, parents, subsidiaries and affiliates."

15         As we've produced and submitted in this motion, it's

16  established that Mr. Cohen is in fact the parent and affiliate

17  of YTV.  He's the ultimate owner of the company and clearly he

18  was the creator of the show, and so clearly he is affiliated.

19         Then also Showtime and it's parent CBS were indisputably

20  the licensees of the program and acquired the rights and the

21  ability to air it on TV.

22         But even if the Court were to conclude that the express

23  terms of the contract did not, was not intended to and did not

24  reach these defendants, and we submit that it does, then we

25  still submit that the Court needs to or should conclude that

1   these defendants were sufficiently closely related to YTV and

2   they clearly were intended third party beneficiaries of the

3   agreement.  You get there again by looking at the express terms

4   of the agreement itself, Your Honor.

5       The agreement provides that Judge Moore had waived his

6   right to bring claims related to the program and its production

7   as against quote, "anyone associated with the program", end

8   quote.  And plainly Sacha Baron Cohen the program's creator as

9   well as Showtime and CBS who licensed and aired the program are

10  associated with the program.  They were indeed intended

11  beneficiaries.

12      Again, I think the case that's most on point there is a

13  New York case cited in our papers which is the Clapper case

14  that dealt with a very similar consent agreement where one

15  party had executed it and the plaintiff there like here tried

16  to argue that the affiliated companies were not captured and

17  did not get the benefit of the terms of the agreement.  And

18  there and we submit the same here the Court concluded that they

19  clearly were intended beneficiaries.  They clearly were

20  associated with the program, each of the defendants and were

21  entitled to get the benefit of the agreement.

22          THE COURT:  The New York case is the Maggie 21, which

23  New York case are you talking about?

24          MS. MCNAMARA:  The Klapper case versus Viacom.  It's

25  cited in our papers, Your Honor.  I can give you the cite.

1           THE COURT:  That's all right, I'll have it here.

2           MS. MCNAMARA:  It's 41, MS 3d and it's affirmed by

3     the second department in New York 129 A.D. 3d 674.  That case

4     did not involve a forum-selection clause, but it involved the

5     enforcement of a very similar consent agreement and it's terms

6     to the affiliated parties dealing with a television show just

7     like this one.

8           So Your Honor for that reason as well, we submit that that

9     second argument that's put forth by the plaintiffs also fails

10    and for all these undisputed facts and undisputed and

11    controlling law, we submit that this case should be transferred

12    to the Southern District of New York.  If the plaintiffs want

13    to raise their arguments about fraud ab initio, they are more

14    than entitled to raise those arguments in the Southern

15    District.  But this is not the right forum.

16          As Your Honor underscored at the outset, and I think

17    appropriately, even if this Court were to conclude that there

18    were issues about the viability of the agreement, other terms

19    of the agreement, by its expressed terms the forum-selection

20    clause stands alone even if the rest of the contract fails.

21    And so for all of these reasons, Your Honor, we ask that the

22    Court transfer the case to New York.

23          THE COURT:  All right, thank you, Ms. McNamara,

24    appreciate the argument.

25          MS. MCNAMARA:  Thank you.

1          THE COURT:  Mr. Klayman, I'll hear from you at this

2     time as to those issues I've raised both on the legal standard

3     under the Atlantic Marine case and the liability to

4     forum-selection clause and as to the beneficiaries under the

5     defendants, et cetera, not being signatories to the contract

6     whether they can enforce the forum-selection clause and whether

7     the whole thing is void or not in any event.

8          MS. MCNAMARA:  Thank you, Your Honor.  As Your Honor

9     knows and you're a very distinguished jurist, so I don't need

10    to flatter you, but you have won awards for your ability on the

11    bench and I appreciate that.  So I'm not going to get into the

12    fact that plaintiffs have a presumption of being able to choose

13    the forum.  We start with that, and that's a known concept.

14        Secondly, there was no meeting of the minds here.  And if

15    I may approach the bench.  I have a highlighted version of the

16    Standard Consent Agreement, if I may give you a copy of it.

17         THE COURT:  All right, you can do that.  The Clerk

18    can take that.

19        Let me just get back to your first statement, the

20    presumption.  You're right under the 404 Section generally,

21    but where there's forum-selection clause the Supreme Court said

22    and I'll quote, "should be given controlling weight in all but

23    the most exceptional cases and basically the non-movant bears

24    the burden of demonstrating that such extraordinary

25    circumstances exist and must show."  And another quote is,

1   "why the Court should not transfer the case of the forum to

2   which the parties agreed."

3      So if it's valid the plaintiff's choice of forum does not

4   bear weight.

5         MR. KLAYMAN:  I agree, Your Honor, I was getting to

6   that, but this is that exceptional or unusual case and that's

7   the point.

8         THE COURT:  All right, I have in front of me now as

9   part of the argument the one page contract signed by Roy S.

10  Moore and by the TV, YTV we'll call it.

11         MR. KLAYMAN:  Yes, it's exceptional and unusual for a

12  number of reasons.  First of all, there was no consideration

13  here with regard to Judge Moore.  The $200 for the standard

14  consent agreement is consideration was for the Foundation for

15  Moral Law, that's a corporation 501(c)(3).  There was no

16  consideration going to him.

17      Secondly, very importantly in terms of the fraud and the

18  inducement here.  Look at paragraph 4, Your Honor, the

19  highlighted portion.  Judge Moore crossed out and initialed

20  that this matter would not involve any allegation sexually

21  oriented or offensive behavior or questioning.  Specifically,

22  ruled out of this agreement signed by somebody who wanted to

23  obviously hide who he was, the signature for Yerushalayim TV.

24      I might add in that regard there's no showing here

25  definitively that Sacha Baron Cohen is the owner of

1   Yerushalayim TV.   The fact that there is an affidavit submitted

2   by someone who claims to be a producer, we haven't had a chance

3   to examine him.   Everything about this entire matter was on a

4   fraud, upon a fraud, upon a fraud.   Woody Allen would say a

5   travesty of a mockery of a travesty of a fraud in this

6   instance.   This is an exceptional case.

7            THE COURT:   Well, this is a motion status, this is

8   not the trial yet or is not discovery involving that, but in

9   any event on paragraph 4F raise intrusion or invasion of

10  privacy, that was not crossed out.   After that in parens such

11  as any allegedly sexual oriented or offensive behavior or

12  questioning close parens was crossed out and initialed by R.M.

13  Moore, signatore R.S. Moore.

14           MR. KLAYMAN:   That's right.   Here's the exceptional

15  nature, the unusual nature, the egregiousness of these frauds.

16  And not just one, but at least four separate frauds that were

17  committed upon Judge Moore.   Culminating in articles like this:

18  Roy Moore fails pedophile detector test from Sacha Baron Cohen.

19  What could be worse, Your Honor, what worse act could you

20  conceivably commit than to accuse a distinguished jurist in

21  particular of being a pedophile which he is not.

22           THE COURT:   But where do I get with this either the

23  Northern District of Alabama case Streit v. Twentieth Century

24  Fox which is almost identical to this case, essentially the

25  same contract at issue or other related cases from our court

1 saying that he would have to allege that he was fraudulently

2 induced or agreed to the forum-selection clause itself, not

3 just the contract as a whole?

4 　　　　MR. KLAYMAN:  I'm glad you asked the question.  I was

5 getting to that.  Your Honor, you're not bound by the Northern

6 District of Alabama.  That's a lower court decision.  It's not

7 binding law.  It's not a Circuit Court decision.  It's not a

8 Supreme Court decision.  And that Court didn't face the same

9 exceptional circumstances, unusual circumstances that we're

10 facing here.  That's one Judge in the Northern District of

11 Alabama.  I'm surprised that my esteemed counsel would cite it

12 when they're so anxious to get back to a court that they think

13 will be favorable to them.

14 　　　　THE COURT:  I notice in your pleadings you mention

15 that.  What evidence do I have of that that there would be a

16 left leaning judge favorable to the entertainment industry in

17 New York as opposed to Washington D.C.?

18 　　　　MR. KLAYMAN:  Actually, I never said left leaning,

19 Your Honor, in deference.  I may have said that somewhere else,

20 but I never said it in the pleadings.  The Southern District is

21 very favorably disposed towards the entertainment industry, so

22 is the Central District of California.  That's why they choose

23 this as the forum-selection clause. It's their home court.

24 It's where they want to be.

25 　　　　THE COURT:  You said on page 6 of your opposition,

1    "Indeed defendant's motion is purely tactical.  They clearly

2    perceived New York as a more favorable forum where they would

3    more likely find a favorable left leaning, pro-entertainment

4    industry judge to rule in their favor."

5              MR. KLAYMAN:  Okay, I guess I did say that.  Well,

6    that's what I believe.  I was trying to be tactful.  I don't

7    want to put you on the spot, you know.  Judge is suppose to

8    rule neutrally and that's your reputation.

9              THE COURT:  You said that, that's fine, that's all.

10             MR. KLAYMAN:  Here's the test, Your Honor.  Let me

11   just go through the frauds that were committed and why this is

12   exceptional.

13       First of all, Judge Moore was offered to go to Washington

14   D.C. at the Mandarin Hotel with his wife Kayla to get an award

15   from Israel.  He is a very religious devote person of faith,

16   and he supports Israel, he thought it was genuine.

17       He gets there and he's presented with this standard

18   consent agreement.  He crosses out, and then they made a point

19   in their pleadings that we didn't reference the actual portion

20   of the standard consent agreement that we considered to be

21   fraudulent.  Well, here it is.  I mean, it's right there.

22       He told them and he only agreed to be interviewed if he

23   wasn't going to be smeared on the basis of alleged sexual

24   offensive behavior.  They signed that.  They agreed to that.

25   That's another fraud.

1        Sacha Baron Cohen is in disguise.  In fact, he brags about

2   it, that's one of the pleadings that we submitted not just with

3   regard to Judge Moore, but with regard to Ben Carson where he

4   was ready to present a fraudulent ID to the Secret Service

5   which would have been a major crime, but he came up with

6   another fraud, dropped the ID on the floor and maybe the Secret

7   Service will believe that I am who I say I am.

8        Next he gets in front of the set, the TV set and they hold

9   up this so-called pedophile detecting device which starts

10   beeping which also is a fraud.

11        And then last but not least, after the whole thing is over

12   Ms. Isaac, local counsel for Mr., for Judge Moore, sends a

13   letter, and I have the return receipt, to David Nevins,

14   Showtime Networks and CBS Leslie Moonves. Moonves has had his

15   own issues obviously.  And says do not publish this, do not

16   broadcast it, it's defamation.  They went ahead and did it

17   anyway.  These people, the level of arrogance is such a level.

18        THE COURT:  They also did other political figures,

19   right?

20        MR. KLAYMAN:  They did, but they didn't accuse

21   anybody of being a pedophile.

22        THE COURT:  Such as Sanders was also included, was he

23   also included?

24        MR. KLAYMAN:  I don't specifically recollect him.

25   Vice President Cheney was, O.J. Simpson was.  There were

1  others, but no one was accused of the crime of morale turpitude

2  which is the most severe defamation per se.  You don't have to

3  prove damages.

4      But the point here is and let me get to your question

5  about the case law that was cited by counsel for the

6  defendants.  They themselves recognized that in exceptional and

7  unusual cases that the test is a three part test to vitiate any

8  kind of consent waiver to forum selection or any other aspect

9  of the contract which was never a part of the meeting of the

10  minds here.

11      Number one, fraud.

12      And the third factor, I'll skip the second because we

13  don't need to get into that, public policy.

14      There was fraud, there was egregious fraud, compounded

15  fraud and as a matter of public policy this Court cannot

16  condone defrauding any individual much more a former Justice of

17  the Alabama Supreme Court.

18      So the two tests that we meet for exceptional circumstance

19  here devoid this entire agreement have been met.

20          THE COURT:  Well, let me just talk about the

21  inducement of a fraud of the forum-selection clause itself.

22  You indicated there was one case in Alabama was the only one.

23      They've cited several other cases, some in D.C.  Cheney v.

24  IPD Analytics 583 F.Supp 2d at 117, Bank v. Laptop, et cetera,

25  206 F.Supp 3d Eastern District of New York at 780 which has a

1   collection of cases.  They also claim Supreme Court has written

2   on this in Scherk v. Alberto-Culver case 417 U.S. 506 at 519.

3        Is there other case law besides the one Alabama case that

4   supports you have to set aside this particular clause not just

5   the whole contract?

6            MR. KLAYMAN:  First of all, all of the cases go on a

7   case by case basis, that's crucial, Your Honor, it's the facts

8   of that case.  You know that, I know that, Judge knows that.

9   The facts of this case are particularly egregious given the

10  number of fraudulent acts, given the simple fact uncontroverted

11  that Judge Moore crossed out any aspect about sexual offensive

12  behavior.  Given what occurred with regard to the type of

13  defamation and intentional infliction of emotional distress.

14  People have been known to jump off buildings when they have

15  been accused of things like this being a pedophile unfairly.

16  This is the most severe form of defamation.

17       On top of it as Your Honor suggested or even alluded to

18  the defendants in this case aren't even the defendants that

19  could have been in the case if they had disclosed exactly who

20  was putting on this show.  There's another fraud.

21       Yerushalayim TV, Showtime and CBS.  There's no mention of

22  that.  If they were going to be above board and not defraud my

23  client, if there was a meeting of the minds, why wouldn't they

24  just simply tell them this is a Showtime series.  It's not a

25  Yerushalayim TV by someone who claims to be a former Mosad

1    agent.

2         THE COURT:  Would your argument be the same for every

3    single individual that Mr. Moore has gone after then basically?

4    Wouldn't they all have the same right to bring a defamation

5    clause, they tricked, there's a Georgia state legislator

6    according to the pleadings somebody talked about or you said

7    Mr. Chaney.  I don't know what he did there.  I assume it was

8    under an assumed name with assumed facts that he was

9    approaching these people.

10         MR. KLAYMAN:  The difference is is that those

11   individuals went along with the fraud.  At some point they

12   ratified it in effect.  Mr. Cheney was asked do you think I

13   should water board my wife to get the truth and he said yes.

14   Then they asked, Sacha Baron Cohen asked him to sign his water

15   boarding paddle best wishes which he did.

16        With regard to the Georgia state legislator, he went along

17   with that.  He actually contacted me and asked me to represent

18   him.  I said no, I'm not.  I don't think you have a case.

19   Judge Moore does have a case.  He didn't go along with it.  He

20   walked off the set.  But for the fact that he's a gentleman,

21   Sacha Baron Cohen probably wouldn't be walking around right

22   now.

23        So it's a completely different set of circumstance and the

24   level of the egregiousness is much greater than in any case and

25   the fraud is greater and the public policy is greater and

1   someone has to stand up and say no, this isn't right, Your

2   Honor.  I believe that you're the Judge to do that.

3      And it doesn't matter what some judge in the Northern

4   District of Alabama said or somebody in the Southern District

5   of New York in the lower court level.  The Supreme Court never

6   said this is a firm principal that applies to every case.  It

7   says there are exceptional cases where it does not apply.

8           THE COURT:  All right.

9           MR. KLAYMAN:  Now after this thing is over, let me

10  just say this as a personal comment.  It wasn't enough that

11  they destroyed my client's reputation.  Roy Moore fails a

12  pedophile detector test.  This is in Alabama, obviously a

13  political motivation here.

14     Then they nominated themselves for a Golden Globe if you

15  can believe that.  Let's destroy the man and give ourselves a

16  Golden Globe.  We brought suit before Your Honor.  Thank God at

17  that point they backed off and canceled the entire show which

18  have high ratings.

19     So you know they know that they've got liability here.

20  They don't want to incur more of it.  You, Your Honor, are the

21  one Judge that has an opportunity here to put a stop to this to

22  say enough is enough.  You can't go around destroying people

23  because you think it's funny.  And Sacha Baron Cohen, we know

24  who he is.  He's not somebody of high class or high moral value

25  here.  This Court is, the Judge is.  I stand behind him with my

1  reputation.  He's my friend.  He's my client and I look

2  forward, Your Honor, to your allowing this case to remain here

3  because this is the proper forum.  The witnesses are here.  The

4  people at the hotel, the film crew, the security crew.  They

5  all saw what happened.  And let them go in front a jury of

6  their peers here.  What's wrong with a D.C. jury?  Let them

7  decide.

8      Your Honor, I thank you for your time and any further

9  questions I'll be happy to answer.

10          THE COURT:  Thank you, Mr. Cohen -- sorry -- Klayman,

11  I appreciate your work on this.

12          MR. KLAYMAN:  One other thing.

13          THE COURT:  Yes.

14          MR. KLAYMAN:  If you would like to have Judge Moore

15  take the stand because they submitted an affidavit, he's

16  willing to do that to explain exactly what happened under oath.

17          THE COURT:  I don't think that will be necessary in

18  the context of the motion, but I appreciate his offer to do so.

19      Ms. McNamara, you want to answer that litany of any

20  concerns that he had crossed out the particular area that was

21  gone into by Mr. Cohen as not being available in the contract

22  and therefore that should vitiate the fraud that, as fraud it

23  should vitiate the selection of forum clause.

24          MS. MCNAMARA:  Yes, Your Honor.  That is no different

25  than the long line of cases that we put in our papers.

1          THE COURT:  Isn't that part of the contract that

2     knocks out the area that they would agree to discuss and then

3     it is discussed as affecting the forum?

4          MS. MCNAMARA:  Well first of all, Your Honor, let me

5     get that file.

6        I don't read it as knocking out that area.  It simply said

7     it includes a definition of invasion of privacy.  I don't read

8     this as any commitment nor could it reasonably I would argue be

9     understood to be a commitment that there would be no

10    discussion.

11       But even if you presume that is the case, Your Honor, it

12    still goes squarely to fraud in the ab initio of entering into

13    the agreement and that a term of the agreement that he contends

14    was violated.

15       What you heard today, you heard him in making the argument

16    that this is an exceptional ground.  He walked you through all

17    the alleged fraud that's committed.  What you did not hear is

18    any argument at all that there was any fraud in connection with

19    the forum-selection clause.  And that is what the law requires.

20    Not just in the Northern District of Illinois which in turn

21    cites the Supreme Court of Alabama cases to that effect.  But

22    in this District as well and we cited for example the Cheney v.

23    IPD case --

24          THE COURT:  Right.

25          MS. MCNAMARA:  -- which squarely holds exactly that

1  rule as does the Billard v. Angrick case out of this District.

2  Which again squarely holds that the alleged fraud has to go to

3  the forum-selection clause, not as to any other terms, not as

4  to commitments made or supposedly misrepresentations in the

5  entering into the agreement.

6      And that is what is lacking here.  The plaintiff has not

7  made any argument to that effect and for that reason alone the

8  clause stands and remember, the clause stands regardless.  If

9  the Court were to find and I don't think it's before the Court

10  now, so I would, I think should be an issue before the Seventh

11  District presumably, but if the Court were to find that the

12  rest of the contract is not enforceable by the terms of the

13  contract, the forum-selection clause still stands and would be

14  fully enforceable.

15          THE COURT:  All right.  Let me ask you a procedural

16  question which is a little bit different.

17          MS. MCNAMARA:  Sure.

18          THE COURT:  You're all arguing like this to be

19  transferred to the Southern District.  Can it be transferred to

20  the Southern District?  Are there other New York resident

21  defendants?

22          MS. MCNAMARA:  Yes, both Showtime and CBS have their

23  principal place of business in New York.

24          THE COURT:  Would it go to Southern District or would

25  there be diversity problems, a tort case?

1        MS. MCNAMARA:  No, I don't think there would be a

2  diversity problem.  I don't think so.  I mean, why if the

3  plaintiff would --

4        THE COURT:  Plaintiff's diverse.

5        MS. MCNAMARA:  Right.

6        THE COURT:  I don't know the other company, all are

7  in California?

8        MS. MCNAMARA:  Mr. Cheney is a California resident --

9  I mean, Mr. Cohen is a California resident and Showtime and CBS

10 their principle place of business are in New York.

11       THE COURT:  Nothing in Alabama?

12       MS. MCNAMARA:  No, there's no procedural problem.

13       THE COURT:  All right.

14       MR. KLAYMAN:  Your Honor, may I have one minute?

15       MS. MCNAMARA:  Your Honor, I would also note just

16 very quickly two small points.  Again, the plaintiff iterated,

17 argued again that the plaintiff had selected D.C. and so D.C.

18 should be his forum.  But the Supreme Court spoke squarely to

19 that point in Atlantic Marine when it says the plaintiff's

20 choice of forum merits no weight.  So that is simply not an

21 issue at all.

22    Then finally, Your Honor, the plaintiff also mentioned

23 that there was no consideration under the contract.  We would

24 argue clearly he selected the non-profit to give the money to.

25 That clearly was his choice, his consideration.

1      But moreover, the fact remains that that argument was

2  never raised in the papers and under the Singh case out of this

3  District, it would have been waived.

4           THE COURT:  All right, thank you.

5           MS. MCNAMARA:  Thank you very much, Your Honor.

6           THE COURT:  Certainly.

7           MR. KLAYMAN:  May I have a minute?

8           THE COURT:  Yes.

9           MR. KLAYMAN:  I certainly thank you Your Honor.

10      The basic concept here is that this contract was entered

11  into by fraud.  It's voidable ad initio, the entire thing goes

12  out.

13           THE COURT:  I understand.

14           MR. KLAYMAN:  We cited the second restatement.  There

15  are D.C. cases which we cited, Your Honor, In Re:  Estate of

16  McKinney, 953 A 2d 336, 342 D.C. 2008 quoting Barrer,

17  B-A-R-R-E-R, versus Women's National Bank, 245 U.S. Appeals,

18  D.C. 349, 354 to 55 1985 wherein it was held, it is well

19  established that misrepresentation of material facts may be a

20  basis for the recision of a contract even where the

21  misrepresentations are made innocently without knowledge of

22  their falsity and without fraudulent intent.

23      So there's the exceptional case here, it was done

24  intentionally, willfully and maliciously, the fraud.  The

25  rationale supporting this rule which has its origins in equity

1  is that as between two innocent parties.  The party making the

2  representation should bear the loss.

3      The defendants, we don't even have the defendants here

4  because they were fraudulently concealed as well making this

5  even a more exceptional case.

6      Stated another way, the rule is based on the view that

7  quote, "no one has made a false statement ought to benefit at

8  the expense of another who has been prejudiced by relying on

9  that statement."  This rule may be employed actively as in a

10  suit at equity year (sic) law for recision and restitution or

11  possibly as a defense to a suit for breach of contract.

12      That's the essence.  There never was a contract here, it

13  is voidable.  That's why this is exceptional.  That's why this

14  is unusual.  That's why the fraud is massive.  That's why the

15  public policy weighs in favor of throwing out the entire

16  contract.  With the entire contract goes the choice of the

17  forum.  To reward them for committing five frauds on top of the

18  other and then bragging about it and then having themselves

19  nominated for Golden Globe giving interviews.  This is how I

20  tried to defraud the Secret Service, look at this.  That can't

21  be permitted in any court of law.

22      We know the age that we live in, Your Honor.  The age that

23  we live in is that no one believes either the entertainment

24  industry or the media anymore.  It's time that they clean their

25  act up.  The way that can be done because they won't do it

1   themselves is for this Court to start the process.

2            THE COURT:  All right.

3            MR. KLAYMAN:  I would like to add one more last

4   thing.  I'd like to give Your Honor a copy of this.  After this

5   whole concerted affair occurred, Ms. Isaac had delivered, I

6   have the return receipt for this as well.  A letter to both CBS

7   and Showtime and we said do not air this.  If you air it, you

8   will be sued for defamation.  They did it anyway because to

9   them money talks and nobody walks.  Doesn't matter who you

10  hurt.  This was very profitable at the expense of my client

11  whose reputation has been destroyed.  I know because I was with

12  him shortly after this in Birmingham and I could see the effect

13  on him and Kayla, his wife, who was also induced to go here.

14  This cannot be permitted, Your Honor, not in a civilized

15  society.  There's no reason why they can't come here and tell a

16  D.C. jury what their losing defenses may be.

17       Thank you.

18            THE COURT:  All right, thank you, Mr. Klayman.  I

19  appreciate the work again.

20       I'm going to issue a ruling at this time.  The case has

21  been pending before us.  It was filed in late 2018, but in any

22  event it's time to dissolve this matter one way or another and

23  move it to the next step for the parties to resolve this.

24       At the beginning I explained the background how this case

25  arose and the argument has further fleshed that out.  This will

1    be a bench opinion of the Court, will be the only opinion I'll

2    issue.

3        On the application defendants' that's plural, motion to

4    transfer the case under 28 U.S.C. 1404 and the case law that

5    applies following Atlantic Marine from the Supreme Court.  The

6    full case is Atlantic Marine Construction Company v. United

7    States District Court for the Western District of Texas,

8    decided 2013.  It's cited at 571 U.S. 49 and it's a unanimous

9    opinion by Justice Alito in reversing the lower court under the

10   forum-selection clause discussion and it's clear where they

11   held the present case both the District Court and the Court of

12   Appeals misunderstood the standard to be applied adjudicating a

13   Section 1404 motion in a case involving a forum-selection

14   clause are therefore reversed the judgment below.

15       They go through the series of case laws as they get to

16   that and they explain that a motion, this is a quote, "to

17   transfer under 1404 (a) calls on the district court to weigh in

18   the balance a number of case-specific factors and that the

19   presence of a forum-selection clause will be a significant

20   factor that figures in centrally the district court calculus

21   citing to an earlier case.

22       In any event, they eventually conclude that the

23   forum-selection clause does not render venue in a court wrong.

24   There is venue here or improper within the meaning of 1406 or

25   Rule 12(b)(3).  The clause may be enforced through a motion

1  transfer under 1404 (a).  Unlike Section 1406(a), the 1404(a)

2  does not condition transfer initial forum selection being

3  wrong.

4      They go on to explain that the 1404(a) is not a suitable

5  mechanism of enforcement forum-selection clause because they

6  agree with Atlantic Marine.  The Court of Appeals failed to

7  provide a sound answer to the problem of how you interpret a

8  forum-selection clause contract according to a non-federal

9  forum should be enforced or not, et cetera.

10     In this case, essentially what that says we have the

11  problem here is that the burden shifts differently with the

12  type of clause that we have here, forum-selection clause from

13  the normal considerations in the transfer on venue basis.

14     So that where the Supreme Court has held the calculus

15  changes when the parties' contract contains a valid

16  forum-selection clause.  In such a case we're advised I have to

17  ordinarily transfer the case to the forum specified in that

18  clause and should deny a transfer motion under Section 1404(a)

19  only under extraordinary circumstances unrelated to the

20  convenience of the parties.  It should be given controlling

21  weight in all but the most exceptional circumstances.  That's

22  another Supreme Court case, Ricoh at 487 U.S. 23 a 1988 case.

23     So now the way I have to look at this is that a non-movant

24  bears the burden of demonstrating that such extraordinary

25  circumstances exist.  So that Mr. Klayman and his client must

1  show the Court why I should not transfer the case to a forum

2  which the parties agree to.

3      So the forum-selection clause is valid.  The plaintiff's

4  choice of forum merits no weight and the Court should not

5  consider arguments about the parties' private interest.

6      The Supreme Court indicates that as I said clearly when

7  you review Atlantic Marine.  So I have to determine first if

8  the forum-selection clause is valid, enforceable and then if

9  so, I've got to determine whether the plaintiff has met the

10 burden of establishing their exceptional public interest

11 factors justify a denial of the transfer.

12     I'm going to conclude in this matter as to the purpose of

13 this motion only the clause is valid, enforceable and that the

14 plaintiff has not shown exceptional public interest factors

15 justify denying the transfer to the Southern District of New

16 York and will order such a transfer.

17     I'm going to make the following reasons and findings to

18 validate that decision.  First, as to the validity of the

19 forum-selection clause have been strongly attacked by the

20 non-movant in this case, the plaintiff, Judge Moore and his

21 wife, that it is brought fraud ab initio through the fraudulent

22 matters as discussed in the argument that obtained this TV show

23 that was shown to the detriment it's claimed of the plaintiff,

24 both plaintiffs.

25     So the forum- selection clause when you read it is number

1  6 totally different than the paragraph 4 that's been presented

2  to me where Mr. Moore changed the contract to his own review,

3  personal review of the contract, taking out behind invasion of

4  privacy such as any allegedly sexual oriented or offensive

5  behavior questioning.  Paragraph 6 is further down the bottom

6  of the page was not touched or marked or any question

7  apparently raised about it.

8      The plaintiffs think that the contract of being void ab

9  initio and therefore there's no basis to enforce it including

10  the forum-selection clause.

11     But as I said, the clause covers any claim in connection

12  with the Sacha Noam Baron production.  It is argued

13  additionally it can't be used against the non signatories to

14  the other defendants in this case to the contract because the

15  contract was between we'll call it YTV and Roy Moore, so that

16  would not be, these other people affected by have the right to

17  complain about the forum and could not move to transfer the

18  forum.

19     It seems to the Court that there are cases in this case in

20  this Court and other Courts that non signatories to the

21  agreement were bound by the forum-selection clause.  The claims

22  are closely related are that non-signatories whether you have

23  interest or derivative from related to the original case would

24  not be prejudiced by this.

25     So it seems to me that Mrs. Moore can't complain about the

1  transfer.  Additionally, the non-signatory defendants have two

2  reasons why they can rely upon the forum-selection clause as

3  well.

4      First, the agreement you read it talks about the producer

5  as, I'll try to pronounce it, Yerushalayim TV.  I'm calling it

6  YTV, that's the size, licensees, parents, subsidiaries and

7  affiliates, we have affidavits here that are un rebutted

8  despite the opposition claiming they shouldn't believe them.

9  And the article from a magazine as the opposition to believe in

10  these things.

11      Defendant submitted a declaration from the executive

12  producer of the program which states this YTV is only owned by

13  defendant Cohen.  It's only owned through the production

14  company which owns the program and licenses it that's a

15  licensee then to defendant Showtime and CBS.  So each of the

16  defendants and this included with the definition of producer in

17  the signatory consent agreement and there you may be

18  respectfully a parent or affiliate and licensee.  I think that

19  gives them the basis to move as well for the transfer under the

20  forum-selection clause.

21      The defendants argue alternatively they're intended to be

22  third party beneficiaries.  There are cases showing that it is

23  a recognized status and there have been cited by defendants

24  which we didn't discuss here, but there are cases establishing

25  that.  But I think the first principle that they're within the

1    line of licensees and affiliates is established by the evidence

2    and the affidavits before us.

3        So I think the defendants have the ability to enforce the

4    forum-selection clause.  The clause does apply to claims,

5    that's what it says, any claims have to be litigated in New

6    York brought by the plaintiffs, both plaintiffs in this case.

7        The plaintiffs' proposed sur-reply does not affect that

8    argument. They try to argue that the Shulman affidavit is

9    unsupported by real or actual evidence and they aren't intended

10   to be third party beneficiaries.  I don't see how that has any

11   bearing on a motion to transfer just challenging it by a news

12   article that somehow changes the contract.

13       So then I have to see whether or not the selection clause

14   is enforceable.  I think it is enforceable at this time because

15   of the following factors.  Despite the argument of the

16   plaintiff.  First of all, we look upon it if you look at the

17   law in D.C. that forum-selection clause is presumptively valid

18   and enforceable unless the party opposes the enforcement meets

19   a heavy burden showing their clause is a product of fraud or

20   that it's enforcement would contravene small, a strong public

21   policy of the forum in which suit is brought.  I believe that

22   was Judge Sullivan of our Court, D&S Consulting, 322nd F. Supp

23   at 49, 2018 case recently.  He's quoting from a D.C. Circuit

24   case of 2000, Marra, M-A-R-R-A, 216 F.3d at 124.

25       So unless it's tainted by fraud itself, talking about the

1    actual clause, not the entire contract or enforcement would

2    deprive his day in court.  It would not or their day in court

3    or any remedy or contravene a strong policy, public policy of

4    the forum state.

5         Again, going back I cited the Marra case, M-A-R-R-A, that

6    was originally tried 59 F. Supp 2d, 69 by Judge Urbina, but

7    then appealed to the cite I've already given.  So I don't see

8    any existence of those factors that would cause a difference

9    here.

10        Plaintiffs have argued forcibly that the entire agreement

11   was procured by fraud.  So they've argued using standard fraud

12   cases from D.C. and other places and restatement of contract

13   that the claim of fraud and the inducement is insufficient

14   whether or not it's insufficient to invalidate a

15   forum-selection clause.  But the case law is replete with

16   decisions that say it's the inclusion of the specific clause

17   forum-selection itself that must have been induced by fraud.

18   Not the entire contract even though it's part of the contract,

19   but more specifically there has to be claims of this particular

20   provision and we don't have that.  Nothing addresses in the

21   argument as to this particular provision as opposed to the

22   overall challenge on the contract.

23        You actually would have to have me find that fraud was so

24   overreaching in that it did affect the forum-selection clause

25   in order to invalidate it and I can't see that as the basis

1   that's before me in this argument.

2       They allege that Judge Moore was taken to D.C. to get this

3   award for his support of Israel, a totally fraudulent basis so

4   that he could be fraudulently portrayed as a pedophile on

5   national television.  And a television show was being produced

6   for YTV and not Cohen, Showtime and CBS basically that's a

7   fraud.  But that doesn't affect the forum-selection clause in

8   the agreement.

9       There's nothing that Judge Moore has alleged in any

10  affidavit otherwise that he was fraudulently induced to sign

11  the agreement as to the forum-selection clause itself.  There

12  was some claim that there's only one case in Alabama that says

13  that that was the Streit case Twentieth Century Fox which was

14  the same contract with some of the same defendants in this case

15  again about transferring it from Alabama to the Southern

16  District of New York and that that's an aberrant decision.

17  There's a series of D.C. cases we have which say actually the

18  same thing.  So that I don't think we can say that this is an

19  aberrant decision.

20      One for instance is the D&S Consulting referred to earlier

21  that is against the Kingdom of Saudi Arabia by Judge Sullivan.

22  One quote he has in there is forum-selection clauses are

23  presumably valid enforceable unless the party opposing

24  enforcement meets a heavy burden of proof, showing the clause,

25  the clause is the product of fraud or it's enforcement would

1   contravene a strong public policy in the forum which suit is

2   brought.

3       I'm not saying this Court endorses any kind of fraud, but

4   I don't see how the fact before me constitute that I can say

5   this particular forum-selection clause was fraudulent.

6       The general allegations about fraud and the inducement

7   that should set aside this contract is available to the

8   plaintiffs to litigate in the Southern District in New York.

9   There's nothing stopping them from raising that.  If they're

10  successful in that that's fine, but there's no reason it has to

11  be tried here that I could find.

12      Now the other part of it would be whether or not the

13  analysis I determined whether there's extraordinary

14  circumstance to justify the denial of the motion to transfer

15  the one that's the public interest.  We already discussed

16  whether or not it is against the public policy in D.C. beyond

17  the claim of fraud.  I don't see that.  So arguing about a

18  local D.C. jury, I don't see that there's any kind of a

19  relative suggestion to the Court that makes it better to try it

20  here than there.  In fact, if you look up the difference in

21  media time in filing civil cases and disposing of them.  In

22  last year the District of Columbia was six months and the

23  Southern District of New York was 6.4 months.  There's really

24  no difference in that factor.

25      The choice of law agreement in the contract talks about

1  the substantive law City of New York will agree which means it

2  probably should be tried in New York then because that's the

3  law that will apply unless the parties are successful, the

4  plaintiff is successful entirely in turning down the entire

5  contract because of fraud, but that is going to be for the

6  local court to try that and not me.

7       The localist deciding it here because of the alleged

8  tortious conduct occurred in D.C.  That's the only connection

9  with D.C.  No one resides here.  There's some argument maybe

10  the witnesses are here.  Well, the only witnesses are those who

11  were involved wherever the taping was done, where that was done

12  in the hotel room.  The witnesses say that they were in the

13  hotel from the hotel I mean that's pretty evident.

14       Judge Moore and his wife reside in Alabama.  Cohen resides

15  in California.  Showtime and CBS are apparently headquartered

16  in New York where their employees, some of the employees would

17  be.  I don't see how that changes the equation that I have to

18  use to determine whether it's appropriate here.

19       I don't see how the, even the supplemental material that

20  they wish to file about the Salon article that defendants they

21  argue are inextricably tied to TV and to Washington, D.C. with

22  this TV show.  I don't think there's any bearing whether or not

23  the forum-selection clause that Judge Moore had signed

24  originally has to be transferred or not.  Certainly venue would

25  be appropriate here.

1       I don't see an extraordinary circumstance that justify the

2  Court's refusing to enforce the forum-selection clause despite

3  the claim that the contract as an overall was fraudulently

4  induced.  It would have to be as to this clause individually.

5       So under the case law it's very, very clearly established.

6  I see no alternative except to transfer the case to the

7  Southern District of New York and grant the motion of all of

8  the defendants.  That'll be the order of the Court.  I'll

9  submit an order to that effect.

10       Thank you all for coming in.  I appreciate it.

11       Mr. Klayman, thank you for the argument.  I appreciate it.

12  That's the decision of the Court.

13       (Proceedings adjourned at 11:07 a.m.)

14                                -o0o-

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

1

2     I certify that the foregoing is a true and correct

3  transcript, to the best of my ability, of the above pages, of

4  the stenographic notes provided to me by the United States

5  District Court, of the proceedings taken on the date and time

6  previously stated in the above matter.

7     I further certify that I am neither counsel for, related

8  to, nor employed by any of the parties to the action in which

9  this hearing was taken, and further that I am not financially

10  nor otherwise interested in the outcome of the action.

11

12  /s/Crystal M. Pilgrim, RPR, FCRR     Date:  May 8, 2019

13

14

15

16

17

18

19

20

21

22

23

24

25