**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROY STEWART MOORE, et al

                    Plaintiffs,

v.

SACHA NOAM BARON COHEN, et al

                  Defendants.

**Index No. 19 Civ. 4977 (ALC)**

**PLAINTIFFS' COUNTER RULE 56.1 STATEMENT AND ADDITIONAL STATEMENT**
**OF UNDISPUTED MATERIAL FACTS**

      Plaintiffs Roy Moore ("Judge Moore") and Kayla Moore ("Ms. Moore") (collectively "Plaintiffs") hereby submit this statement pursuant to Local Rule 56.1 of the U.S. District Court for the Southern District of New York in opposition to Defendants' Motion for Summary Judgment.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT**

1.      Plaintiff Roy Moore ("Judge Moore") is a former Chief Justice of the Supreme Court of Alabama.  Compl. ¶ 9

**RESPONSE:** Admit

2.      Judge Moore is the Founder and President Emeritus of the Foundation for Moral Law.  *See* http://morallaw.org/about/; Compl. at 1 (listing Judge Moore in caption as "c/o Foundation for Moral Law, P.O. Box 4086, Birmingham, AL, 36103).

**RESPONSE:** Admit

3.      In 2017, Plaintiff Judge Moore ran for the U.S. Senate for the State of Alabama in a special election to replace Senator Jeff Sessions, who had been appointed Attorney General. Compl. ¶ 9; Declaration of Elizabeth A. McNamara, sworn to February 8, 2021 ("McNamara Decl.") ¶ 5 & Ex. 3 (Alexander Burns & Jonathan Martin, *Once a Long Shot, Democrat Doug Jones Wins Alabama Senate Race*, N.Y. Times (Dec. 12, 2017)).

**RESPONSE:** Admit

4.      During Judge Moore's U.S. Senate campaign, he faced mounting and widely reported claims that he had inappropriate sexual encounters with young women—including one who was underage at the time—in the 1970s, while he was in his 30s. McNamara Decl. ¶ 3 & Ex. 1 (Stephanie McCrummen, *et al.*, *Woman says Roy Moore initiated sexual encounter when she was 14, he was 32*, Wash. Post (Nov. 9, 2017)); McNamara Decl. ¶ 4 & Ex. 2 (Stephanie McCrummen, *Woman shares new evidence of relationship with Roy Moore when she was 17*, Wash. Post (Dec. 4, 2017).

**RESPONSE**: Deny. These false accusations were never corroborated by any reputable source.

5.      On December 12, 2017, Judge Moore lost the U.S. Senate election to Democratic candidate Doug Jones. McNamara Decl. ¶ 5 & Ex. 3 (Alexander Burns & Jonathan Martin, *Once a Long Shot, Democrat Doug Jones Wins Alabama Senate Race*, N.Y. Times (Dec. 12, 2017)).

**RESPONSE**: Admit

6.      Many analysts attributed Judge Moore's election loss to Doug Jones to the allegations of sexual misconduct made against Judge Moore. McNamara Decl. ¶ 5 & Ex. 3 (Alexander Burns & Jonathan Martin, *Once a Long Shot, Democrat Doug Jones Wins Alabama Senate Race*, N.Y. Times (Dec. 12, 2017) (describing Judge Moore as "scandal-scarred" "after a brutal campaign marked by accusations of sexual abuse and child molestation")); McNamara Decl. ¶ 6 & Ex. 4 (Jonathan Allen, *Alabama's Women Wrote the Verdict on Roy Moore*, NBC News (Dec. 13, 2017)).

**RESPONSE:** Deny. These false accusations were never corroborated by any reputable source. Plaintiffs are unaware if "many" analysts attributed Judge Moore's election loss to Doug Jones to the allegations of sexual misconduct made against Judge Moore.

7.      After his election loss, Plaintiffs filed a libel suit against several of the women who had accused Judge Moore of misconduct. McNamara Decl. ¶ 7 & Ex. 5 (Complaint in *Moore v. Hagedorn, et al.* (Ala. Cir. Ct. Etowah Cty.)).

**RESPONSE:** Admit.

8.      Plaintiff Kayla Moore is Judge Moore's wife.  Compl. ¶ 4.

**RESPONSE:** Admit

9.     Kayla Moore is the President of the Foundation for Moral Law. *See* http://morallaw.org/our-staff/kmoore/; Compl. at 1 (listing Kayla Moore in caption as "c/o Foundation for Moral Law, P.O. Box 4086, Birmingham, AL, 36103).

**RESPONSE:** Admit

10.     Kayla Moore unsuccessfully ran for state Republican Executive Committee in June 2018. McNamara Decl. ¶ 8 & Ex. 6 (Connor Sheets, *Roy Moore's wife, Kayla Moore, loses bid for state Republican Executive Committee*, AL.com (June 6, 2018)).

**RESPONSE**: Admit

11.     Defendant Cohen is a comedian and political satirist, who has created numerous projects in which he "portray[s] disguised fictional characters" who interact with "real" people, including the television series *Da Ali G Show*, and the films *Borat* and *Brüno*. Compl. ¶ 10.

**RESPONSE**: Deny as Defendant Cohen is simply a fraudster.

12.     Defendant SNI is a wholly owned subsidiary of ViacomCBS. Declaration of Brendan Countee, sworn to February 8, 2021 ("Countee Decl.") ¶ 3.

**RESPONSE**: Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

13.     Four By Two Films, Inc. is a production company solely owned by Cohen. Declaration of Todd Schulman, sworn to February 7, 2021 ("Schulman Decl.") ¶ 2.

**RESPONSE**: Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

14.     Yerushalayim Television, LLC ("YTV") was formed on October 6, 2017 under Wyoming law.  McNamara Decl. ¶ 12 & Ex. 10 (YTV Articles of Organization).

**RESPONSE**: Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

15.     The sole member of YTV is Greenpark Television, LLC ("Greenpark"). McNamara Decl. ¶ 13 & Ex. 11 (Registered Agent Services Agreement for YTV, listing Greenpark as the sole member of YTV); McNamara Decl. ¶ 11 & Ex. 9 (Excerpts from Transcript of Deposition of Jenifer Wallis, January 14, 2021 ("Wallis Tr.")) at 21:24-22:5; McNamara Decl. ¶ 10 & Ex. 8 (Excerpts from Transcript of Deposition of Todd Schulman, January 14, 2021 ("Schulman Tr.")) at 33:20-22.

**RESPONSE**: Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

16.     YTV was an active LLC under Wyoming law on October 1, 2018. McNamara Decl. ¶ 14 & Ex. 12 (YTV 2018 Annual Report).

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

17.     YTV was administratively dissolved in 2019. McNamara Decl. ¶ 15 & Ex. 13; Wallis Tr. at 49:9-13.

**RESPONSE**: Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the

"Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedly sexual-oriented or offensive behavior or questioning.

18.     Greenpark was formed on May 23, 2017 under California law. McNamara Decl. ¶ 16 & Ex. 14 (Greenpark Articles of Organization).

**RESPONSE**: Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedly sexual-oriented or offensive behavior or questioning.

19.     The sole member of Greenpark is La Quinta Entertainment, LLC ("La Quinta"). McNamara Decl. ¶ 17 & Ex. 15 (Greenpark June 5, 2017 Statement of Information, naming La Quinta in the section setting forth the Manager(s) and Member(s) of Greenpark); McNamara Decl. ¶ 18 & Ex. 16 (notification from United States Internal Revenue Service that Greenpark had been assigned an Employer Identification Number for tax purposes, addressed to "Greenpark Television LLC c/o La Quinta Entertainment LLC Sole."); Wallis Tr. at 22:8-9; Schulman Tr. at 33:23-25.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the

"Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

20.     La Quinta was formed on March 30, 2017 under California law.  McNamara Decl. ¶ 19 & Ex. 17 (La Quinta Articles of Organization).

**RESPONSE**: Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

21.     The sole member of La Quinta is Please You Can Touch, LLC ("PYCT"). McNamara Decl. ¶ 21 & Ex. 19 (La Quinta Operating Agreement, listing PYCT as the sole member of La Quinta); McNamara Decl. ¶ 20 & Ex. 18 (La Quinta April 17, 2017 Statement of Information, naming PYCT in the section setting forth the Manager(s) and Member(s) of La Quinta); Wallis Tr. at 22:11-12; Schulman Tr. at 34:1-3.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

22.     PYCT was formed on August 11, 2009 under California law.  McNamara Decl. ¶ 22 & Ex. 20 (PYCT Articles of Organization).

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.        23.

The sole member of PYCT is Cohen. McNamara Decl. ¶ 23 & Ex. 21 (PYCT Operating Agreement, naming Cohen as the initial member of PYCT); McNamara Decl. ¶ 24 & Ex. 22 (PYCT January 13, 2019 Statement of Information, naming Cohen in the section setting forth the Manager(s) and Member(s) of PYCT); McNamara Decl. ¶ 25 & Ex. 23 (PYCT May 1, 2019 Statement of Information, naming Cohen in the section setting forth the Manager(s) and Member(s) of PYCT); McNamara Decl. ¶ 9 & Ex. 7 (Excerpts from Transcript of Deposition of Sacha Baron Cohen, January 13, 2021 ("Cohen Tr.")) at 30:16-24; Wallis Tr. at 22:12.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

24.     Cohen is the ultimate sole owner of YTV, Greenpark, La Quinta, and PYCT, and, as such, is the parent of YTV.  Cohen Tr. at 30:13-31:5.

**RESPONSE**: Disputed with explanation. Pursuant to F.R.C.P 56(d), Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

25.     *Who Is America?* is a comedy series that employs fictional characters from across the political spectrum (all played by Cohen) who conduct interviews with real individuals to expose and comment on the disparate political views in the United States.  Schulman Decl. ¶ 3.

**RESPONSE:** Deny as irrelevant.

26.     *Who Is America?* was created, co-produced, and co-written by its star, Defendant Cohen.  Schulman Decl. ¶¶ 3-4.

**RESPONSE:** Admit

27.     Defendant SNI aired and distributed the Program through the cable network it owns and operates, SHOWTIME.  Countee Decl. ¶ 7.

**RESPONSE:** Disputed with explanation. Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is

void for fraud and Judge Moore expressly declined to waive claims involving any allegedly sexual-oriented or offensive behavior or questioning.

28.     The program was licensed to SNI by La Quinta and PYCT, two parent companies of YTV.  Countee Decl. ¶ 4; McNamara Decl. ¶¶ 12-25 & Exs. 10-23.

**RESPONSE:** Disputed with explanation. Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedly sexual-oriented or offensive behavior or questioning.

29.     The first episode of the Program ("Episode 1") aired on SHOWTIME on July 15, 2018.  Countee Decl. ¶ 10.

**RESPONSE:** Deny as irrelevant.

30.     In Episode 1, Cohen, playing Billy Wayne Ruddick Jr., PhD, conducts an interview of Bernie Sanders, in which Ruddick explains to Sanders that his solution to economic disparity in America is to have the entire population become part of the "1 percent." CounteeDecl. ¶ 13 & Ex. 2 (Episode 1, DEF0000413.mp4).

**RESPONSE:** Deny as irrelevant.

31.     In Episode 1, Cohen, playing Erran Morad, an Israeli "anti-terrorism" expert, promotes a "Kinderguardians" program to various advocates, lobbyists, and politicians. CounteeDecl. ¶ 13 & Ex. 2 (Episode 1 DEF0000413.mp4).

**RESPONSE:** Deny as irrelevant.

32.     The Kinderguardians program promoted by Morad consists of training children between the ages of three and sixteen to use firearms as a defense against school shootings. Countee Decl. ¶ 13 & Ex. 2 (Episode 1, DEF0000413.mp4).

**RESPONSE**: Deny as irrelevant.

33.     The Kinderguardians segment of Episode 1 includes a mock educational video set against a colorful cartoon background, featuring gun rights activist Philip Van Cleave, who instructs the audience in the use of firearms using children's songs and guns accessorized with stuffed animals bearing names like "Puppy Pistol," "Gunny Rabbit" and "Uzicorn." Countee Decl. ¶ 13 & Ex. 2 (Episode 1, DEF0000413.mp4).

**RESPONSE**: Deny as irrelevant.

34.     In Episode 1, former Congressman Joe Walsh, then-Congressmen Dana Rohrbacher and Joe Wilson, and others express their support for the Kinderguardians program. Countee Decl. ¶ 13 & Ex. 2 (Episode 1, DEF0000413.mp4).

**RESPONSE:** Deny as irrelevant.

35.     The second episode of the Program ("Episode 2") was first exhibited on SHOWTIME on July 22, 2018.  Countee Decl. ¶ 11.

**RESPONSE:** Deny as irrelevant.

36.     In Episode 2, Cohen, playing Erran Morad, teaches a former Georgia state politician to combat ISIS, instructing him to detect and repel terrorists by yelling epithets, wearing a burqa, and attempting to touch them with his bare buttocks. Countee Decl. ¶ 13 & Ex.2 (Episode 2, DEF0000414.mp4).

**RESPONSE:** Deny as irrelevant.

37.     In Episode 2, Cohen, playing Erran Morad, conducts an interview with former Vice President Dick Cheney, over the course of which Morad makes a number of double entendres based on Vice President Cheney's first name. Countee Decl. ¶ 13 & Ex. 2 (Episode 2, DEF0000414.mp4).

**RESPONSE:** Deny as irrelevant.

38.     During Morad's interview with Dick Cheney, after the conversation turns to the subject of waterboarding, Morad notes that he has waterboarded his own wife and asks Vice President Cheney to sign his "waterboarding kit," which he does. Countee Decl. ¶ 13 & Ex. 2 (Episode 2, DEF0000414.mp4).

**RESPONSE:** Deny as irrelevant.

39.     On February 13, 2018, Plaintiffs flew from Montgomery, Alabama to Washington, D.C.  Schulman Decl. ¶ 10.

**RESPONSE:** Admit

40.     The Moores' flight from Montgomery to Washington on February 13, 2018 was paid for by a representative of La Quinta.  Schulman Decl. ¶¶ 10, 15 & Ex. 1.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs do not have adequate knowledge who expended these funds.

41.     After Plaintiffs' flight from Montgomery, Alabama to Washington, D.C., a car service took Plaintiffs from the airport in Washington, D.C. to the Mandarin Oriental Hotel. Schulman Decl. ¶ 11.

**RESPONSE:** Admit.

42.     Plaintiffs' car service from the airport in Washington, D.C. to the Mandarin

Oriental Hotel on February 13, 2018 was paid for by a representative of La Quinta. Schulman Decl. ¶¶ 11, 15 & Ex. 2.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs do not have adequate knowledge who expended these funds.

43.     From February 13, 2018 to February 14, 2018, Plaintiffs stayed at the Mandarin Oriental hotel in Washington, D.C. Schulman Decl. ¶ 12.

**RESPONSE:** Admit.

44.     Plaintiffs' room at the Mandarin Oriental hotel from February 13, 2018 to February 14, 2018 was paid for by a representative of La Quinta. Schulman Decl. ¶¶ 12, 15 & Ex. 3.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs do not have adequate knowledge who expended these funds.

45.     On February 14, 2018, a car service took Plaintiffs from the Mandarin Oriental Hotel in Washington, D.C. to the location of an interview that Judge Moore conducted with Cohen, and then from the location of interview to the airport in Washington, D.C. Schulman Decl. ¶ 13.

**RESPONSE:** Admit

46.     Plaintiffs' car service on February 14, 2018 from the Mandarin Oriental Hotel to the location of the interview, and from the location of the interview to the airport in Washington, D.C., was paid for by a representative of La Quinta.  Schulman Decl. ¶¶ 13, 15 & Ex. 4.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs do not

have adequate knowledge who expended these funds.

47.     On February 14, 2018, Plaintiffs flew from Washington, D.C. to Montgomery, Alabama.  Schulman Decl. ¶ 14.

**RESPONSE:** Admit.

48.     Plaintiffs' flight from Washington, D.C. to Montgomery, Alabama was paid for by a representative of La Quinta.  Schulman Decl. ¶¶ 14, 15 & Ex. 1.

**RESPONSE:** Disputed with explanation.  ursuant to F.R.C.P. 56(d), Plaintiffs do not have adequate knowledge who expended these funds..

49.     The third episode of the Program ("Episode 3") was first exhibited on SHOWTIME on July 29, 2018. Countee Decl. ¶ 12.

**RESPONSE:** Admit.

50.     Episode 3 contains an interview Cohen, playing Erran Morad, conducted of Judge Moore.  Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE**: Admit

51.     The interview of Judge Moore by Morad took place at a hotel in Washington, D.C. on February 14, 2018.  Schulman Decl. ¶ 9.

**RESPONSE**: Admit

52.     The interview of Judge Moore by Morad was the first segment in the 25-minute Episode 3.  Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** The segment with Judge Moore speaks for itself.

53.     After an introduction from "Morad," the segment shows a montage of news anchors discussing the rising tide of accusations of sexual misconduct against Judge Moore,

with a succession of news anchors saying "Four women…," "A fifth woman…," "A total of nine women have now come forward," with one clip showing onscreen text from a *Washington Post* article stating "Woman says Roy Moore initiated sexual encounter when she was 14, he was 32."Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** Deny as irrelevant. The segment with Judge Moore speaks for itself.

54.     The segment then cuts to President Trump at a rally telling his audience "Get out and vote for Roy Moore. Do it." Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** Deny as irrelevant. The segment with Judge Moore speaks for itself.

55.     After first discussing with Judge Moore why the State of Alabama is so closely connected to Israel (during which Judge Moore states that "Alabama has always been a state that valued freedom, valued liberty"), Morad brings up the Israeli military's use of technology to fight terrorist attacks.  Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** The segment with Judge Moore speaks for itself.

56.     Morad describes a device which he claims can detect the location of tunnels used to infiltrate Israel using "seismic waves." Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** The segment with Judge Moore speaks for itself.

57.     Morad explains that the technology is also able to "identify other abnormalities," including "sex offenders and particularly pedophiles," who secrete a certain "enzyme" at "three times the level of non-perverts."  Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** The segment with Judge Moore speaks for itself.

58.     Morad then holds up a black plastic wand that looks like an ordinary metal detector that would be used for security checks at airports and courthouses. Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE**: The segment with Judge Moore speaks for itself.

59.     Morad waves the wand in front of himself and Judge Moore, noting that "because neither of us are sex offenders, then it make absolutely nothing [*sic*]." Countee Decl. ¶ 13 & Ex.2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** The segment with Judge Moore speaks for itself.

60.     To Morad's apparent surprise, as he waves the wand in front of Judge Moore, it emits a beep.  Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** Deny as this was not to Morad's surprise. Defendant Cohen knew what he was doing.

61.     Morad insists the device "must be faulty," smacks it against his hand, and asks if Judge Moore may have lent the jacket he was wearing to someone else. Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** The segment with Judge Moore speaks for itself.

62.     Judge Moore states that he has "been married for 33 – and never had an accusation of such things."  Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** The segment with Judge Moore speaks for itself.

63.     Judge Moore then cuts off the interview and leaves, as Morad insists that the device is "not saying that you are a pedophile, of course not" and that he is "not saying you are

asex offender at all."  Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** The segment with Judge Moore speaks for itself.

64.    In Episode 3, Cohen, playing Dr. Nira Cain-N'Degeocello, facilitates a "debate" between a Republican state legislator and rapper named "Bone Crusher" and engages in a rap battle on the streets of Atlanta. Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** Deny as irrelevant.

65.    In Episode 3, Cohen, playing Erran Morad, teaches three would-be vigilantes how to lure and trap illegal immigrants by hosting a fake Quinceañera celebration, which involves one of the men dressing up as a teenage girl (complete with a ball gown and tiara), before the plan is foiled by the arrival of the police. Countee Decl. ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4).

**RESPONSE:** Deny as irrelevant.

66.    Prior to the taping of his interview with Cohen on February 14, 2018, Judge Moore signed a Standard Consent Agreement ("SCA") with "Yerushalayim TV (including its assigns, licensees, parents, subsidiaries, and affiliates)," which are collectively defined as the "Producer" in the agreement. Schulman Decl. ¶ 16 & Ex. 5.

**RESPONSE:** Deny as this Consent Agreement was modified in writing by all parties

67.    The SCA is signed by "Roy S. Moore." Schulman Decl. ¶ 16 & Ex. 5.

**RESPONSE:** Admit

68.    The SCA is dated "2/14/2018."  Schulman Decl. ¶ 16 & Ex. 5

**RESPONSE:** Admit

69.    Mrs. Moore was present when Judge Moore signed the SCA.  Schulman Decl. ¶

18.

**RESPONSE:** Admit

70.     The preamble to the SCA states: "This is an agreement between Yerushalayim TV (including its assigns, licensees, parents, subsidiaries, and affiliates) (collectively, the "Producer") and the undersigned participant (the "Participant"). In exchange for the Producer making a $200 donation to a charity chosen by the Participant and allowing an opportunity for the Participant to appear in a television series, the Participant agrees as follows." Schulman Decl. ¶ 16 & Ex. 5.

**RESPONSE:** Deny as the document speaks for itself.

71.     Cohen is a producer of the Program, Schulman Decl. ¶¶ 3-4, and a parent of YTV.Cohen Tr. at 30:13-31:5.

**RESPONSE**: Disputed with explanation. Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedlysexual-oriented or offensive behavior or questioning.

72.     SNI is a licensee of YTV through its parents, La Quinta and PYCT. Countee Decl. ¶ 4; McNamara Decl. ¶¶ 12-25 & Exs. 10-23.

**RESPONSE:** Disputed with explanation. Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and

practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedly sexual-oriented or offensive behavior or questioning.

73.     ViacomCBS is the parent of SNI.  Countee Decl. ¶ 3.

**RESPONSE:** Disputed with explanation. Plaintiffs do not have adequate knowledge of the actual of the corporate entities used to defraud Judge Moore, as they were only allowed extremely limited discovery into this issue. Defendants have shown a pattern and practice of fraud and dishonesty, and cannot be taken at their word. This is also irrelevant, as this matter does not reach the question of whether Defendants can enforce the "Consent Agreement," as it is void for fraud and Judge Moore expressly declined to waive claims involving any allegedly sexual-oriented or offensive behavior or questioning.

74.     Beneath the preamble to the SCA the text "Foundation For Moral Law" is written in ink.  Schulman Decl. ¶ 16 & Ex. 5.

**RESPONSE:** Deny as the document speaks for itself.

75.     Paragraph 4 of the SCA states:

The Participant specifically, but without limitation, waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associated with the Program, which are related to the Program or its production, or this agreement, including, but not limited to, claims involving assertions of (a) failure to adequately compensate Participant, (b) failure to use the footage of Participant in the Program, (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the Participant's name or likeness or image), (d) damages caused by "acts of God" (such as, but not limited to, injuries from natural disasters), (e) damages caused by acts of terrorism or war, (f) intrusion or invasion of privacy (such as any allegedly sexual-oriented or offensive behavior or questioning), (g) false light (such as any allegedly false or misleading portrayal of the Participant), (h) infliction of emotional distress (whether allegedly intentional or negligent), (i) trespass (to property or person), (j) breach of any

alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, (l) copyright or trademark infringement, (m) defamation (such as any allegedly false statements made in the Program), (n) violations of Section 43(a) of the Lanham Act (such as allegedly false or misleading statements or suggestions about the Participant in relation to the Program or the Program in relation to the Participant), (o) prima facie tort (such as alleged intentional harm to the Participant), (p) fraud (such as any alleged deception about the Program or this consent agreement), (q) breach of alleged moral rights, or (r) tortious or wrongful interference with any contracts or business of the Participant."

Schulman Decl. ¶ 16 & Ex. 5 § 4.

**RESPONSE:** Deny as the document speaks for itself.

76.     The following parenthetical language of Paragraph 4 of the SCA is struck through, with the initials "RSM" handwritten alongside in the margin: "(such as any allegedly sexual-oriented or offensive behavior or questioning)."  Schulman Decl. ¶ 16 & Ex. 5 § 4.

**RESPONSE:** Admit

77.     Paragraph 5 of the SCA states:

This is the entire agreement between the Participant and the Producer or anyone else in relation to the Program, and the Participant acknowledges that in entering into it, the Participant is not relying upon any promises or statements made by anyone about the nature of the Program or the identity, behavior, or qualifications of any other Participants, cast members, or other persons involved in the Program. Participant is signing this agreement with no expectations or understandings concerning the conduct, offensive or otherwise, of anyone involved in this Program."

**RESPONSE:** Deny as the document speaks for itself.

78.     Paragraph 6 of the SCA state:

Although the Participant agrees not to bring any claim in connection with the Program or its production, if any claim nevertheless is made, the Participant agrees that any such claim must be brought before, and adjudicated by, only a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York. This paragraph is intended by the parties to stand on its own, and it is intended to be valid and enforceable, even if a court finds that other paragraphs are not valid or enforceable.

**RESPONSE:** Deny as the document speaks for itself.

79.     On February 20, 2018, an employee of La Quinta made a donation of $200 to the Foundation for Moral Law. Schulman Decl. ¶¶ 19-20 & Ex. 7.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs do not have adequate knowledge who expended these funds.

80.     Joe Walsh, Dana Rohrbacher, Joe Wilson and Dick Cheney signed agreements with YTV prior to their participation in *Who Is America?*. Schulman Decl. ¶ 17 & Ex. 6.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have no actual knowledge of any agreements signed by Joe Walsh, Dana Rohrbacher, Joe Wilson, and Dick Cheney.

81.     With the exception of the strikethrough and the information regarding the charitable donation written in ink, the SCA signed by Judge Moore is identical to the agreements signed by Walsh, Rohrbacher, Wilson, and Cheney with YTV. Schulman Decl. ¶¶ 16, 17 & Exs. 5, 6.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have no actual knowledge of any agreements signed by Joe Walsh, Dana Rohrbacher, Joe Wilson, and Dick Cheney, but Judge Moore's "Consent Agreement" expressly forbade "any allegedly sexual-oriented or offensive behavior or questioning." Moore Dec. ¶X

82.     The First Amended Complaint in *Martin v. Mazer et al.*, No. 08-cv-1828 (S.D.N.Y.) (the "*Martin* Case"), alleged that the producers of *Borat*, "through fraud and deceit, Defendants hijacked [the plaintiff's] name, image, likeness and goodwill and used them in an R-rated blockbuster movie without her permission." McNamara Decl. ¶ 26 & Ex. 24 ¶ 2.

**RESPONSE:** Deny as irrelevant.

83.     The First Amended Complaint in *Streit v. Twentieth Century Fox Film Corp.*, No. 08-cv-1571 (S.D.N.Y.) (the "*Streit* Case"), alleged that the producers of *Borat* "cast[] Plaintiffs as racially intolerant." McNamara Decl. ¶ 27 & Ex. 25 ¶ 35.

**RESPONSE:** Deny as irrelevant.

84.     The plaintiff in *Psenicska v. Twentieth Century Fox Film Corp.*, No. 07-cv-10972 (S.D.N.Y.) (the "*Psenicska* Case"), entered into a "standard consent agreement" with "Springland Films" in connection with his appearance in *Borat*, which waived all claims against "anyone associated with the Film," including any claims for "fraud (such as any alleged deception or surprise about the Film or this consent agreement)." McNamara Decl. ¶ 28.a & Ex. 26 § 4.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have no knowledge of the actual "agreements" entered into by the Plaintiffs in the *Psenicska* Case.

85.     The plaintiff in the *Psenicska* Case entered into a "standard consent agreement" with "Springland Films" in connection with his appearance in *Borat*, which stated that "the Participant acknowledges that in entering into [the agreement], the Participant is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film. McNamara Decl. ¶ 28.a & Ex. 26 § 5.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have no knowledge of the actual "agreements" entered into by the Plaintiffs in the *Psenicska* Case.

86.     The plaintiffs in the *Streit* Case entered into a "standard consent agreement" with a "Springland Films" in connection with their appearance in *Borat*, which waived all claims against "anyone associated with the Film," including any claims for "fraud (such as any alleged deception or surprise about the Film or this consent agreement)." McNamara Decl. ¶ 28.b & Ex.

27 § 4.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have no knowledge of the actual "agreements" entered into by the Plaintiffs in the *Streit* Case.

87.     The plaintiffs in the *Streit* Case entered into a "standard consent agreement" with a "Springland Films" in connection with their appearance in *Borat*, which stated that "the Participant acknowledges that in entering into [the agreement], the Participant is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film. McNamara Decl. ¶ 28.b & Ex. 27 § 5.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have no knowledge of the actual "agreements" entered into by the Plaintiffs in the *Streit* Case.

88.     The plaintiff in the *Martin* Case entered into a "standard consent agreement" with "Springland Films" in connection with her appearance in *Borat*, which waived all claims against "anyone associated with the Film," including any claims for "fraud (such as any alleged deception or surprise about the Film or this consent agreement)." McNamara Decl. ¶ 28.c & Ex. 28 § 4.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have no knowledge of the actual "agreements" entered into by the Plaintiffs in the *Martin* Case.

89.     The plaintiff in the *Martin* Case entered into a "standard consent agreement" with "Springland Films" in connection with her appearance in *Borat*, which stated that "the Participant acknowledges that in entering into [the agreement], the Participant is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film.  McNamara Decl. ¶ 28.c & Ex. 28 § 5.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have no

knowledge of the actual "agreements" entered into by the Plaintiffs in the *Martin* Case

90.    Paragraphs 4 and 5 of the SCA entered into by Judge Moore contain language

materially identical in to the language quoted in ¶¶ 84-89 *supra* from Paragraphs 4 and 5 of the

agreements entered into by the Plaintiffs in the *Psenicska* Case, the *Streit* Case, and the *Martin*

Case. *Compare* Schulman Decl. ¶ 16 & Ex. 5 §§ 4 and 5 *with* McNamara Decl. ¶ 28.a & Ex. 26

§§ 4 and 5; McNamara Decl. ¶ 28.b & Ex. 27 §§ 4 and 5; McNamara Decl. ¶ 28.c & Ex. 28 §§

4and 5.

**RESPONSE:** Disputed with explanation. Pursuant to F.R.C.P. 56(d), Plaintiffs have

no knowledge of the actual "agreements" entered into by the Plaintiffs in the *Psenicska* Case,

the *Streit* Case, and the *Martin* Case

91.    The *Psenicska* Case, the *Streit* Case, and the *Martin* Case were consolidated,

and subsequently dismissed in *Psenicska v. Twentieth Century Fox Film Corp.*, Nos. 07 Civ.

10972, *et al.*, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008), *aff'd*, 409 F. App'x 368 (2d Cir.

2009).

**RESPONSE**: Admit

## PLAINTIFF'S ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Judge Moore explicitly excluded from the "Consent Agreement" claims

involving assertions of…any allegedly sexual oriented or offensive behavior or questioning."

Moore Dec. ¶1

2.    Judge Moore was fraudulently tricked into appearing on a world-wide

broadcast where he was falsely accused of being a child sex-offender.  Moore Dec. ¶2

3.    After the taping of Judge Moore's segment, when Plaintiffs discovered that they

had been fraudulently induced to fly to Washington, D.C. and that Judge Moore's segment was

to appear on Showtime and CBS, his Alabama counsel, Melissa Isaak, Esq. sent a preemptive notice to Defendants Showtime, CBS and thus Cohen warning them that Plaintiffs would resort to appropriate legal remedies if they chose to air the segment. In the preemptive notice, Defendants CBS, Showtime and thus Cohen were informed that the release that Judge Moore had signed was obtained through fraud, and was therefore void and inoperative. Moore Dec. ¶3.

4.      The U.S. District Court for the District of Columbia, in ruling that the forum selection clause in the "Consent Agreement" was enforceable, paid particular attention to the modification of the "Consent Agreement" and expressly questioned Defendants about it. Specifically, the Court asked:

> Isn't that part of the contract that knocks out the area that they would agree to discuss and then it is discussed as affecting the forum? Moore Dec. ¶ 4.

5.      The Honorable Andrew L. Carter also focused and zerores in on the same modification at the August 1, 2019 conference in this matter:

> I'll hand this back to counsel. There is something in this agreement that was highlighted and crossed out. Was that something that was done prior to the signing of the agreement or was that something done by counsel afterwards? Moore Dec. ¶ 5.

6.      Judge Moore was fraudulently induced by Defendants to appear on Defendant Cohen's show "Who is America?" In order to fraudulently induce Plaintiffs to travel to Washington, D.C., where filming was to and did take place on or about February 14, 2018, Defendant Cohen and his agents falsely and fraudulently represented to Plaintiffs that Yerushalayim TV was the producer and broadcaster of the show that Judge Moore would appear on, instead of the actual network that the show that later appeared on - Defendant Showtime. Moore Dec. ¶6.

7.      Judge Moore and Mrs. Moore were both being invited to Washington, D.C., for Judge Moore to receive an award for his strong support of Israel in commemoration of its 70th anniversary as a nation state. Moore Dec. ¶7.

8.      Defendant Cohen's character falsely and fraudulently introduced a false and fraudulent 'device' supposedly invented by the Israeli Army to detect pedophiles. During the segment, Defendant Cohen's 'device' – as part of the false and fraudulent routine – purports to detect Judge Moore as a sex offender, thus defaming him."  Moore Dec. ¶ 8.

9.      Defendants set up numerous fake corporations in order to try to insulate Defendant Cohen from liability for his tortious conduct. This was done by creating shell corporation after shell corporation for the sole purpose of defrauding Judge Moore and Defendant Cohen's other victim. Moore Dec. ¶ 9.

10.     During deposition, which was conducted remotely, Defendant Cohen appeared to be being fed answers by his counsel, which shows that he had no personal understanding of the numerous corporations that were used to defame Judge Moore, evidencing the fact they were no more than tools of fraud, specifically established for the sole purpose of committing fraud. A review of the video of the Cohen deposition will not only show him looking down, probably to a cell phone or tablet, but also hesitating in his answers to simple questions.  Moore Dec. ¶10.

11.     Plaintiffs had no knowledge that Defendant Cohen was in any way associated with the production that they were signing up for, nor that Defendants CBS and Showtime were involved. Plaintiffs also had no knowledge that the purpose of the "Consent Agreement" was to feature and defame Judge Moore on "Who is America?" and not to receive an award for Judge Moore's strong support of Israel.  Had Plaintiffs known of these facts, they would never have signed the "Consent Agreement" and travelled to Washington D.C. Moore Dec. ¶ 11.

12.     Evidence obtained in discovery shows that Judge Moore was a primary target of Defendants, which goes towards their intent to defame and defraud him. In a February 13, 2018 email from Mr. Schulman to the "*Who is America*" crew, he writes, "[w]e should move Roy Moore up to 2:30… [Defendant Cohen] wants as much time with him as possible." Moore. Dec. ¶ 12.

13.     At deposition, Jennifer Wallis admitted that once YTV was used to defraud Judge Moore, Defendants no longer even kept it as an active corporation:

> Q. What were the circumstances upon which it ceased to exist?
>  A. Once the annual filings are no longer filed, it's administratively dissolved by the state  of formation.
>  Q. You were instructed to make no further administrative filings on behalf of Yerushalayim TV?
> A. I believe that calls for attorney-client  privileged communication.
> Q. Okay. So you made no further filings on behalf of Yerushalayim TV?
> A. Correct. Moore Dec. ¶13.

14.     Todd Schulman made the same admission:

> Q. Mr. Schulman, Yerushalayim TV was formed for the sole purpose of the show "Who Is America?", correct?
> A. Yes. Moore Dec. ¶ 14.

15.     Todd Schulman admitted that he was aware that Judge Moore had precluded any "claims involving assertions of…any allegedly sexual oriented or offensive behavior or questioning," yet did nothing to stop it:

> Q.     So you saw it after the interview started, but before the end of the interview with Judge Moore?
> A.     Yes. Moore Dec. ¶ 15.

16.     At the December 18, 2020 hearing in this matter the Court found:

> Well, Mr. Klayman, if you prevail in the motion that the language is ambiguous, that means that the motions will not prevail on that point. As Ms. McNamara confirmed earlier, their argument is going to be that the unambiguous language of the SCA precludes the claims that were brought. If you're accurate that there's language that makes the agreement ambiguous, then that will be a very strong

point for you to make when you oppose a motion for summary judgment. Moore Dec. ¶ 16.

17.    Defendant Cohen has gone so far as to try to defraud the Secret Service in an attempt to smear then HUD Secretary Ben Carson, which is a crime. Moore Dec. ¶17.

18.    As a result of Defendants and their agents' extreme and outrageous conduct, Plaintiffs have suffered extreme emotional distress as a result of Judge Moore being falsely portrayed, mocked and defamed as a sex offender and pedophile in this district, on national television and worldwide, as well as damages to Judge Moore's reputation. Moore Dec. ¶ 18.

**Dated**: March 15, 2021                    Respectfully Submitted,


  /s/ *Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP P.A.
7050 W. Palmetto Park Rd
Boca Raton FL 33433
(561) 558-5336
Email: leklayman@gmail.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on March 15. 2021.


*/s/ Larry Klayman*
Larry Klayman, Esq.