UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

----------------------------------------------------------------------- x

ROY STEWART MOORE and KAYLA MOORE,    :
                                           :

                 Plaintiffs,    :    Index No. 19 Civ. 4977 (JPC)
                                           :

          - against -    :    **ORAL ARGUMENT REQUESTED**
                                           :

SACHA NOAM BARON COHEN, SHOWTIME    :
NETWORKS, INC., AND CBS CORPORATION,    :
                                           :

              Defendants.    :

----------------------------------------------------------------------- x

# REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
# MOTION FOR SUMMARY JUDGMENT

Elizabeth A. McNamara                       Of Counsel:
Rachel F. Strom                              Russell Smith, Esq.
Eric J. Feder                                 Jeff Holmes, Esq.
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor     SMITHDEHN LLP
New York, New York  10020              654 San Juan Avenue
(212) 489-8230                           Venice Beach
(212) 489-8340                           Los Angeles, California  90291
lizmcnamara@dwt.com                (310) 396-9045
rachelstrom@dwt.com                rsmith@smithdehn.com
ericfeder@dwt.com                    jholmes@smithdehn.com


*Attorneys for Defendants Sacha Noam Baron Cohen,*
*Showtime Networks, Inc. and CBS Corporation*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..........................................................................................................................3

I.     THE SCA BARS PLAINTIFFS' CLAIMS .......................................................................3

        A.     Plaintiffs Fail to Distinguish the *Borat* Cases ..........................................................3

        B.     The "Amendment" to the SCA Has No Effect on the Waiver of Claims ................5

        C.     The Letter from Plaintiffs' Counsel Did Not "Void" the SCA ...............................6

II.    ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE FIRST
        AMENDMENT ............................................................................................................7

CONCLUSION .....................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alphonse Hotel Corp. v. Tran*,
828 F.3d 146 (2d Cir. 2016)........................................................................................3

*Farah v. Esquire Magazine*,
736 F.3d 528 (D.C. Cir. 2013) ....................................................................................8

*Grayson v. Ressler & Ressler*,
271 F. Supp. 3d 501 (S.D.N.Y. 2017).........................................................................8

*Hustler Magazine, Inc. v. Falwell*,
485 U.S. 46 (1988).....................................................................................................2, 3

*In re Actrade Fin. Techs., Ltd.*,
424 B.R. 59 (Bankr. S.D.N.Y. 2009).......................................................................4, 5

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010)........................................................................................6

*Missel v. County of Monroe*,
No. 10 Civ. 6380, 2011 WL 3648635 (W.D.N.Y. Aug. 17, 2011)............................8

*Psenicska v. Twentieth Century Fox Film Corp.*,
Nos. 07 Civ. 10972, *et al.*, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008), *aff'd*,
409 F. App'x 368 (2d Cir. 2009) .........................................................1, 3, 4, 5, 7

*RJE Corp. v. Northville Indus. Corp.*,
329 F.3d 310 (2d Cir. 2003).......................................................................................6

*Torain v. Liu*,
279 F. App'x 46 (2d Cir. 2008) ..................................................................................8

*United States v. Prevezon Hldgs., Ltd.*,
289 F. Supp. 3d 446 (S.D.N.Y. 2018).........................................................................6

**State Cases**

*Danann Realty Corp. v. Harris*,
5 N.Y.2d 317 (1959) ....................................................................................................4

*Salomone v. Macmillan Publ'g Co.*,
    97 Misc. 2d 346 (Sup. Ct. N.Y. Cty. 1978) ...............................................................................9

*Salomone v. Macmillan Publ'g Co.*,
    77 A.D.2d 501 (1st Dep't 1980) ...............................................................................9

## PRELIMINARY STATEMENT

The myriad arguments Plaintiffs throw against the wall in their Opposition ("Opp.") do

nothing to get around the fundamental reality that this case is on all fours with *Psenicska v.*

*Twentieth Century Fox Film Corp.*, Nos. 07 Civ. 10972, *et al.*, 2008 WL 4185752 (S.D.N.Y.

Sept. 3, 2008), *aff'd*, 409 F. App'x 368 (2d Cir. 2009), which involved the same types of claims

against the same performer, the same contracts, and the same arguments by the plaintiffs to avoid

those contracts.  As here, the *Psenicska* plaintiffs argued fraudulent inducement because

Defendant Sacha Baron Cohen allegedly misled them about the nature of the program in which

they were participating.  And, like here, the plaintiffs signed agreements that expressly

disclaimed any reliance on statements about the nature of the program, which, thus, precluded

their claims.  Indeed, here, Plaintiffs' Opposition confirms that all of the alleged

"misrepresentations at issue" are "about the nature of the Program or the identity, behavior, or

qualifications of any … cast members, or other persons involved in the Program.  56.1 ¶ 77. *See*

Opp. at 8.[1]   And, Judge Moore's crossing-out of an unrelated parenthetical phrase in the

Standard Consent Agreement ("SCA") he signed does nothing to save Plaintiffs' claims.

But even if Plaintiffs' claims were not foreclosed by the SCA and prior law in this

Circuit, summary judgment still must be granted because each of Plaintiffs' claims is barred by

the First Amendment.  The entire Program, from its title ("*Who Is America?*") to the content of

each episode, including the segment involving Judge Moore, is plainly a commentary on and

satire of current American culture and politics by one of our time's most notable satirists.  In that

context, the comedy skit involving an obviously fake "sex offender detector" device held by a

[1] Capitalized terms not defined herein bear the same definitions as in the Memorandum of Law in Support of
Defendants' Motion for Summary Judgment (ECF No. 116) ("Defs. MSJ").

fictional character did not factually "accuse[]" Judge Moore of anything, Opp. at 1; it lampooned the already widely-known allegations against Judge Moore that derailed his Senate campaign— allegations that were prominently displayed at the outset of the segment itself.  56.1 ¶ 53.  A reasonable viewer would understand that the segment was a constitutionally protected joke – not statements of fact.[2]

As Justice Frankfurter "put it succinctly," "[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures."  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51 (1988) (citation omitted).  Exercising that "prerogative[]" may well include publicly confronting a government official—and perennial candidate for higher office—with the serious allegations that have been made against him, whether in a town hall, at a press conference, or, as here, in a comedy sketch.  In *Falwell*, the Supreme Court recognized the "prominent role" of political satire in the development of our democracy, even—indeed, *especially*—when that satire is "offensive," "gross and repugnant in the eyes of most," "caustic," "unpleasantly sharp," "slashing," and "outrageous."  485 U.S. at 50, 53-55 (citations omitted). In fact, "[t]he appeal of the political cartoon or caricature is often based on exploitation of … politically embarrassing events—an exploitation often calculated to injure the feelings of the subject of the portrayal."  *Id.* at 54.  Plaintiffs' attempt to punish Defendants for participating in this constitutionally protected tradition must be rejected.  The Court should grant summary judgment to Defendants.

---

[2] By Plaintiffs' own admission, all three causes of action in this case are derived from the same alleged reputational harm that underlies the defamation claim.  Thus, Plaintiffs' claims for intentional infliction of emotional distress and fraud necessarily fail along with the defamation claim. *See infra*, Section II.

## ARGUMENT

## I.    THE SCA BARS PLAINTIFFS' CLAIMS

Although Plaintiffs' claims fail even without the consent agreement Judge Moore

executed, the SCA independently and explicitly precludes each of the claims they assert.

Plaintiffs' arguments to the contrary do not allow them to avoid the consequences of the SCA,

which bars this action.[3]

### A.    Plaintiffs Fail to Distinguish the *Borat* Cases

Plaintiffs cite to the Second Restatement of Contracts and reach back to a 20-year-old

case in Utah in an effort to sidestep the directly-on-point decisions in *Psenicska v. Twentieth*

*Century Fox Film Corp.*, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008), *aff'd*, 409 F. App'x 368

(2d Cir. 2009).  But this attempt must fail—*Psenicska* squarely bars Plaintiffs' claims.  While

insinuating that this Court "did not take the time to review th[e] case thoroughly," Plaintiffs

assert that *Psenicska* turned only on whether the term "documentary-style film" was ambiguous,

completely overlooking the *other* holding in the case: that the aggrieved participants in the *Borat*

movie could not avoid the waiver of claims in materially identical consent agreements to the

agreement at issue here by claiming fraudulent inducement, because they expressly disclaimed

reliance on statements "about the nature of the Film or the identity of any other Participants or

---

[3] Plaintiffs make no attempt to challenge <u>any</u> of the relevant facts establishing that the SCA applies to each of the Defendants by virtue of Defendant Cohen's ownership of the relevant corporate entities (including YTV), and the licensing of the Program to SNI (a wholly owned subsidiary of ViacomCBS). *See* Defs. MSJ at 16-18.  At the same time, Plaintiffs complain that they "were only given limited discovery as to the corporate ownership of YTV," and concoct an utterly baseless conspiracy theory that Defendant Cohen was "being fed answers during his deposition" by counsel, Opp. at 19, even though his testimony was entirely consistent with the documents and testimony of all other witnesses (who were deposed *after* him), and the matters on which he was testifying were straightforward issues of corporate ownership.  They provide no support for this entirely manufactured accusation, citing to no actual answers or excerpts from testimony.  Nor do Plaintiffs explain how further discovery of any kind would actually affect the resolution of any issues on this motion, which they must do to avoid summary judgment for lack of sufficient discovery under Fed. R. Civ. P. 56(d).  *See Alphonse Hotel Corp. v. Tran,* 828 F.3d 146, 151 (2d Cir. 2016); Defendants' Reply to Plaintiffs' Response to Defendants' Rule 56.1 Statement at 1-3.  On the contrary, Plaintiffs themselves insist that "the issue of ownership of YTV"—the sole issue on which they were deposing Mr. Cohen and obtaining limited discovery—"is *irrelevant*."  Opp. at 18 (emphasis added).

persons involved in the Film."  2008 WL 4185752, at *5-6; 409 F. App'x at 371.  The *Psenicska*

court explained "where a plaintiff 'has in the plainest language announced and stipulated that it

is not relying on any representations as to the very matter as to which it now claims it was

defrauded,' the disclaimer 'destroys the allegations in plaintiff's complaint that the agreement

was executed in reliance upon these contrary oral representations."  *Psenicska*, 409 F. App'x at

371 (quoting *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21 (1959)).

      And that is just what happened here.  Judge Moore signed an agreement disclaiming

reliance on any statements about "the nature of the Program or the identity, behavior, or

qualifications of any other Participants, cast members, or other persons involved in the

Program."  56.1 ¶ 77.  And Plaintiffs' Opposition confirms that those are *precisely* the alleged

false representations on which they relied.[4]  As a result, this case should be "disposed of" for the

exact same reasons as in *Psenicska*.  ECF No. 96 at 41:13-19.

      Moreover, like the plaintiffs did in *Psenicska*, Plaintiffs try to characterize the disclaimer

in the SCA as a mere "merger provision[]."  Opp. at 12.  But, as Judge Preska recognized, the

disclaimer in the SCA is manifestly *not* a "general" "merger clause"; it "explicitly disclaim[s]

reliance" on the very representations that the plaintiffs claim induced them to sign.  2008 WL

4185752, at *5-6; *see* Opp. at 11-13.  As to Plaintiffs' continued argument that the waiver of

claims "related to the Program or its production" is somehow an "improper general release,"

Opp. at 13, the Court has already recognized that the authority on which Plaintiffs continue to

rely for this argument is inapposite.  *Cf.* Opp. at 14 (rehashing arguments about *In re Actrade*

---

[4] *See*, *e.g.*, Opp. at 6-7 ("Plaintiffs had no knowledge that Defendant Cohen was in any way associated with the production … nor that Defendants CBS and Showtime were involved.… Had Plaintiffs known of these facts, they would never have travelled to Washington D.C. and signed the [SCA].").  *See also* Plaintiffs' Additional Statement of Undisputed Material Facts ¶ 11.

*Fin. Techs., Ltd.*, 424 B.R. 59 (Bankr. S.D.N.Y. 2009)), *with* Dec. 18 Tr. at 16:12-18 (THE

COURT: "I don't see how *Actrade* provides any help to you."). *See also* Defs. MSJ at 18-19.[5]

### B.      The "Amendment" to the SCA Has No Effect on the Waiver of Claims

Plaintiffs' effort to save their claims based on the crossing-out of a single parenthetical

phrase in the SCA runs headlong into the plain language of the contract itself.  Despite Plaintiffs'

repeated efforts to rewrite the "amended" agreement,[6] the only change is the striking-through of

the phrase "(such as any allegedly sexual oriented or offensive behavior or questioning)" that

provided one possible example of the waived "intrusion or invasion of privacy" claims.  Yet,

Plaintiffs do not assert a privacy or intrusion claim.  And in signing the so-modified SCA, Judge

Moore still unambiguously waived any claims "related to the Program," including each claim he

asserts in this action:  emotional distress, defamation and fraud claims.  More than that, Judge

Moore expressly agreed that he was "signing this agreement with no expectations or

understandings concerning the conduct, offensive or otherwise, of anyone involved in this

Program."  56.1 ¶ 77.

Plaintiffs cannot credibly argue that the crossing out of that single, unrelated

parenthetical phrase in a lone clause in the SCA somehow constituted an enforceable promise "to

*not discuss anything* that was 'sexual oriented or offensive behavior or questioning.'"  Opp. at 8,

---

[5] Plaintiffs' arguments that *Psenicska* is distinguishable because the alleged defamation in this case was more serious than the defamation alleged by some of the plaintiffs in the earlier case is made up out of whole cloth.  Opp. at 2.  No part of the holding in *Psenicska* was based on the relative severity of the allegedly tortious conduct.

Plaintiffs also assert the Second Circuit's rejection of "the 'peculiar knowledge' exception to waiver of fraudulent inducement" somehow distinguishes this case.  Opp. at 21.  But they do not argue that the exception applies here at all, and do not even try to show that they "face[d] high[er] costs in determining the truth or falsity" of the alleged misrepresentations than the plaintiffs in *Psenicska*.  *Id.*  Moreover, as in *Psenicska*, this argument is negated by the disclaimer of any reliance on the very facts that were purportedly in the "peculiar knowledge" of the defendants.

[6] *See, e.g.*, Opp. at 1 (adding the underlined language when purporting to quote the SCA: "Judge Moore explicitly excluded from the 'Consent Agreement,' matters involving the publication of … any allegedly sexual oriented or offensive behavior or questioning.'").  Judge Moore could have asked that the SCA be amended to actually preclude any questioning concerning sexually oriented behavior.  But he did not do so.

5

11 (emphasis added).  The SCA—even as modified—contains no language even suggesting the

existence of such an obligation, and Plaintiffs' effort to have the Court read one into the SCA

flies in the face of the black letter principle that "courts may not by construction add or excise

terms, nor distort the meaning of those used and thereby make a new contract for the parties

under the guise of interpreting the writing."  *Law Debenture Tr. Co. of N.Y. v. Maverick Tube

Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (citation omitted).[7]

As a fallback, Plaintiffs stress that this Court should at least find some ambiguity in the

contract.  But "[c]ontract terms are not ambiguous if they 'have a definite and precise meaning

and are not *reasonably* susceptible to differing interpretations.'" *RJE Corp. v. Northville Indus.

Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (emphasis added) (citation omitted).  And there is no

"*reasonabl[e]* … interpretation[]" of the SCA, including the handwritten strike-through, that is

remotely ambiguous as to either the waiver of claims or the disclaimer of reliance.  *Id.*

Moreover, the SCA—again, even as modified—unambiguously does *not* reflect an affirmative

"agree[ment] not to put forth 'any allegedly sexual oriented or offensive behavior or

questioning.'"  Opp. at 17.  Plaintiffs cannot simply will an ambiguity into existence by urging a

nonsensical reading of a clear agreement.  *See United States v. Prevezon Hldgs., Ltd.*, 289 F.

Supp. 3d 446, 451 (S.D.N.Y. 2018) ("[A] contract is not ambiguous simply because 'the parties

urge different interpretations' or where 'one party's view strains the contract language beyond its

reasonable and ordinary meaning.'") (citation omitted).

C.      **The Letter from Plaintiffs' Counsel Did Not "Void" the SCA**

---

[7] Plaintiffs urge that it would be "fundamentally inequitable" not to give the SCA the nonsensical reading Plaintiffs are promoting, Opp. at 18, but where, as here, the plain language of a contract is clear, "a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Law Debenture*, 595 F.3d at 468 (citations omitted).

Plaintiffs argue that the SCA was somehow "voided" by their counsel sending a letter to SNI and CBS executives asserting that the SCA was obtained "through fraud" and warning that Plaintiffs would "resort to appropriate legal remedies" if the interview segment was aired.  Opp. at 1-2.  Unsurprisingly, Plaintiffs provide no authority for this proposition.  And, in keeping with their tendency to ignore the plain language of the SCA, they fail to acknowledge the provision that Judge Moore "understands … that the consent agreement … cannot be revoked."  SCA ¶ 3.

Ultimately, none of Plaintiffs' arguments to avoid the clear language of a contract that was signed by a former Chief Justice of the Alabama Supreme Court holds water.  Just as in *Psenicska*, the SCA mandates dismissal of Plaintiffs' claims.

## II.     ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE FIRST AMENDMENT

Although the SCA clearly bars Plaintiffs' Complaint, the First Amendment independently bars each of their claims.  In fact, in their Opposition, Plaintiffs scarcely make an effort to establish the viability of their claims on the merits.

As a preliminary matter, Plaintiffs' Opposition only further reinforces that both Mrs. Moore and Judge Moore's claims stem entirely from the alleged harm to Judge Moore's reputation from his appearance on the Program.  While Plaintiffs do allege they suffered "extreme emotional distress," it is only "*as a result of Judge Moore being falsely portrayed, mocked and defamed* as a sex offender and pedophile."  Opp. at 23 (emphasis added).[8]  In fact, in the one case they cite on this issue, the plaintiff did not even assert a defamation claim, and the emotional distress claim was able to stand because the defendant police officer, among other

---

[8] *See* Opp. at 23-24 (quoting Complaint); *id.* at 25 (arguing that Plaintiffs' fraud claim should survive simply because, they contend, "none of the Defendants' arguments on Plaintiffs' claim for defamation are availing and therefore their motion must be denied with regard to fraud," and making no attempt to show how fraud claim is based on anything other than reputational harm); *id.* (asserting that "[a]ny spouse would suffer severe emotional distress as a result of their spouse being falsely branded a pedophile on television," and arguing this somehow shows that Mrs. Moore's claims are *not* simply derivative of Judge Moore's claims for reputational harm).

things, initiated a sham police investigation into the plaintiff, hacked into his computer, stalked

him, secretly videotaped him at his home and even attached a rotting fish head to his car.  *See*

*Missel v. County of Monroe*, No. 10 Civ. 6380, 2011 WL 3648635, at *7 (W.D.N.Y. Aug. 17,

2011).  But here, Plaintiffs' "emotional harm" stems only from the alleged "mocke[ry]" and

"defam[ation]" of Judge Moore. Under well settled law, Plaintiffs' tag-along claims rise and fall

with Judge Moore's defamation claim.  *See Falwell*, 485 U.S. at 56; *Grayson v. Ressler &*

*Ressler*, 271 F. Supp. 3d 501, 520 (S.D.N.Y. 2017) ("New York law considers claims sounding

in tort to be defamation claims ... where those causes of action seek damages only for injury to

reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his

reputation.'") (citation omitted).  *See also* Defs. MSJ, section III.B-C.

And there is no question that Judge Moore's defamation claim fails a matter of law.  As

set forth in the Defendants' opening memorandum, Plaintiffs' claims are completely at odds with

this country's long-standing tradition of First Amendment protection for political satire of public

figures where the satirical work "could not reasonably have been interpreted as stating actual

facts about the public figure involved."  *Falwell*, 485 U.S. at 50.  Defs. MSJ at 23-27.

Contrary to Plaintiffs' assertion, the question of whether the segment of *Who is America?*

stated actual facts about Judge Moore when he was confronted by a famous satirist dressed up as

a completely fictional character with a beeping "sex offender detector" does not need to "go to

the jury to decide."  Opp. at 22.  Instead, "whether a statement is opinion or rhetorical hyperbole

as opposed to a factual representation is a question of law for the court."  *Torain v. Liu*, 279 F.

App'x 46, 46-47 (2d Cir. 2008) (affirming dismissal of libel claim based on radio broadcast in

which defendant called plaintiff a "sick racist pedophile" and "child predator") (citation

omitted).  *See also Farah v. Esquire Magazine*, 736 F.3d 528, 537 (D.C. Cir. 2013) (dismissing

libel claim at the outset because a "reasonable reader could not understand Warren's article to be conveying 'real news,'" but instead would "recognize the prominent indicia of satire in the Warren article"). The Court can easily analyze the segment in both its immediate and broader social context to see that no reasonable viewer would understand the Program to be conveying "actual facts" about Judge Moore, rather than satirizing the well-known allegations that reportedly caused him to lose the election for U.S. Senate—the very same allegations contained in the news clips that were displayed at the outset of the Program itself. *See* Defs. MSJ at 23-27.

The sole case Plaintiffs rely on for this point is a 1978 New York trial court decision that was reversed on appeal, and is easily distinguishable. In *Salomone v. Macmillan Publ'g Co.*, the defendant published a parody of a children's book, which stated on the cover that a character from the original book that was named after the plaintiff "was a child molester!!" 97 Misc. 2d 346, 348 (Sup. Ct. N.Y. Cty. 1978).[9] The court held that the question whether this was "nonactionable humor" was a jury question. *Id.* at 352. But unlike here, the book in *Salomone* was not riffing on widely known allegations against a prominent public official—it expressed a new defamatory accusation concerning a private figure as a straightforward fact, and the question for the jury would have been whether the audience would know that the authors were, in essence, only kidding. Even the trial court would have dismissed the action if the plaintiff had been a public figure, noting that "[p]ublic figures may justifiably be considered not only subjects of criticism but even calumny." *Id.* at 352. Moreover, the denial of summary judgment was set aside on appeal because the plaintiff could point to "no one who believes he was a child molester or thinks less of him due to the publication" of the parody book at issue. *Salomone v. Macmillan*

---

[9] Here, of course, the Erran Morad character explicitly states he is "*not* saying you are a pedophile," and is "*not* saying you are a sex offender at all" as Judge Moore exited the interview. 56.1 ¶ 63 (emphasis added).

*Publ'g Co.*, 77 A.D.2d 501, 502 (1st Dep't 1980).  The same reasoning defeats Plaintiffs'

arguments here.  If any viewer *did* believe that Judge Moore was a "pedophile," it could only

have been because of the previously and widely reported allegations from numerous credible

news organizations that he had inappropriate relationships with underage girls—the very reports

that were the subject of the Program's satire.[10]

At bottom, no reasonable viewer could watch the Program and come away thinking for

the first time that Judge Moore was a "sex offender" because he set off a real "sex offender

detector" device held by a well-known comedian in a Series that is known for commenting on

American culture in the most comedic and even outlandish ways.

Because, as a matter of law, the Program could not be reasonably construed as stating

actual facts about Judge Moore, all of Plaintiffs' claims—which are each based on the

reputational injury Judge Moore allegedly suffered—are barred by the First Amendment.

Summary judgment would be appropriate, even if Judge Moore had not also signed an agreement

expressly waiving those claims.

**CONCLUSION**

For the reasons set forth above, this Court should grant summary judgment in favor of

Defendants.

---

[10] In this way, Defendants did not "smear or brand[] Judge Moore a pedophile," Opp. at 7, any more than did the dozens of prominent Republican politicians who, "amid allegations of sexual misconduct," urged him to withdraw from the Senate race, declared him "unfit to serve," and threatened to expel him from Congress if he won the election.  Sean Sullivan, *et al.*, *Senate Republicans repudiate Roy Moore's candidacy and urge him to leave the race*, Wash. Post (Nov. 13, 2017), https://wapo.st/31mgV60.  *See also* Daniella Diaz, *NRSC severs fundraising ties with Roy Moore*, CNN (Nov. 10, 2017), https://cnn.it/3lZ8Cq5; The Editors, *Roy Moore Should Drop Out*, Nat'l Review (Nov. 10, 2017), https://bit.ly/3cvwLSn; Kaitlyn Schallhorn & Madeline Farber, *Roy Moore condemned by large number of Republicans following sexual assault allegations*, Fox News (Dec. 12, 2017), http://fxn.ws/2BhQmmY

Dated: April 5, 2021                         Respectfully Submitted,

                                             */s/ Elizabeth A. McNamara*
                                             Elizabeth A. McNamara
                                             Rachel F. Strom
                                             Eric J. Feder
                                             DAVIS WRIGHT TREMAINE LLP
                                             1251 Avenue of the Americas, 21st Floor
                                             New York, New York  10020
                                             (212) 489-8230
                                             (212) 489-8340 (fax)


                                             Of Counsel:

                                             Russell Smith, Esq.
                                             Jeff Holmes, Esq.
                                             SMITH DEHN LLP
                                             654 San Juan Avenue
                                             Venice Beach
                                             Los Angeles, California  90291
                                             (310) 396-9045
                                             rsmith@smithdehn.com
                                             jholmes@smithdehn.com


                                             Attorneys for Defendants