UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
----------------------------------------------------------------x
ROY STEWART MOORE and KAYLA MOORE, :
:
                Plaintiffs, : Index No. 19 Civ. 4977 (JPC)
:
             - against - : **ORAL ARGUMENT REQUESTED**
:
SACHA NOAM BARON COHEN, SHOWTIME :
NETWORKS, INC., AND CBS CORPORATION, :
:
                Defendants. :
----------------------------------------------------------------x

# DEFENDANTS' RESPONSE TO PLAINTIFFS' ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS

      Defendants Sacha Baron Cohen ("Cohen"), Showtime Networks Inc. ("SNI"), and CBS Corporation n/k/a ViacomCBS Inc. ("ViacomCBS") (collectively, "Defendants"), pursuant to Local Rule 56.1(b) of the United States District Courts for the Southern District of New York, submit this Response to Plaintiffs' Additional Statement of Undisputed Material Facts. Defendants submit this Response solely for purposes of Defendants' pending Motion for Summary Judgment and reserve the right to challenge the purported truth of any statements made in Plaintiff's Additional Statement of Undisputed Material Facts at any trial of this action.

      1.    Judge Moore explicitly excluded from the "Consent Agreement" claims involving assertions of…any allegedly sexual oriented or offensive behavior or questioning." Moore Dec. ¶1

      **Defendants' Response**:  This statement asserts a legal conclusion, which is inappropriate for a Rule 56.1 statement and must therefore be disregarded.  *See Nadel v. Shineski*, 57 F. Supp. 3d 288, 293 n. 6 (S.D.N.Y. 2015) (refusing to credit "legal conclusions or conclusory allegations" contained in Rule 56.1 statement (citations omitted)).  Further, this statement

misrepresents the contents of the Standard Consent Agreement ("SCA") signed by Judge Moore, which states "[t]he Participant specifically, but without limitation, waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associate with the Program, which are related to the Program or its production, or this agreement, including, but not limited to, claims involving assertions of (a) failure to adequately compensate Participant, (b) failure to use the footage of Participant in the Program, (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the Participant's name or likeness or image), (d) damages caused by "acts of God" (such as, but not limited to, injuries from natural disasters), (e) damages caused by acts of terrorism or war, (f) intrusion or invasion of privacy (~~such as any allegedly sexual-oriented or offensive behavior or questioning~~), (g) false light (such as any allegedly false or misleading portrayal of the Participant), (h) infliction of emotional distress (whether allegedly intentional or negligent), (i) trespass (to property or person), (j) breach of any alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, (l) copyright or trademark infringement, (m) defamation (such as any allegedly false statements made in the Program), (n) violations of Section 43(a) of the Lanham Act (such as allegedly false or misleading statements or suggestions about the Participant in relation to the Program or the Program in relation to the Participant), (o) prima facie tort (such as alleged intentional harm to the Participant), (p) fraud (such as any alleged deception about the Program or this consent agreement), (q) breach of alleged moral rights, or (r) tortious or wrongful interference with any contracts or business of the Participant," with *only* the struck-through language crossed out by hand. *See* Declaration of Todd Schulman in Support of Defendants'

Motion for Summary Judgment, sworn to February 7, 2021 ("Schulman Decl.") ¶ 16 & Ex. 5 § 4.

2.  Judge Moore was fraudulently tricked into appearing on a world-wide broadcast where he was falsely accused of being a child sex-offender.  Moore Dec. ¶2

**Defendants' Response**: This statement asserts a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded. *See Nadel*, 57 F. Supp. 3d at 293 n. 6.

3.  After the taping of Judge Moore's segment, when Plaintiffs discovered that they had been fraudulently induced to fly to Washington, D.C. and that Judge Moore's segment was to appear on Showtime and CBS, his Alabama counsel, Melissa Isaak, Esq. sent a preemptive notice to Defendants Showtime, CBS and thus Cohen warning them that Plaintiffs would resort to appropriate legal remedies if they chose to air the segment.  In the preemptive notice, Defendants CBS, Showtime and thus Cohen were informed that the release that Judge Moore had signed was obtained through fraud, and was therefore void and inoperative.  Moore Dec. ¶3.

**Defendants' Response**: Undisputed that Melissa Isaak sent to Defendants SNI and ViacomCBS the letter attached to the Declaration of Chief Justice Roy Stewart Moore ("Moore Decl.") as Exhibit 2.  The contents of the letter speak for itself.  The statements that Plaintiffs were "fraudulently induced to fly to Washington, D.C.," that the SCA "was obtained through fraud," and that it was "therefore void and inoperative" assert a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded. *See Nadel*, 57 F. Supp. 3d at 293 n. 6.

4.  The U.S. District Court for the District of Columbia, in ruling that the forum selection clause in the "Consent Agreement" was enforceable, paid particular attention to the modification of the "Consent Agreement" and expressly questioned Defendants about it. Specifically, the Court asked:

> Isn't that part of the contract that knocks out the area that they would agree to discuss and then it is discussed as affecting the forum?  Moore Dec. ¶ 4.

**Defendants' Response**: Undisputed that Judge Thomas F. Hogan of the U.S. District Court for the District of Columbia made the quoted statement during the April 29, 2019 hearing

3

on Defendants' motion to transfer the case to this Court pursuant to 28 U.S.C. § 1404. Whether or not Judge Hogan "paid particular attention to the modification," is unsubstantiated speculation and is not a material fact. Indeed, Judge Hogan mentioned the crossing out of the parenthetical phrase only four times in the 39-page transcript of the hearing, and offered no view as to its legal import. *See* Declaration of Elizabeth A. McNamara, sworn to February 8, 2021 ("McNamara Decl.") ¶ 29 & Ex. 29 at 14, 22, 23, 32.

5. The Honorable Andrew L. Carter also focused and zeroes in on the same modification at the August 1, 2019 conference in this matter:

> I'll hand this back to counsel. There is something in this agreement that was highlighted and crossed out. Was that something that was done prior to the signing of the agreement or was that something done by counsel afterwards? Moore Dec. ¶ 5.

**Defendants' Response**: Undisputed that Judge Andrew L. Carter made the quoted statement during a promotion conference on Defendants' motion to dismiss on August 1, 2020. Whether or not Judge Carter "focused and zeroes [*sic*] in" on the modification of the SCA is based on unsubstantiated speculation and is not a material fact.

6. Judge Moore was fraudulently induced by Defendants to appear on Defendant Cohen's show "Who is America?" In order to fraudulently induce Plaintiffs to travel to Washington, D.C., where filming was to and did take place on or about February 14, 2018, Defendant Cohen and his agents falsely and fraudulently represented to Plaintiffs that Yerushalayim TV was the producer and broadcaster of the show that Judge Moore would appear on, instead of the actual network that the show that later appeared on - Defendant Showtime. Moore Dec. ¶6.

**Defendants' Response**: Undisputed for the purposes of this motion that Cohen's agents represented to Plaintiffs that Yerushalayim Television, LLC ("YTV") was the producer and broadcaster of the show on which Judge Moore was to appear. Dispute that it is false that YTV was a producer of the show on which Judge Moore was to appear. *See* Schulman Decl. ¶ 9 ("YTV was the production company for a segment featuring an interview between a character

4

named "Erran Morad" (played by Cohen) and Judge Roy S. Moore, which was filmed at a hotel in Washington, D.C. on February 14, 2018."). Given that Judge Moore signed the SCA that explicitly states that he waives any reliance on "fraud (such as any alleged deception about the Program or this consent agreement)" (Schulman Decl. ¶ 16 & Ex. 5 § 4), the statement that Defendants acted "fraudulently" with respect to any of the actions described in this paragraph asserts a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded. *See Nadel*, 57 F. Supp. 3d at 293 n. 6.

7.  Judge Moore and Mrs. Moore were both being invited to Washington, D.C., for Judge Moore to receive an award for his strong support of Israel in commemoration of its 70th anniversary as a nation state. Moore Dec. ¶7.

**Defendants' Response**: Undisputed that individuals working for Cohen told Judge Moore and Mrs. Moore that they were invited to Washington, D.C. for Judge Moore to receive an award for his support of Israel. Compl. ¶ 15; Defs.' Ans. ¶ 15.

8.  Defendant Cohen's character falsely and fraudulently introduced a false and fraudulent 'device' supposedly invented by the Israeli Army to detect pedophiles. During the segment, Defendant Cohen's 'device' – as part of the false and fraudulent routine – purports to detect Judge Moore as a sex offender, thus defaming him." Moore Dec. ¶ 8.

**Defendants' Response**: Undisputed that during the segment of *Who Is America* featuring Judge Moore, Cohen, in character as Erran Morad, introduced a device supposedly invented by the Israeli Army and capable of detecting pedophiles. Declaration of Brendan Countee, sworn to February 8, 2021 ("Countee Decl.") ¶ 13 & Ex. 2 (Episode 3, DEF0000415.mp4). Undisputed that this device was fake, in that it was not invented by the Israeli Army and was not capable of detecting pedophiles. Dispute that the behavior of Cohen's character, the device, or the routine were "fraudulent," as this characterization is a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded. *Nadel*, 57

F. Supp. 3d at 293 n. 6.  Dispute that Cohen's use of the device during the segment of *Who Is America?* "defam[ed]" Judge Moore, as this characterization is a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded.  *See Nadel*, 57 F. Supp. 3d at 293 n. 6.

9. Defendants set up numerous fake corporations in order to try to insulate Defendant Cohen from liability for his tortious conduct.  This was done by creating shell corporation after shell corporation for the sole purpose of defrauding Judge Moore and Defendant Cohen's other victim.  Moore Dec. ¶ 9.

**Defendants' Response**:  Dispute that Defendants set up "fake" corporations.  YTV, Greenpark Television, LLC ("Greenpark"), La Quinta Entertainment, LLC ("La Quinta"), and Please You Can Touch, LLC ("PYCT") were all legally incorporated or established.  *See* McNamara Decl. ¶ 12 & Ex. 10 (YTV Articles of Organization); McNamara Decl. ¶ 16 & Ex. 14 (Greenpark Articles of Organization); McNamara Decl. ¶ 19 & Ex. 17 (La Quinta Articles of Organization); McNamara Decl. ¶ 22 & Ex. 20 (PYCT Articles of Organization).  Defendants' intention in establishing YTV, Greenpark, La Quinta, or PYCT is not a material fact.

10. During deposition, which was conducted remotely, Defendant Cohen appeared to be being fed answers by his counsel, which shows that he had no personal understanding of the numerous corporations that were used to defame Judge Moore, evidencing the fact they were no more than tools of fraud, specifically established for the sole purpose of committing fraud.  A review of the video of the Cohen deposition will not only show him looking down, probably to a cell phone or tablet, but also hesitating in his answers to simple questions.  Moore Dec. ¶10.

**Defendants' Response**:  Undisputed that the deposition of Cohen was conducted remotely.  Dispute the characterization of the video of Cohen's deposition as showing Cohen being fed answers by his counsel or looking down at a cell phone or tablet, or as showing that he had no personal understanding of the corporations he controlled.  This characterization is not only false, it is also purely speculative and is not supported by citation to any admissible, non-conclusory evidence, and must therefore be disregarded.  *See Major League Baseball Properties,*

6

*Inc. v. Salvino, Inc.*, 542 F.3d 290, 306 (2d Cir. 2008) ("The non-moving party [on summary judgment] may not rely on conclusory allegations or unsubstantiated speculation." (internal quotes and alterations omitted)).  The statement that Cohen, or entities controlled by him, "defame[d]" Judge Moore, is a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded.  *See Nadel*, 57 F. Supp. 3d at 293 n. 6.  The statement that Cohen, or entities controlled by him, committed or intended to commit fraud is a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded.  *See Nadel*, 57 F. Supp. 3d at 293 n. 6.  Defendants' intention in establishing the entities controlled by Cohen is not a material fact.

11.    Plaintiffs had no knowledge that Defendant Cohen was in any way associated with the production that they were signing up for, nor that Defendants CBS and Showtime were involved.  Plaintiffs also had no knowledge that the purpose of the "Consent Agreement" was to feature and defame Judge Moore on "Who is America?" and not to receive an award for Judge Moore's strong support of Israel.  Had Plaintiffs known of these facts, they would never have signed the "Consent Agreement" and travelled to Washington D.C.  Moore Dec. ¶ 11.

**Defendants' Response**:  Undisputed for the purposes of this motion that Plaintiffs had no knowledge Cohen was in any way associated with the production in which Judge Moore agreed to appear.  Undisputed that that Plaintiffs had no knowledge ViacomCBS or SNI were involved with the production in which Judge Moore agreed to appear.  Undisputed Plaintiffs had no knowledge that the purpose of the interview with Judge Moore was inclusion in *Who Is America?*, and not for Judge Moore to receive an award for his support of Israel.  The statement that the purpose of the SCA was to "defame" Judge Moore is a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded.  *See Nadel*, 57 F. Supp. 3d at 293 n. 6.  Whether or not Plaintiffs would have signed the SCA and travelled to Washington, D.C. if they had known Defendants were associated or involved with the production in which they agreed to

7

appear is not a material fact and is also unsubstantiated speculation.  *See Major League Baseball Properties*, 542 F.3d at 306.

   12. Evidence obtained in discovery shows that Judge Moore was a primary target of Defendants, which goes towards their intent to defame and defraud him.  In a February 13, 2018 email from Mr. Schulman to the "*Who is America*" crew, he writes, "[w]e should move Roy Moore up to 2:30… [Defendant Cohen] wants as much time with him as possible."  Moore. Dec. ¶ 12.

   **Defendants' Response**:  Undisputed that an email dated February 13, 2018 from Todd Schulman contains the quoted language.  Dispute that Judge Moore was a "primary target" of Defendants, as the email does not support this statement, and Plaintiffs cite no admissible evidence that does support it.  *See* Moore Decl. Ex. 7.  Further, whether or not Judge Moore was a "primary target" of Defendants is not a material fact.

   13. At deposition, Jennifer Wallis admitted that once YTV was used to defraud Judge Moore, Defendants no longer even kept it as an active corporation:

> Q. What were the circumstances upon which it ceased to exist?
> A. Once the annual filings are no longer filed, it's administratively dissolved by the state of formation.
> Q. You were instructed to make no further administrative filings on behalf of Yerushalayim TV?
> A. I believe that calls for attorney-client privileged communication.
> Q. Okay. So you made no further filings on behalf of Yerushalayim TV?
> A. Correct. Moore Dec. ¶13.

   **Defendants' Response**:  Undisputed that the quoted language appears in the transcript of the deposition of Jenifer Wallis.  Dispute that Jenifer Wallis admitted that YTV was used to defraud Judge Moore.  The quoted language does not support that statement, and Plaintiffs cite no admissible evidence that does support it.  Dispute that Jenifer Wallis admitted Defendants did not keep YTV as an active corporation once it had been used to set up the interview with Judge Moore.  The quoted language does not support that statement, and the record shows YTV entered into consent agreements with multiple other interviewees on *Who Is America?* after taping of the

8

segment featuring Roy Moore. *See* Schulman Decl. ¶ 17 & Ex. 6 (standard consent agreements between YTV and Joe Walsh, Dana Rohrbacher and Dick Cheney, dated February 26, 2018).

14. Todd Schulman made the same admission:

> Q. Mr. Schulman, Yerushalayim TV was formed for the sole purpose of the show "Who Is America?", correct?
> A. Yes. Moore Dec. ¶ 14.

**Defendants' Response**: Undisputed that the quoted language appears in the transcript of the deposition of Todd Schulman. Dispute that Todd Shulman admitted that YTV was used to defraud Judge Moore. The quoted language does not support that statement, and Plaintiffs cite no admissible evidence that does support it. Dispute that Todd Shulman admitted Defendants did not keep YTV as an active corporation once it had been used to set up the interview with Judge Moore. The quoted language does not support that statement, and the record shows YTV entered into consent agreements with multiple other interviewees on *Who Is America?* after taping of the segment featuring Roy Moore. *See* Schulman Decl. ¶ 17 & Ex. 6 (standard consent agreements between YTV and Joe Walsh, Dana Rohrbacher and Dick Cheney, dated February 26, 2018).

15. Todd Schulman admitted that he was aware that Judge Moore had precluded any "claims involving assertions of…any allegedly sexual oriented or offensive behavior or questioning," yet did nothing to stop it:

> Q. So you saw it after the interview started, but before the end of the interview with Judge Moore?
> A. Yes. Moore Dec. ¶ 15.

**Defendants' Response**: Undisputed that the quoted language appears in the transcript of the deposition of Todd Schulman. Dispute that Todd Shulman admitted he was aware Judge Moore had precluded any "claims involving assertions of…any allegedly sexual oriented or offensive behavior or questioning." The quoted language from Todd Schulman's deposition

9

does not support that statement, and the statement mischaracterizes the content of the SCA signed by Judge Moore. *See* Schulman Decl. ¶ 16 & Ex. 5 § 4; Defendants' Response 1, *supra*.

16. At the December 18, 2020 hearing in this matter the Court found:

Well, Mr. Klayman, if you prevail in the motion that the language is ambiguous, that means that the motions will not prevail on that point. As Ms. McNamara confirmed earlier, their argument is going to be that the unambiguous language of the SCA precludes the claims that were brought. If you're accurate that there's language that makes the agreement ambiguous, then that will be a very strong point for you to make when you oppose a motion for summary judgment. Moore Dec. ¶ 16.

**Defendants' Response**: Undisputed.

17. Defendant Cohen has gone so far as to try to defraud the Secret Service in an attempt to smear then HUD Secretary Ben Carson, which is a crime. Moore Dec. ¶17.

**Defendants' Response**: This paragraph does not contain any material fact for the purposes of this motion. Undisputed that Cohen told a story about the Secret Service and Ben Carson, conveyed in Exhibit 6 to the Moore Declaration. The statement that Cohen tried to "defraud the Secret Service" is a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded. *See Nadel*, 57 F. Supp. 3d at 293 n. 6. The statement that Cohen tried to "smear Ben Carson" is a conclusory assertion inappropriate for a Rule 56.1 statement, and must therefore be disregarded. *See Nadel*, 57 F. Supp. 3d at 293 n. 6. Dispute that any of the behavior described in the story told by Cohen conveyed in Exhibit 6 to the Moore Declaration constitutes a crime, as this statement is a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded. *See Nadel*, 57 F. Supp. 3d at 293 n. 6.

18. As a result of Defendants and their agents' extreme and outrageous conduct, Plaintiffs have suffered extreme emotional distress as a result of Judge Moore being falsely portrayed, mocked and defamed as a sex offender and pedophile in this district, on national television and worldwide, as well as damages to Judge Moore's reputation. Moore Dec. ¶ 18.

**Defendants' Response**:  This statement is a legal conclusion inappropriate for a Rule 56.1 statement, and must therefore be disregarded.  *See Nadel*, 57 F. Supp. 3d at 293 n. 6.

Dated: April 5, 2021                                          Respectfully Submitted,

*/s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
Rachel F. Strom
Eric J. Feder
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020
(212) 489-8230
(212) 489-8340 (fax)


Of Counsel:

Russell Smith, Esq.
Jeff Holmes, Esq.
SMITH DEHN LLP
654 San Juan Avenue
Venice Beach
Los Angeles, California  90291
(310) 396-9045
rsmith@smithdehn.com
jholmes@smithdehn.com


*Attorneys for Defendants*