IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROY STEWART MOORE, et al<br><br>Plaintiffs,<br>v.<br><br>SACHA NOAM BARON COHEN, et al<br><br>Defendants. | **Index No. 19 Civ. 4977** |

## MOTION TO RECUSE AND/OR DISQUALIFY THE HONORABLE JOHN P. CRONAN UNDER 28 U.S.C. § 144.

Plaintiffs Roy Moore ("Judge Moore") and Kayla Moore ("Mrs. Moore") (collectively "Plaintiffs") hereby seek to have recused and/or disqualified the Honorable John P. Cronan ("Judge Cronan") under 28 U.S.C. § 144 based on demonstrable extra-judicial bias and prejudice against Plaintiffs and overt acts of protectionism towards Defendants.

It would appear that, as set forth herein, Judge Cronan's bias and prejudice against Judge Moore in particular, and Mrs. Moore by virtue of her being Judge Moore's wife, can only be logically be explained as a reaction to Judge Moore's devout political and religious beliefs, and this has been manifested on numerous occasions in this case. Not only has Judge Cronan overridden the law of the case set forth by the Honorable Andrew Carter ("Judge Carter") in order to protect and favor the Defendants, he has also made numerous statements that have "shown his hand" in terms of prejudging this case in favor of the Defendants, as well as shielding them in general from important, thorough and rigorous, much less standard, accepted and routine public discovery. Thus, regrettably, Plaintiffs have no choice but to file this instant motion.

**I.    LEGAL STANDARD**

1

An impartial judiciary is a fundamental component of the system of justice in the United States. The right to a "neutral and detached judge" in any proceeding is protected by the U.S. Constitution and is an integral part of maintaining the public's confidence in the judicial system. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980) (The U.S. Constitution guarantees a party an impartial and disinterested tribunal in civil cases). To ensure that this right is protected, Congress has sought to secure the impartiality of judges by requiring them to step aside, or in some circumstances, disqualify themselves, in various circumstances.

>Under 28 U.S.C. § 144:
>
>Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. This statute is unambiguous – if the requirements are met, another judge must be assigned to take over the matter.

>The disqualification statute, 28 U.S.C. §144, is <u>mandatory and automatic</u>, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge. The judge is a silent defendant, unable to make findings on the truth or falsity of the affiant's allegations, and truth must be presumed. *United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) (Emphasis added); and the allegations may be based upon information and belief, *Berger v. United States*, 255 U.S. 22, 34, 65 L. Ed. 481, 41 S. Ct. 230 (1920).

*Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 576 (D.C. 1967) (emphasis added). As evidence of the absolute requirement of impartiality from judicial officers, the U.S. Courts of Appeals for the Fifth, First, Sixth, Tenth, and Eleventh Circuits have said that close questions should be decided in favor of recusal. *See Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000) (citing *In re*

*Chevron*, 121 F.3d 163, 165 (5th Cir. 1997)); *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998); *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989).

"The test for personal bias or prejudice in [S]ection 144 is identical to that in section 455(b)(1), and the decisions interpreting this language in [S]ection 144 are controlling in the interpretation of section 455(b)(1)." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. Cal. 1980). In *Litecky v. United States*, the U.S. Supreme Court held that if the judge succumbs to extrajudicial influence, he is subject to such a motion. Even more, in the absence of an extrajudicial influence, judicial rulings coupled with the requisite "degree of favoritism or antagonism" can serve as the basis for such a motion even "when no extrajudicial source is involved." *Id*. Lastly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" constitute a basis for such a motion if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

**II.     ARGUMENT**

*First,* at the July 31, 2020 hearing in this matter, held before Judge Andrew Carter, who this case was first assigned to, Judge Carter ordered full discovery in this case. In doing so he correctly reasoned:

> The documents, again, I wasn't able to do that on a 12(b)(6) motion, and then therefore the efficiencies of dealing with this case in that way have disappeared. So I do think now it would not be efficient to bifurcate this discovery in this matter. If we are going to have discovery, it seems to me that it makes sense to just have all the discovery. And as I mentioned the last time, we should have discovery regarding the First Amendment grounds as well as the standard consent agreement, and it seems to me we might as well have discovery regarding the allegations of fraud as well. ECF No. 86 at 7-8.
> …..

> Okay. All right. So let's go ahead with full discovery. ECF No. 86 at 9.

*See* <u>Exhibit 1</u>. Yet, at the December 18, 2020 hearing in this case, once it was transferred to this Court, Judge Cronan ignored and countermanded the order of Judge Carter—the law of the case—and instead severely limited the amount of discovery that Plaintiffs would be allowed in an act of protectionism and favoritism towards the Defendants as the expense of Plaintiffs:

> For that reason, I will permit a one-hour deposition, limited only to issues that are relevant to the application of the SCA in this case, and specifically, whether the SCA, by its terms, precludes the plaintiffs' claims. The defendants' argument is going to be that the SCA was unambiguous, and, therefore, the deposition is limited to the question of whether or not the SCA applies in this case. And, once again, that is because discovery right now is limited only to issues that are relevant to the forthcoming motion to dismiss.

> For Mr. Cohen, that will be questions about the formation of YTV, the ownership of YTV, and the relationship of YTV to other entities, including the defendants. This is relevant, I believe, because it shows whether or not the SCA applied to the defendants in this action. ECF No. 105 at 34.

This is a far cry from the "full discovery" correctly and clearly ordered by Judge Carter in this case—once again, the law of the case. Judge Cronan's order was carefully crafted to create the appearance of granting some minimal discovery to Plaintiffs while simultaneously making said discovery so microscopic and miniscule that Defendants had no trouble obfuscating discovery completely. In order words, Judge Cronan's order was akin to simply denying Plaintiffs discovery entirely.

*Second*, the Court's conduct during the hearings in this matter can only be interpreted as advocating on Defendants' behalf, which is a clear sign of bias and prejudice that mandates recusal. For example, at the December 18, 2020 hearing, the Court argued on Defendants' behalf against subjecting Defendant Cohen to deposition:

> But, again, I reiterate, it certainly does sound, from representations made by Ms. McNamara, that Mr. Cohen will have very little, if any, information on this. And, Mr. Klayman, I urge you to carefully consider whether your time and your clients'

4

time is best spent deposing someone who may not have much, if anything, to add, particularly here where the defendants have made available two witnesses, Mr. Schulman and Ms. Wallace, who seem to have far more direct knowledge. For example, Ms. McNamara represented to Mr. Klayman that she understands that Mr. Cohen never emailed or otherwise directly communicated with Wallace, who was the attorney who formed YTV, and the process of forming YTV was handled by Mr. Schulman. ECF No. 105 at 34-35.

In making this order, Judge Cronan appeared to be almost apologizing to Defendants' counsel for allowing even miniscule discovery:

> Ms. McNamara, I know you were -- it's not the relief you were seeking, but other than concerns with that ruling, are there any other issues you wish to raise? ECF No. 105 at 37.

On the other hand, Judge Cronan seemed to go out of his way to insult Mr. Klayman for simply having the audacity to defend his clients' rights:

> MR. KLAYMAN: Your Honor, let me just seek – your Honor has ordered discovery on First Amendment issues. Are you precluding that, too?
> THE COURT: I've heard no argument, Mr. Klayman, for why -- based on the grounds that the First Amendment motion will be made, why any deposition of Mr. Cohen, or, for that matter, Mr. Schulman, or Ms. Wallace will be relevant to the First Amendment argument.
> MR. KLAYMAN: But Judge Carter previously ordered that we could take discovery on that. Why are you reversing yourself now?
> THE COURT: I'm not reversing myself, Mr. Klayman. Ms. McNamara made clear at the beginning of this proceeding that the First Amendment argument will be based on her argument that the conduct constitutes satire and political commentary. Relevant to that argument will be viewing the episode or episodes, and there is -- I've heard no reason for why a deposition of Mr. Cohen, or Mr. Schulman, or Ms. Wallace would be relevant to that.
> MR. KLAYMAN: But she made the same argument at the last hearing, and your Honor then ordered that we could take discovery on the First Amendment. Why are you reversing yourself?
> THE COURT: I am not reversing myself, Mr. Klayman, and if you continue to interrupt the Court, we will mute you.
> MR. KLAYMAN: You'll mute me?
> THE COURT: Correct. So, Mr. Klayman, when the Court speaks, you wait until the Court finishes speaking. I know you've been a lawyer for a long time. I think you should be able to understand that. ECF No. 105 at 36 – 37.

Furthermore, in addition to only granting Mr. Klayman one hour to depose Defendant Cohen, Judge Cronan effectively "warned" Mr. Klayman against thoroughly deposing Defendant Cohen stating:

> The last point is that I will want to know when this deposition is going to occur. I want to know that because I will make sure that I am available for the hour of that deposition, so the parties can call me immediately if any issues come up, and I will be able to rule on those issues. ECF No. 105 at 37.

It is more than a little telling that Judge Cronan would take the time to make sure that he was available to step in to apparently restrain, if not sanction, Mr. Klayman from holding Defendant Cohen's feet to the proverbial fire at deposition too rigorously, when Cohen is someone who has made a Hollywood profession and his fortune as a paid liar, deceiver and a proud and admitted fraudster by interviewing his prey disguised under false pretenses, especially given the fact that Defendant Cohen's deposition was taking place at an unconventional hour to accommodate his being in Australia.

*Third*, the Court entered, at Defendants' request, an extremely draconian and overly-broad protective order as another act of blatant protectionism and favoritism towards the Defendants. This has allowed for Defendants to easily and without any repercussion, stonewall, obfuscate and hide Plaintiffs' good-faith discovery at Defendant Cohen's video deposition which belongs in the public domain, particularly since Plaintiff Moore was, to the contrary, callously, viciously and falsely defamed as a pedophile on national and international television, for all the world to see and hear. This abuse of process and misconduct was regrettably predictable, as the undersigned counsel stated at the December 18, 2020 hearing:

> Well, first of all, your Honor, as you know, Court proceedings are to be in the public. That goes without saying. And this is not a Wall Street case with antitrust considerations, or tax considerations, or securities considerations. This is a very simple, noncomplex case. The information that they say they can designate as confidential is as broad as a barn door. And, in particular, in the context of

> internal emails with regard to the show and Mr. -- Judge Moore and his wife, that should be made public. This is not something which is confidential business information. ECF No. 105 at 6-7

The Court itself even recognized the public nature of discovery and court proceedings:

> Thank you, Mr. Klayman. Obviously, the protective order governs the exchange of discovery. All filings and corporate pleadings in this case have been public, unless there's a showing under precedent, including the Second Circuit precedent in Lugosch, things -- all filings will continue to be public. ECF No. 105 at 8.

Yet despite this, the Court's overly broad and unnecessary protective order effectively gave the green light to allow the Defendants to designate the entire video of Defendant Cohen's deposition as "confidential" with absolutely no legal or factual basis to do so—apparently for no other reason than to try to protect a famous Hollywood person due to his celebrity status. ECF No. 104. Defendants appeared to realize that whatever excuse for deeming the video "confidential" that they provided would be readily accepted by the Court, so they half-heartedly asserted the nonsensical argument that the video must be confidential because Defendant Cohen would be deposed at a residence. However, there are absolutely no identifying features in the deposition video that would allow for Defendant Cohen's location to be determined—there simply is no difference than if Defendant Cohen were being deposed at counsel for Defendants' offices. However, what this "confidential" designation does allow for Defendants to do is to try to cheat the system. Indeed, even a cursory review of Defendant Cohen's deposition shows that Cohen was repeatedly looking downward – most likely at his phone or tablet -- with virtually every question that was posed, and it is thus obvious that he was being illegally fed answers by someone. Plaintiffs have already asked the Court for a hearing on this issue, which has not been granted as of the date of this motion, weeks after it was requested. To the contrary, Defendants concerns have been treated with all due speed and consideration.

7

*Fourth*, the Court again "showed its hand" when it previously stated that it found Judge Preska's decision in *Psenicska v. Twentieth Century Fox Film Corp.*, 2008 U.S. Dist. LEXIS 69214 (S.D.N.Y. Sep. 3, 2008) persuasive, observing "[b]ut the defendants do point to a decision in this Court that was affirmed by the Second Circuit from Judge Preska. That does seem, at first impression, to be -- present rather similar facts and issues that we are facing here. And were the Court to decide in the manner that Judge Preska decided, there is at least the possibility that this case could be disposed of…." *Transcript of December 3, 2020 Proceeding*, ECF No. 96 at 41:13-19.

Evidencing Judge Cronan's bias and protectionism and apparently pre-ordained favoritism towards Defendants, however, is the fact that it would appear that the Court did not take the time to review this case thoroughly, as its facts and legal analysis are clearly distinguishable from the facts here, and in fact support Plaintiffs.

In *Psenicska*, the Court was faced with the question of whether "documentary-style film" was ambiguous, which it clearly was not. *Id*. at 15. This is in stark contrast to here, where there is it clear what Plaintiff Judge Moore and Defendants contracted for —it simply cannot be disputed that Judge Moore and Defendants agreed to modify the "Consent Agreement" to exclude any "allegedly sexual oriented or offensive behavior or questioning." However, even assuming that there is an ambiguity here, it would be characterized by a two clauses in a contract that conflict, not the meaning of an unambiguous term like "documentary-style film," as found by Judge Presksa in *Psenicska*:

> **Where there are alternative, reasonable interpretations of a contract term rendering it ambiguous, the issue should be submitted to the trier of fact and is not suitable for disposition on a motion to dismiss**. *See K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir. 1996). A court should not find contract language ambiguous, however, on the basis of the interpretation urged by one party where that interpretation would strain the contract language beyond its reasonable and

8

>ordinary meaning. *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir. 1990); *see also E.Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir. 1993) (contracting parties may not create an ambiguity merely by urging conflicting interpretations of their agreement). *Id.* at 16-17. (emphasis added).

Here, there is no plausible basis for asserting that any ambiguity is a result of an interpretation that would strain the contract language beyond its reasonable and ordinary meaning. The "Consent Agreement" was simply modified with the consent of all parties. Judge Preska's reasoning supports Plaintiffs', not the Defendants'!

Further distinguishing the *Psenicska* line of cases is the fact that in *Psenicska*, Plaintiff Martin expressly agreed to waive any claims "arising out of the Participant's viewing of any sexually-oriented materials or activities." *Id.* at N.8. The exact opposite is true here, as Judge Moore expressly <u>declined</u> to waive any sexual related questioning. Again, the facts in this case before this Court make the case a strong one for Plaintiffs, not Defendants.

Lastly, in affirming the *Psenicska* ruling, the U.S. Court of Appeals for the Second Circuit ("Second Circuit") found that the "peculiar knowledge" exception to waiver of fraudulent inducement was inapplicable for reasons that are entirely distinguishable from the facts here. "The "peculiar-knowledge" exception is meant to "address circumstances where a party would face high costs in determining the truth or falsity of an oral representation" and does not apply where a party "could have insisted that the written contract terms reflect any oral undertaking on a deal-breaking issue." *Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368, 371 (2d Cir. 2009). Here, Judge Moore <u>did</u> insist that the written contract terms reflected any oral undertaking by expressly declining to waive any sexual related questioning. This cannot be disputed. The rest of the Second Circuit opinion supports Plaintiffs, not Defendants! It is therefore clear evidence of bias and prejudice that Judge Cronan would strain to interpret

*Psenicska* in favor of Defendants, when its plain language and interpretation actually supports Plaintiffs.

### III. CONCLUSION

Based on the foregoing, it is clear that the standard for recusal and/or disqualification under 28 U.S.C. § 144 has been more than met, and accordingly, this case must be reassigned back to Judge Carter so that Plaintiffs may have a chance for a fair and unbiased adjudication. The required sworn affidavit of Plaintiff Moore is attached as <u>Exhibit 2</u>, and this Court must now, as a matter of fact and law, recuse or be disqualified.

**Dated**:  April 27, 2021     Respectfully Submitted,

  /s/ *Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP P.A.
2020 Pennsylvania Ave NW # 800
Washington, D.C. 20006
(561) 558-5536
Email: leklayman@gmail.com

*Counsel for Plaintiffs*

Melissa Isaak, Esq.
2815-B Zelda Road
Montgomery, AL 36106
(334) 262-8200
Email: Melissa@protectingmen.com

*Of Counsel (Pro Hac Vice to be Filed)*

### CERTIFICATE OF COUNSEL

Pursuant to 28 U.S.C. § 144, I hereby certify that this motion is being made in good faith.

*/s/ Larry Klayman*
Larry Klayman, Esq.

10

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on April 27, 2021.

                                                                    */s/ Larry Klayman*
                                                                    Larry Klayman, Esq.