MANDATE

N.Y.S.D. Case # 19-cv-4977(JPC)

21-1702-cv
Moore v. Baron Cohen

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

1   At a stated term of the United States Court of Appeals for the Second Circuit,
2   held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the
3   City of New York, on the 7th day of July, two thousand twenty-two.
4
5       PRESENT:   ROSEMARY S. POOLER,
6                  GERARD E. LYNCH,
7                  RAYMOND J. LOHIER, JR.,
8                     *Circuit Judges*.
9   -----------------------------------------------------------------
10  ROY STEWART MOORE, AN
11  INDIVIDUAL, KAYLA MOORE, AN
12  INDIVIDUAL,
13
14      *Plaintiffs-Appellants*,
15
16      v.                                    No. 21-1702-cv
17
18  SACHA NOAM BARON COHEN, AN
19  INDIVIDUAL, SHOWTIME, INC., CBS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jul 28 2022

MANDATE ISSUED ON 07/28/2022

CORPORATION,

                *Defendants-Appellees*.

-----------------------------------------------------------------

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | LARRY KLAYMAN, Klayman Law Group P.A., Boca Raton, FL (Melissa Isaak, Isaak Law Firm, Montgomery, AL, *on the brief*) |
| FOR DEFENDANTS-APPELLEES: | ELIZABETH A. MCNAMARA (Rachel F. Strom, Eric J. Feder, Carl Mazurek, *on the brief*), Davis Wright Tremaine LLP, New York, NY |

Appeal from an order of the United States District Court for the Southern District of New York (John P. Cronan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the July 13, 2021 order of the District Court is AFFIRMED.

Judge Roy Moore and Kayla Moore appeal from a July 13, 2021 order of the United States District Court for the Southern District of New York (Cronan, J.) granting Sacha Noam Baron Cohen, Showtime, Inc., and CBS Corporation's

1  motion for summary judgment.[1]  Baron Cohen created, co-produced, and co-

2  wrote Who Is America?, a television program that aired on Showtime.  As part of

3  the show, Baron Cohen and his team convinced Roy Moore ("Judge Moore"), a

4  former Chief Justice of the Supreme Court of Alabama and a former Senate

5  candidate from Alabama, to fly to Washington, D.C. to receive a prize in honor of

6  his support for the state of Israel and to be interviewed by an Israeli television

7  program.  It was a ruse: He was instead interviewed by Baron Cohen, who

8  presented himself as an Israeli anti-terrorism expert and former intelligence

9  agent.  The episode of the program in which the interview aired led into the

10 interview with news clips reporting allegations from the time of Judge Moore's

---

[1] We note that the District Court did not enter a separate judgment dismissing the action as required by Fed. R. Civ. P. 58(a).  When a judgment is required to be set out in a separate document but is not, judgment is deemed entered 150 days after the entry of the dispositive order.  Fed. R. Civ. P. 58(c)(2)(B).  Despite the lack of a separate judgment, we have jurisdiction to hear the appeal because the July 13, 2021 opinion and order "end[ed] the litigation on the merits and [left] nothing for the court to do but execute the judgment."  Hall v. Hall, 138 S. Ct. 1118, 1123–24 (2018) (quotation marks omitted); see 28 U.S.C. § 1291 (providing appellate jurisdiction over "appeals from all final decisions of the district courts").  "[W]here the District Court makes a decision intended to be 'final,' the better procedure is to set forth the decision in a separate document called a judgment."  Elfenbein v. Gulf & W. Indus., Inc., 590 F.2d 445, 449 (2d Cir. 1978) (citations omitted), abrogated on other grounds by Espinoza ex rel. JPMorgan Chase & Co. v. Dimon, 797 F.3d 229 (2d Cir. 2015).

Senate campaign that he had engaged in sexual misconduct as an adult, including with one woman who was fourteen at the time. During the interview itself, Baron Cohen, in character, described a fictional device that the Israeli military had purportedly developed to detect underground tunnels, which would also "identify other abnormalities," including "sex offenders and particularly pedophiles," by picking up on a certain "enzyme" that they secrete at "three times the level of non-perverts." App'x 97–98. Baron Cohen then produced a wand-like object that was supposed to be that device and waved it over Judge Moore, at which point it beeped. After a tense exchange between the two, Judge Moore exited the set, amid protestations by Baron Cohen that he was not saying that Judge Moore was a pedophile.

Judge Moore and his wife Kayla Moore then sued Baron Cohen, Showtime, and CBS, Showtime's parent corporation. Both Plaintiffs asserted claims of intentional infliction of emotional distress and fraud, and Judge Moore also raised a defamation claim. We assume the parties' familiarity with the underlying facts and prior record of proceedings, to which we refer only as necessary to explain our decision to affirm.

4

**I.     Judge Moore**

Although Judge Moore did not know the true purpose of the interview, he knew that the interview would be televised. He signed a Standard Consent Agreement ("SCA") with Yerushalayim TV, a company created by and associated with Baron Cohen, and various related companies and individuals, including the Defendants. Under the SCA, Judge Moore agreed to release certain potential claims against the producer or "anyone associated with the Program"— including the Defendants.[2] The release waiver of the SCA states:

> [Judge Moore] waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associated with the Program, which are related to the Program or its production, or this agreement, including, but not limited to, claims involving assertions of . . . (h) infliction of emotional distress (whether allegedly intentional or negligent), . . . (m) defamation (such as any allegedly false statements made in the Program), . . . [or] (p) fraud (such as any alleged deception about the Program or this consent agreement).

---

[2] The parties disputed in the District Court whether all of the Defendants were covered by the SCA, but after discovery was taken with respect to the ownership structure and corporate identity of the various production companies involved, the District Court held that they were. Judge Moore does not challenge that holding on appeal.

App'x 117.  As originally printed, the release also waived claims of "intrusion or invasion of privacy (such as any allegedly sexual oriented or offensive behavior or questioning)," but Judge Moore crossed out the parenthetical by hand.  <u>Id.</u> Another clause states that, "in entering into the [SCA], the Participant is not relying upon any promises or statements made by anyone about the nature of the Program or the identity, behavior, or qualifications of any other participants, cast members, or other persons involved in the program," and that Judge Moore "is signing this agreement with no expectations or understanding concerning the conduct, offensive or otherwise, of anyone involved in this Program."  <u>Id.</u>

      The plain text of the SCA bars Judge Moore's claims for defamation, intentional infliction of emotional distress, and fraud.  Nevertheless, he argues that (1) the waiver provision is unenforceable because his consent was procured fraudulently, (2) the release waiver does not apply to his claims because of the handwritten modification, and (3) the SCA is an unenforceable general release.  We are not persuaded.

      First, under New York law, which the parties agree governs the claims at issue, when a provision of a contract, such as paragraph 5 of the SCA, "states that

6

a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." Mfrs. Hanover Tr. Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993); see Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 94–95 (1985); Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 320–21 (1959). Judge Moore's stipulation that he did not rely on any representations made to him about the program "destroys the allegations in [his] complaint that the agreement was executed in reliance upon these contrary oral representations." Danann, 5 N.Y.2d at 320–21.

Second, Judge Moore's proposed interpretation of the release conflicts with the plain language of the contract. "Under New York law, a court must give full effect to unambiguous contract terms," and "a party's subjective intent and understanding of the terms is irrelevant." HOP Energy, L.L.C. v. Local 553 Pension Fund, 678 F.3d 158, 162 (2d Cir. 2012); see also Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002). Judge Moore argues that because he modified a different provision of the waiver agreement, concerning a different potential cause of action, the plain language of the contract does not mean what

7

1   it says.  We disagree, and like the District Court we see no ambiguity in Moore's

2   release of all claims asserting infliction of emotional distress, defamation, and

3   fraud—the only causes of action asserted here.

4          Third, we address Judge Moore's argument that the SCA is an

5   "unenforceable general release."  Appellants' Br. 30.  In the context of general

6   releases, "an unreformed general release will be given its full literal effect where

7   it is directly or circumstantially evident that the purpose is to achieve a truly

8   general settlement," but a release may be avoided "with respect to

9   uncontemplated transactions despite the generality of the language in the release

10  form."  Mangini v. McClurg, 24 N.Y.2d 556, 562 (1969).  We need not decide

11  whether the SCA contained a general release, however, because, as discussed

12  above, Judge Moore's claims are specifically precluded by the SCA.  Under New

13  York law, we give effect to the intention of the parties as reflected in the

14  language of the contract.  See Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d

15  884, 889 (2d Cir. 1990).  Even if Judge Moore intended not to waive any claims

16  arising from accusations of pedophilia or sexual misconduct, "a party's

8

subjective intent and understanding of the terms is irrelevant." HOP Energy, 678 F.3d at 162.

**II. Kayla Moore**

We next address Kayla Moore's claims of intentional infliction of emotional distress and fraud. Like the District Court, we conclude that the First Amendment bars her claims. "[H]eightened First Amendment protections apply to any tort alleging reputational harm as long as the underlying speech relates to a matter of public concern." Dongguk Univ. v. Yale Univ., 734 F.3d 113, 129 (2d Cir. 2013). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Snyder v. Phelps, 562 U.S. 443, 453 (2011) (citation and quotation marks omitted). We agree with the District Court that the allegations against Judge Moore were a matter of public concern. Judge Moore has been a frequent candidate for political office and had just recently run for Senate at the time that the segment aired; allegations of wrongdoing clearly bore on his fitness for office. The determinative issue is thus

9

1   whether the segment could "reasonably have been interpreted as stating actual

2   facts about" Judge Moore.  Hustler Mag., Inc. v. Falwell, 485 U.S. 46, 50 (1988);

3   see also Milkovich v. Lorain J. Co., 497 U.S. 1, 17 (1990).  We agree with the

4   District Court that the segment at issue was clearly comedy and that no

5   reasonable viewer would conclude otherwise.  See Moore v. Baron Cohen, 548 F.

6   Supp. 3d 330, 348 (S.D.N.Y. 2021).  The segment opened by referencing news

7   clips of the allegations that Judge Moore had engaged in sexual misconduct,

8   including with minors, and what followed was an attempt to comment on those

9   allegations through humor.  Baron Cohen may have implied (despite his in-

10  character disclaimers of any belief that Judge Moore was a pedophile) that he

11  believed Judge Moore's accusers, but he did not imply the existence of any

12  independent factual basis for that belief besides the obviously farcical pedophile-

13  detecting "device," which no reasonable person could believe to be an actual,

14  functioning piece of technology.  "Humor is an important medium of legitimate

15  expression and central to the well-being of individuals, society, and their

16  government.  Despite its typical literal 'falsity,' any effort to control it runs severe

17  risks to free expression as dangerous as those addressed to more 'serious' forms

10

of communication." Robert D. Sack, <u>Sack on Defamation: Libel, Slander, and Related Problems</u> § 5:5.2, at 5-130 (5th ed. 2017).

We have considered the Plaintiffs' remaining arguments and conclude that they are without merit. For the foregoing reasons, the order of the District Court is AFFIRMED. On June 14, 2022, Appellants filed a "motion to supplement" that sought to address statements made during the oral argument. ECF No. 99. Because none of the points made in the motion affect our decision, the motion to supplement is denied as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit